Courtland L. Reichman (CA Bar No. 268873)
**REICHMAN JORGENSEN LLP**
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449
creichman@reichmanjorgensen.com

Sarah Jorgensen (*Pro Hac Vice* Pending)
**REICHMAN JORGENSEN LLP**
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309
Telephone: (404) 609-1040
Facsimile: (650) 623-1449
sjorgensen@reichmanjorgensen.com

Gary J. Toman (*Pro Hac Vice* Pending)
**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL LLP**
3344 Peachtree Road NE, Suite 2400
Atlanta, GA 30326
Telephone: (404) 876-2700
Facsimile: (404) 875-9433
gtoman@wwhgd.com

*Attorneys for Plaintiff*
*California Restaurant Association*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

CALIFORNIA RESTAURANT ASSOCIATION,

a California nonprofit mutual benefit corporation,

Plaintiff,

v.

CITY OF BERKELEY,

Defendant.

Case No.  3:19-cv-07668

**CALIFORNIA RESTAURANT ASSOCIATION'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff California Restaurant Association ("CRA" or "Plaintiff") brings this Complaint for Declaratory and Injunctive Relief ("Complaint") against the City of Berkeley ("Berkeley" or "Defendant"), alleging as follows:

## INTRODUCTION

1.      Berkeley banned natural gas infrastructure in newly constructed buildings beginning in 2020.  With millions of Californians sitting in the dark to avoid wildfires, and California's energy grid under historic strain, banning the use of natural gas is irresponsible and does little to advance climate goals.  California's recent large-scale blackouts bring into sharp focus the need for a workable approach to California's energy infrastructure and energy needs.  Banning natural gas is not the solution, and is at odds with citizens' needs for reliable, resilient, and affordable energy.  Prohibiting natural gas cooking ranges, water heaters, fireplaces, space heaters, and backup electrical generation is fundamentally inconsistent with the public interest, and is a violation of both federal and state law.

2.      In its rush to be the first all-electric city in California, Berkeley bypassed clear federal and state law.  These laws were designed to promote uniform standards regarding energy use in appliances and buildings.  They require a practical approach to energy regulation, maintaining neutrality and recognizing the need for a diverse energy supply.  This is for good reason: a patchwork approach is unworkable, undercuts California's need for reliable and resilient energy, increases the cost of housing, and denies consumers choice.  Taking away the ability to use natural gas cooking ranges, water heaters, heat, and fireplaces, as well as backup electric supply during power outages, is contrary to the state and federal legislative schemes.

3.      If a municipality chooses to enact more stringent energy use standards, it is required to follow state and federal statutes and regulations governing such mandates.  The federal Energy Policy and Conservation Act ("EPCA") regulates the energy efficiency of appliances.  EPCA preempts state and local regulations concerning the energy efficiency and energy use of products for which EPCA sets energy efficiency standards.  EPCA does not permit one type of energy to be favored over another in the areas it regulates.  Similarly, state law expressly preempts the Berkeley Ordinance,

1

requiring specific procedures to be followed if a city seeks to impose more stringent regulations on building standards and energy usage. Berkeley bypassed these state procedures in its rush to mandate all-electric new buildings. And in violation of state precedent, Defendant adopted the Berkeley Ordinance under Berkeley's general police powers. Because it failed to comply with State procedures, the Berkeley Ordinance is preempted by California law and is void and unenforceable.

4. Berkeley's ordinance is premised on the conclusory assertion that use of electricity is better for the environment than use of alternative forms of energy, such as gas. Such a policy decision should be based on reliable studies – the actual facts as opposed to assumptions. Berkeley in substance assumes its conclusion about the environmental impacts of gas versus electric without credible scientific support. This is part and parcel of why the federal and state regulatory frameworks impose specific requirements on the regulation of energy use – requirements that were completely bypassed by Berkeley. The CRA welcomes a legitimate public debate on environmental impacts, reliability and resilience of the energy grid, affordability, and other policy considerations.

5. The CRA nevertheless is compelled to bring this action on behalf of itself and its members because the Berkeley Ordinance's unlawful natural gas ban impacts the CRA. Restaurants rely on natural gas for such things as food preparation and heating space and water, and even providing backup power during electrical outages. Many of these restaurants rely on gas for cooking particular types of food, whether it be flame-seared meats, charred vegetables, or the use of intense heat from a flame under a wok. Indeed, restaurants specializing in international foods so prized in the Bay Area will be unable to prepare many of their specialties without natural gas. Many chefs are trained using natural gas stoves, and losing natural gas will slow down the process of cooking, reduce a chef's control over the amount and intensity of heat, and affect the manner and flavor of food preparation. Restaurant owners and employees as well as restaurant customers also will be denied the use of gas appliances to prepare food, heat their homes or water, or use gas fireplaces in newly constructed buildings. And a shift to "all electric" also will impose greater costs on Berkeley businesses and consumers, in the midst of an affordable housing crisis.

6. In short, Berkeley's natural gas ban will do little to advance environmental goals but

2

will cause substantial adverse consequences for CRA's members and the public. While CRA supports the State's climate goals, it must speak out against the harm to its members from this one-sided ban.

7.      Berkeley's effort to establish at a local level far-reaching energy policy and building standards conflicts with federal and state law, is contrary to the public interest, and imposes irreparable harm on CRA and its members. The CRA, on behalf of its members, thus brings this action seeking a declaration that the Berkeley Ordinance is void and unenforceable and to enjoin its enforcement.

## PARTIES

8.      Plaintiff California Restaurant Association ("CRA") is a nonprofit mutual benefit corporation organized under the laws of California with its principal office in the County of Sacramento, California. As an association of members in the restaurant industry, it has a substantial interest in having the laws relating to building standards executed and the duties at issue here enforced. Plaintiff has members that do business in Berkeley, California, whose interests will be directly affected by this ordinance. Its members will be irreparably harmed by the Berkeley Ordinance through the loss of the ability to use natural gas appliances in newly constructed buildings.

9.      CRA has standing to bring this action because some of its members would have independent standing as they are denied constitutional and statutory rights, the interests that CRA seeks to address by this action are germane to its fundamental purpose, and the claims asserted seek only declaratory and injunctive relief and therefore do not require participation of individual members.

10.     Defendant City of Berkeley is, and was at all relevant times, a municipal corporation existing under the laws of the State of California.

## JURISDICTION AND VENUE

11.     This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as it asserts claims under federal law and under 28 U.S.C. § 2201(a) to the extent that it seeks declaratory relief. To the extent that this Complaint asserts claims under California law, this court has supplemental

3

jurisdiction over such claims pursuant to 28 U.S.C. § 1367(a) as such claims are part of the same case or controversy as the federal claims.

12.     Venue is proper under 28 U.S.C. § 1391 in this Court as Berkeley is located within this district within the County of Alameda and the acts and events giving rise to the claims occurred at least in part in this district.

**BACKGROUND**

**The California Building Standards Law**

13.     The California Building Standards Law, Sections 18901 *et seq.* of the California Health and Safety Code ("HSC"), provides for the adoption of statewide building standards in California.

14.     Section 18949.31 grants authority to the California Building Standards Commission ("CBSC") to oversee processes related to the California building codes.

15.     By adopting the 1970 amendments to the Building Standards Law, the Legislature demonstrated its intent to occupy the field of building standards.

16.     HSC § 18915 defines a "local agency" as "a city, county, and city and county, whether general law or chartered, district agency, authority, board, bureau, department, commission, or other governmental entity of less than statewide jurisdiction."

17.     HSC § 18915 defines a "regulation" as "any rule, regulation, ordinance, or order promulgated by a state or local agency, including rules, regulations, or orders relating to occupancy or the use of land," including, specifically, "building standards."

18.     HSC § 18909(a) defines a "building standard" as "any rule, regulation, order, or other requirement, including any amendment or repeal of that requirement, that specifically regulates, requires, or forbids the method of use, properties, performance, or types of materials used in the construction, alteration, improvement, repair, or rehabilitation of a building, structure, factory-built housing, or other improvement to real property, including fixtures therein, and as determined by the commission."

4

**The California Building Standards Code**

19.     The California Building Standards Code is set forth in Title 24 of the California Code of Regulations and provides for a statewide building standards code.

20.     Part 2.5 of the Building Standards Code is known as the California Residential Code.

21.     Section R1003.11.3 of the Residential Code allows natural gas appliances for fireplaces consistent with the California Mechanical Code.

22.     Part 4 of the Building Standards Code is known as the California Mechanical Code.

23.     The California Mechanical Code contains a number of standards relating to the use of natural gas in structures.  These include:

   a.   Section 1301.1 regulating the maximum pressure for natural gas in piping in a structure;

   b.   Section 1308.4 regulating the sizing of gas piping in the structure;

   c.   Section 1308.4.1 regulating the volumetric flow rate for gas in a structure;

   d.   Section 1308.7 regulating requirements for gas pressure regulators in a structure;

   e.   Section 1310.2.3 specifying prohibited locations for gas piping in a structure;

   f.   Section 1312 regulating appliance connections to gas piping in a structure;

   g.   Section 1314.1 regulating general requirements for natural gas supply to structures;

   h.   Section 1314.2 regulating the required volume of gas at each piping outlet within a structure; and

   i.   Section 1314.4 regulating the size of supply piping outlets for gas appliances within a structure.

24.     Part 5 of the Building Standards Code is known as the California Plumbing Code.

25.     The California Plumbing Code contains a number of standards relating to the use of natural gas in structures.  These include:

   a.   Section 507.7 requiring that water heaters be connected to the type of fuel gas for which it was designed;

   b.   Section 1201.1 regulating the gas pressure within piping systems in connection with a

5

building or structure;

   c.   Section 1202.0 regulating the coverage of gas piping systems in a structure;

   d.   Section 1202.2 regulating gas piping system requirements in a structure;

   e.   Section 1208.1 regulating the installation of gas piping in a structure;

   f.   Section 1208.4 regulating the sizing of gas piping systems in a structure;

   g.   Section 1208.6 regulating acceptable piping materials and joining methods for gas piping systems;

   h.   Section 1210.1.7 regulating the use of plastic piping for gas;

   i.   Section 1210.2.2.1 regulating gas piping in ceiling locations; and

   j.   Section 1210.2.3 regulating prohibited locations for gas piping inside a building.

26.     Part 6 of the Building Standards Code is known as the California Energy Code.

27.     The California Energy Code establishes certain energy standards and includes requirements applicable to natural gas devices and appliances.  These include:

   a.   Section 110.1 establishing mandatory requirements for appliances in newly constructed buildings;

   b.   Section 110.2(a) and Tables 110.2-C, 110.2-D and 110.2-J establishing efficiency standards for gas engine heat pumps, water-cooled gas engine driven chillers, and gas-fired warm air furnaces;

   c.   Section 110.2(d) regulating gas-fired furnace standby loss controls;

   d.   Section 110.4 establishing requirements where gas pool heaters are used;

   e.   Section 110.5 regulating gas central furnace and cooking appliance pilot lights;

   f.   Section 120.9 regulating gas commercial boilers;

   g.   Section 140.4 establishing prescriptive requirements for space conditioning systems;

   h.   Section 140.4(g) permitting certain back-up systems for gas heating equipment;

   i.   Section 150.0(e) requiring standards for fireplaces, decorative gas appliances, and gas logs;

   j.   Section 150.0(n) requiring standards for gas water heaters;

6

k.   Section 150.1(c)(8) specifying requirements for gas water heating systems.

**Requirements for Local Amendments to State Building Standards Code**

28.     HSC §§ 17958, 17958.5, and 17958.7 permit cities and counties to make local amendments or modifications to the Building Standards Code under specified circumstances.

29.     HSC § 17958.7 requires that before making any such modifications or changes, the governing body of the city or county must "make an express finding that such modifications or changes are reasonably necessary because of local climatic, geological or topographical conditions" and the modifications or changes must be "expressly marked and identified to which each finding refers" and must be submitted to the CBSC for approval.

30.     HSC § 17958.7(b) provides that the CBSC may reject a modification or change if no finding is submitted.

31.     Various provisions of the Building Standards Code provide for consistent requirements for more restrictive local amendments or modifications to the Building Standards Code. The California Residential Code, Title 24, Part 2.5, § 1.1.8 and § 1.1.8.1 require compliance with HSC § 17958 and that the municipality "make express findings for each amendment, addition or deletion based upon climatic, topographical, or geological conditions" and "file the amendments, additions or deletions expressly marked and identified as to the applicable findings" with the CBSC.

32.     The California Mechanical Code, Title 24, Part 4, § 1.1.8 and § 1.1.8.1, and the California Plumbing Code, Title 24, Part 5, § 1.1.8.1, likewise require compliance with HSC § 17958 and that the municipality "make express findings for each amendment, addition or deletion based upon climatic, topographical, or geological conditions" and "file the amendments, additions or deletions expressly marked and identified as to the applicable findings" with the CBSC.

33.     Moreover, in order for local governmental agencies to adopt energy standards, Title 24, Part 1, § 10-106 requires that the California Energy Commission find that the standards will require buildings to be designed to consume less energy than permitted by Title 24, Part 6.  The local government must submit an application to the Energy Commission for approval including the "proposed energy standards;  [t]he local governmental agency's findings and supporting analyses on

7

the energy savings and cost effectiveness of the proposed energy standards; [a] statement or finding by the local governmental agency that the proposed energy standards will require buildings to be designed to consume less energy than permitted by Part 6; and [a]ny findings, determinations, declarations or reports, including any negative declaration or environmental impact report, required pursuant to the California Environmental Quality Act, Pub. Resources Code Section 21000 et seq." *Id.* § 10-106(b).  The California Energy Commission must approve the standards before they are effective.

**Federal Law Regarding Appliance Energy Efficiency**

34.     The federal government also regulates the energy efficiency of appliances through the Energy Policy and Conservation Act ("EPCA").  42 U.S.C. § 6201 *et seq.*

35.     The EPCA regulates the energy efficiency of consumer products including air conditioners, water heaters, furnaces, clothes washers and dryers, and stoves.  *See* 42 U.S.C. §§ 6292, 6295.

36.     The EPCA's consumer standards explicitly preempt state and local regulations "concerning the energy efficiency" and "energy use" of the products for which the EPCA sets its own energy efficiency standards.  42 U.S.C. § 6297(c).

37.     The EPCA contains only limited exceptions to this general rule of preemption.  In particular, a regulation is not preempted if it "is in a building code for new construction" and meets seven specific requirements.  42 U.S.C. §§ 6297(c)(3), (f)(3).

38.     These requirements to avoid preemption include, among others:

    a.   That the local regulation "permits a building to meet an energy consumption or conservation objective for a building by selecting items whose combined energy efficiencies meet the objective."  42 U.S.C. § 6297(f)(3)(A).

    b.   That the local regulation gives "credit to the energy consumption or conservation objective" on "a one-for-one equivalent energy use or equivalent cost basis" for whatever products have "energy efficiencies exceeding" the federal standards.  42 U.S.C. § 6297(f)(3)(C).

8

c.  That the "energy consumption or conservation objective" is "specified in terms of an estimated total consumption of energy."  42 U.S.C. § 6297(f)(3)(F).

39.  The EPCA also governs the energy efficiency of certain commercial appliances, including air conditioners, furnaces, water heaters, and clothes washers.  42 U.S.C. § 6313.

40.  These standards also explicitly "supersede any State or local regulation concerning the energy efficiency or energy use of a product for which a standard is prescribed or established" in the federal statute.  42 U.S.C. § 6316(b)(2)(A).

41.  As with the consumer standards, there are only limited exceptions to the rule of preemption for commercial appliances.  In particular, a local regulation "contained in a State or local building code for new construction" is not preempted if it does "not require that the energy efficiency of" a product covered in the federal statute "exceed[s] the applicable minimum energy efficiency requirement." 42 U.S.C. § 6316(b)(2)(B).

**The Berkeley Ordinance**

42.  The Berkeley City Council passed Berkeley Ordinance No. 7,672-N.S. (the "Ordinance") on July 23, 2019. It was signed into law by the Berkeley Mayor, Jesse Arreguin, on August 6, 2019.

43.  The Berkeley Ordinance amends the Berkeley Municipal Code, adding a new Chapter 12.80 prohibiting natural gas infrastructure in new buildings effective January 1, 2020.  The Ordinance prohibits "Natural Gas Infrastructure" in "Newly Constructed Buildings."  Natural Gas Infrastructure is defined as "fuel gas piping, other than service pipe, in or in connection with a building, structure or within the property lines of premises, extending from the point of delivery at the gas meter."

44.  The Berkeley Ordinance was enacted as part of Berkeley's Municipal Code and provides that its requirements "shall apply to Use Permit or Zoning Certificate applications submitted on or after the effective date of this Chapter for all Newly Constructed Buildings proposed to be located in whole or in part within the City," and accordingly relies on Berkeley's general police power as the source of its authority.  The supporting documentation in the administrative record

CAL. RESTAURANT ASS'N COMPL.                                    3:19-cv-07668

asserts that Berkeley may rely on its general police power for the ordinance.

45.     The Berkeley Ordinance is part of Title 12 of the Berkeley Municipal Code, which concerns "Health and Safety."  The Berkeley Municipal Code contains a separate section, Title 19, regarding "Buildings and Construction" and containing Berkeley's building code and energy code.

46.     The Berkeley Ordinance establishes building standards as defined by the California Building Standards Law, to wit, "any rule, regulation, order, or other requirement . . . that specifically regulates, requires, or forbids the method of use, properties, performance, or types of materials used in the construction . . . of a building."

47.     The Berkeley Ordinance's standards concern the energy efficiency and energy use of appliances covered in the federal EPCA insofar as the ordinance requires all appliances in newly constructed buildings to use only electric power and not natural gas.

48.     The Berkeley Ordinance does not identify any provision of the California Building Standards Code that it is amending or modifying for the City of Berkeley and in fact provides that it should not be construed as amending the California Energy Code.

49.     In particular, while the Berkeley Ordinance makes certain findings, the Ordinance does not identify the amendments to the California Building Standards Code and the California Energy Code made in the Ordinance, nor on information and belief did Berkeley "file the amendments, additions or deletions expressly marked and identified as to the applicable findings."

50.     In fact, the Berkeley Ordinance conflicts with and effectively amends the California Building Standards Code and the California Energy Code.

## FIRST CAUSE OF ACTION

## FEDERAL PREEMPTION BY THE ENERGY POLICY AND CONSERVATION ACT

51.     Plaintiff re-alleges the preceding paragraphs as though set forth fully herein.

52.     The Berkeley Ordinance is preempted by the federal EPCA.

53.     The Berkeley Ordinance concerns the energy efficiency and energy use of all appliances in newly constructed buildings, including appliances covered by the EPCA.

54.     The Berkeley Ordinance does not fall within the exceptions to preemption in the

EPCA because:

    a.   It is not included in Berkeley's building code;

    b.   It does not set its objectives in terms of total consumption of energy;

    c.   It does not permit builders to select items whose combined energy efficiencies meet an objective for total energy consumption but rather requires a particular category of items (i.e., electric appliances); and/or

    d.   It does not give credit on a one-for-one basis for all appliances whose energy efficiency exceeds the federal standards, insofar as it gives no credit for (and indeed bans) the use of natural gas appliances no matter their efficiency.

55.     There is no plain, speedy, and adequate remedy at law to protect the rights of Plaintiff and its members. Plaintiff and its members will be irreparably harmed if the Berkeley Ordinance becomes effective and is enforced because restaurants will not be able to prepare their foods in the same manner, speed, and style and will face higher costs.

56.     Plaintiff accordingly requests that the Court declare that the Berkeley Ordinance is preempted by the EPCA and enjoin Defendant from enforcement of the preempted Berkeley Ordinance.

## SECOND CAUSE OF ACTION

## PREEMPTION OF BERKELEY ORDINANCE BY CALIFORNIA LAW AS A VOID AND UNENFORCEABLE EXERCISE OF POLICE POWER

57.     Plaintiff re-alleges the preceding paragraphs as though set forth fully herein.

58.     Defendant has a clear, present, and ministerial duty to comply with the laws of the State of California, which prohibit a municipality from exercising its police powers to establish building code requirements and preempt all ordinances that establish building code requirements under the police power of the municipality.

59.     Plaintiff and its members have a clear, present, and beneficial interest in the performance of Defendant's duties under California law.

60.     Article XI, section 7 of the California Constitution provides that municipalities may

enact and enforce ordinances "not in conflict with general laws."

61.     Under this provision, any ordinance that conflicts with state law or enters an area fully occupied by state general law is preempted and void.

62.     Under the California Building Standards Code, the State of California has occupied the field of building standards.

63.     Because the state has occupied the field of building standards, local governments may not use their general police powers to regulate in the area of building standards and may only exercise those powers in accord with a specific statutory grant of authority.  *Building Ind. Ass'n v. City of Livermore*, 45 Cal. App. 4th 719, 726 (1996).

64.     A building standard adopted by a municipality under general police power is preempted by state law and is unenforceable and void.

65.     The Berkeley Ordinance establishes building standards as defined in the Building Standards Code and was adopted under Berkeley's general police power.  The Berkeley Ordinance is therefore preempted by state law and void and unenforceable.

66.     There is no plain, speedy, and adequate remedy at law to protect the rights of Plaintiff and its members.  Plaintiff and its members will be irreparably harmed if the Berkeley Ordinance becomes effective and is enforced because restaurants will not be able to prepare their foods in the same manner, speed, and style and will face higher costs.

67.     Plaintiff accordingly requests that the Court declare that the Berkeley Ordinance is preempted by California law and enjoin Defendant from enforcement of the preempted Berkeley Ordinance.

### THIRD CAUSE OF ACTION

### PREEMPTION OF BERKELEY ORDINANCE BY CALIFORNIA LAW AS CONFLICTING WITH CALIFORNIA BUILDING STANDARDS CODE

68.     Plaintiff re-alleges the preceding paragraphs as though set forth fully herein.

69.     Under California law, local amendments or modifications to the California Building Standards Code are preempted unless the amendments or modifications are adopted under a specific

12

1  statutory grant of authority to the municipality.

2  70.   HSC § 17958.7 and California Mechanical Code, Title 24, Part 4, § 1.1.8 and §

3  1.1.8.1, and California Plumbing Code, Title 24, Part 5, §1.1.8.1, require that to make any such

4  amendment or modification to the California Building Standards Code, the municipality must "make

5  express findings for each amendment, addition or deletion based upon climatic, topographical, or

6  geological conditions" and "file the amendments, additions or deletions expressly marked and

7  identified as to the applicable findings" with the CBSC .

8  71.   The Berkeley Ordinance establishes building standards as defined by HSC § 18909

9  and conflicts with, amends, and modifies provisions of the California Building Code, including:

10          a.   California Mechanical Code § 1301.1 regulating the maximum pressure for natural gas

11               in piping in a structure; § 1308.4 regulating the sizing of gas piping in the structure; §

12               1308.4.1 regulating the volumetric flow rate for gas in a structure; § 1308.7 regulating

13               requirements for gas pressure regulators in a structure; § 1310.2.3 specifying

14               prohibited locations for gas piping in a structure; § 1312 regulating appliance

15               connections to gas piping in a structure; § 1314.1 regulating general requirements for

16               natural gas supply to structures; § 1314.2 regulating the required volume of gas at each

17               piping outlet within a structure; and § 1314.4 regulating the size of supply piping

18               outlets for gas appliances within a structure; and

19          b.   California Plumbing Code § 507.7 requiring that water heaters be connected to the

20               type of fuel gas for which it was designed; § 1201.1 regulating the gas pressure within

21               piping systems in connection with a building or structure; § 1202.0 regulating the

22               coverage of gas piping systems in a structure; § 1202.2 regulating gas piping system

23               requirements in a structure; § 1208.1 regulating the installation of gas piping in a

24               structure; § 1208.4 regulating the sizing of gas piping systems in a structure; § 1208.6

25               regulating acceptable piping materials and joining methods for gas piping systems; §

26               1210.1.7 regulating the use of plastic piping for gas; § 1210.2.2.1 regulating gas

27               piping in ceiling locations; and § 1210.2.3 regulating prohibited locations for gas

28

13

piping inside a building.

72.     The Berkeley Ordinance does not provide that it is relying on any specific statutory exception to preemption.

73.     The Berkeley Ordinance does not identify the provisions of the California Building Code that it is amending or make specific findings as to each such amendment.

74.     On information and belief, the Berkeley Ordinance has not been submitted to the CBSC for approval as of the date of this Complaint.

75.     Because the Berkeley Ordinance was not adopted in compliance with any specific statutory grant of authority, it is preempted and void and unenforceable.

76.     Defendant has a clear, present, and ministerial duty to comply with the laws of the State of California, which prohibit a municipality from exercising its police powers to establish building code requirements and preempt all ordinances that establish building code requirements except where the building code requirements are adopted in compliance with specific statutory grants of authority.

77.     Petitioner and its members have a clear, present, and beneficial interest in the performance of Defendant's duties under California law.

78.     There is no plain, speedy, and adequate remedy at law to protect the rights of Plaintiff and its members.  Plaintiff and its members will be irreparably harmed if the Berkeley Ordinance becomes effective and is enforced because restaurants will not be able to prepare their foods in the same manner, speed, and style and will face higher costs.

79.     Plaintiff accordingly requests that the Court declare that the Berkeley Ordinance is preempted by California law and enjoin Defendant from enforcement of the preempted Berkeley Ordinance.

## FOURTH CAUSE OF ACTION

### PREEMPTION OF BERKELEY ORDINANCE BY CALIFORNIA LAW AS CONFLICTING WITH CALIFORNIA ENERGY CODE

80.     Plaintiff re-alleges the preceding paragraphs as though set forth fully herein.

14

81.     Under California law, local amendments or modifications to the California Energy Code are preempted unless the amendments or modifications are adopted under a specific statutory grant of authority to the municipality.

82.     The California Energy Code requires that in order for local governmental agencies to adopt energy standards amending or modifying Title 24, Part 1, § 10-106, the California Energy Commission find that the standards will require buildings to be designed to consume less energy than permitted by Title 24, Part 6.

83.     The California Energy Code further provides that the California Energy Commission must approve any such local standards.

84.     To obtain such approval, a local governmental agency must submit to the California Energy Commission an application including the proposed energy standards; findings and supporting analyses on energy savings and cost-effectiveness; a statement or finding that the local energy standards will require buildings to be designed to consume less energy than permitted by Part 6; and any findings required pursuant to the California Environmental Quality Act, Pub. Resources Code Section 21000 *et seq.* ("CEQA").

85.     The Berkeley Ordinance conflicts with, amends, and modifies provisions of the California Energy Code establishing energy standards and requirements applicable to natural gas devices and appliances, including: § 110.0 establishing mandatory requirements for appliances in newly constructed buildings; § 110.2(a) and Tables 110.2-C, 110.2-D and 110.2-J establishing efficiency standards for gas engine heat pumps, water-cooled gas engine driven chillers and gas-fired warm air furnaces; § 110.2(c) regulating thermostats for fireplaces and decorative gas appliances; § 110.2(d) regulating gas-fired furnace standby loss controls; § 110.4 establishing requirements where gas pool heaters are used; § 110.2(d) regulating gas-fired furnace standby loss; § 110.5 regulating gas central furnace, cooking appliance pilot lights; § 120.9 regulating gas commercial boilers; § 140.4(c) establishing prescriptive requirements for space conditioning systems; § 140.4(g) permitting certain back-up systems for gas heating equipment; § 150.0(e) setting standards for fireplaces, decorative gas appliances, and gas logs; § 150.0(n) setting standards for gas water heaters; § 150.1(b)(8) specifying

requirements for gas water heating systems.

86.     The Berkeley Ordinance did not identify the provisions it was amending; make findings or provide supporting analyses on energy savings and cost-effectiveness; make a finding that the proposed standards will require less energy than permitted by Part 6; or make findings or declarations pursuant to CEQA.  On information and belief, Defendant has not submitted an application to the California Energy Commission for the Berkeley Ordinance as of the date of this Complaint.

87.     The Berkeley Ordinance is accordingly preempted by the California Energy Code and is void and unenforceable.

88.     Petitioner and its members have a clear, present, and beneficial interest in the performance of Defendant's duties under California law.

89.     There is no plain, speedy, and adequate remedy at law to protect the rights of Plaintiff and its members.  Plaintiff and its members will be irreparably harmed if the Berkeley Ordinance becomes effective and is enforced because restaurants will not be able to prepare their foods in the same manner, speed, and style and will face higher costs.

90.     Plaintiff accordingly requests that the Court declare that the Berkeley Ordinance is preempted by California law and enjoin Defendant from enforcement of the preempted Berkeley Ordinance.

## FIFTH CAUSE OF ACTION

### FOR INJUNCTION AGAINST ENFORCEMENT OF BERKELEY ORDINANCE AS VOID AND UNENFORCEABLE

91.     Plaintiff re-alleges the preceding paragraphs as though set forth fully herein.

92.     As demonstrated above, the Berkeley Ordinance is preempted by California law and by federal law and is void and unenforceable.

93.     The Berkeley Ordinance has caused and threatens to cause Plaintiff and its members irreparable and substantial harm. The business of restaurants that seek to locate in or relocate within the City of Berkeley will be substantially disrupted and impeded by the inability to use gas in the

operation of their facilities and in preparation of their products.  Many restaurants will be faced with the inability to make many of their products which require the use of specialized gas appliances to prepare, including for example flame-seared meats, charred vegetables, or the use of intense heat from a flame under a wok. Indeed, restaurants specializing in ethnic foods so prized in the Bay Area will be unable to prepare many of their specialties without natural gas.  Many chefs are trained using natural gas stoves, and losing natural gas will slow down the process of cooking, reduce a chef's control over the amount and intensity of heat, and affect the manner and flavor of food preparation.

94.     No amount of monetary damages or other legal remedy can adequately compensate Plaintiff for the irreparable harm that they will suffer from the violations described herein. Plaintiff has no plain, speedy, and adequate remedy at law, in that unless Defendant is enjoined by this Court from effectuating the Berkeley Ordinance, Plaintiff will be subject to the Berkeley Ordinance and will continue to be denied its legal rights.

95.     There will be no significant harm to Defendant from an injunction, because Defendant has no legitimate interest in enforcing an invalid ordinance.  Moreover, the Ordinance's stated goals are primarily global, relating to issues of global warming and climate change. Ordinance 12.80.010.A. In light of the incremental effect, if any, that an Ordinance in one city would have on global warming or climate change, there is little likelihood that an injunction would cause substantial harm to the Defendant.  The balance of harms thus favors injunctive relief.

96.     An injunction is also in the public interest.  The public interest is not served by enforcing invalid ordinances.  Moreover, the EPCA embodies a strong public interest in the uniform regulation of energy conservation and use policy, and California law also shows support for uniform energy standards in the California Energy Code and for uniform building standards in the California Building Standards Code.  These public interests would be served by the issuance of an injunction against the conflicting local regulation of these matters found in the Berkeley Ordinance.

97.     Plaintiff accordingly requests that the Court enjoin Defendant from enforcement of the void and unenforceable Berkeley Ordinance.

17

## SIXTH CAUSE OF ACTION

### FOR DECLARATORY RELIEF

98.     Plaintiff re-alleges the preceding paragraphs as though set forth fully herein.

99.     An actual controversy has arisen and now exists between Plaintiff and Defendant concerning the validity of the Berkeley Ordinance. Plaintiff contends that the Berkeley Ordinance is an unlawful regulation of building standards using the City of Berkeley's general police powers and is preempted by California law.  Plaintiff also contends that the Berkeley Ordinance conflicts with and is preempted by the California Building Standards Code and the California Energy Code. Plaintiff further contends that the Berkeley Ordinance is preempted by federal law and does not satisfy the requirements of any exception to preemption. Plaintiff is informed and believes, and on that basis alleges, that Defendant disagrees with Plaintiff's contentions and asserts that the Berkeley Ordinance is lawful and enforceable.

100.     Berkeley Ordinance No. 7,672-N.S. is preempted by the federal Energy Policy and Conservation Act because it is a regulation concerning the energy efficiency or energy use of covered appliances and does not meet the statutory conditions for exemption from preemption.

101.     The Berkeley Ordinance is preempted by California law as an unlawful attempt to use the City of Berkeley's general police power to regulate building standards and is therefore void and unenforceable.

102.     The Berkeley Ordinance also is preempted by California law as it attempts to regulate building standards and does not satisfy the limited specific statutory exception of HSC § 17958.7 for municipal building standards meeting specific requirements and is therefore void and unenforceable.

103.     The Berkeley Ordinance further is preempted by California law as it has the effect of amending the state Energy Code and does not satisfy the limited specific statutory exception for municipal amendments to the Energy Code and is therefore void and unenforceable.

104.     Enforcement of the Berkeley Ordinance will injure Plaintiff and is likely to be redressed by a favorable ruling from this Court.

105.     In the absence of declaratory relief, the unlawful Berkeley Ordinance will become

effective on January 1, 2020.

106.   Accordingly, pursuant to 28 U.S.C. § 2201(a) and § 1331, Plaintiff prays for declaratory relief that Berkeley Ordinance No. 7,672-N.S.:

    a.   is preempted by federal law because it concerns the energy use of appliances covered in the federal Energy Policy and Conservation Act and is therefore void and unenforceable;

    b.   is preempted by California law as an unlawful attempt to use the City of Berkeley's general police power to regulate building standards and is therefore void and unenforceable;

    c.   is preempted by California law as it attempts to regulate building standards and does not satisfy the limited specific statutory exception for municipal building standards and is therefore void and unenforceable; and

    d.   is preempted by California law as it has the effect of amending the state Energy Code and does not satisfy the limited specific statutory exception for municipal amendments to the Energy Code and is therefore void and unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.   For a preliminary and thereafter permanent injunction enjoining Defendant from enforcing or attempting to enforce Berkeley Ordinance No. 7,672-N.S. as that Ordinance is preempted by California law and federal law and does not satisfy any exception to such preemption, and is accordingly void and unenforceable;

2.   For a declaratory judgment that Berkeley Ordinance No. 7,672-N.S.

(1) is preempted by federal law because it concerns the energy use of appliances covered in the federal Energy Policy and Conservation Act and is therefore void and unenforceable;

(2) is preempted by California law as an unlawful attempt to use the City of Berkeley's general police power to regulate building standards and is therefore void and unenforceable;

CAL. RESTAURANT ASS'N COMPL.                                    3:19-cv-07668

(3) is preempted by California law as it attempts to regulate building standards and does not satisfy the limited specific statutory exception for municipal building standards and is therefore void and unenforceable; and

(4) is preempted by California law as it has the effect of amending the state Energy Code and does not satisfy the limited specific statutory exception for municipal amendments to the Energy Code and is therefore void and unenforceable.

3.     For costs of this suit, including reasonable attorney's fees; and

4.     For such other and further relief as the Court may deem just and proper.

20

Dated:  November 21, 2019

Respectfully submitted,

**REICHMAN JORGENSEN LLP**

*/s/ Courtland L. Reichman*
Courtland L. Reichman (CA Bar No. 268873)
creichman@reichmanjorgensen.com
REICHMAN JORGENSEN LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

Sarah Jorgensen (*Pro Hac Vice* Pending)
sjorgensen@reichmanjorgensen.com
REICHMAN JORGENSEN LLP
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309
Telephone: (404) 609-1040
Facsimile: (650) 623-1449

Gary J. Toman (*Pro Hac Vice* Pending)
gtoman@wwhgd.com
WEINBERG, WHEELER, HUDGINS, GUNN &
DIAL LLP
3344 Peachtree Road NE, Suite 2400
Atlanta, GA 30326
Telephone: (404) 876-2700
Facsimile: (404) 875-9433

*Attorneys for Plaintiff*
*California Restaurant Association*

21