Farimah F. Brown, City Attorney, SBN 201227
Christopher D. Jensen, Deputy City Attorney, SBN 235108
BERKELEY CITY ATTORNEY'S OFFICE
2180 Milvia Street, Fourth Floor
Berkeley, CA 94704
Telephone:  (510) 981-6998
Facsimile:  (510) 981-6960
cjensen@cityofberkeley.info

Attorneys for Defendant CITY OF BERKELEY

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA RESTAURANT ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BERKELEY,<br><br>Defendant. | No.  4:19-CV-07668-YGR<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:    Hon. Yvonne Gonzalez Rogers<br>Date:     March 10, 2020<br>Time:     2:00 p.m.<br>Location:  Courtroom 1, Fourth Floor |

**<u>TABLE OF CONTENTS</u>**

I. INTRODUCTION .................................................................................................. 1

II. BACKGROUND ................................................................................................... 3

 A. The City's Natural Gas Infrastructure Ordinance ................................. 3

 B. Local Amendments to the Building Standards and Energy Codes ....................... 4

 C. Plaintiff's Facial Challenge to the Natural Gas Infrastructure Ordinance ............ 5

III. ARGUMENT ....................................................................................................... 6

 A. The Court Should Dismiss the Complaint Under Rule 12(b)(1). .......................... 6

  1. The Court Lacks Subject Matter Jurisdiction. ............................................ 6

  2. Plaintiff Lacks Standing. .............................................................................. 9

  3. The Complaint Should Be Dismissed Because It Is Unripe.................... 11

  4. Plaintiff's State Law Claims Should Be Dismissed Under the Doctrine of Primary Jurisdiction. .......................................................................... 13

   a. The Court Should Decline to Hear Plaintiff's Second and Third Claims for Relief in Deference to the Jurisdiction of the California Building Standards Commission. .............................................. 134

   b. The Court Should Decline to Hear Plaintiff's Fourth Claim for Relief in Deference to the Jurisdiction of the California Energy Commission.................................................................................. 135

 B. The Complaint Fails to State a Claim Upon Which Relief Can Be Granted. ...... 17

  1. The Natural Gas Infrastructure Ordinance Is Not Preempted by the EPCA Because It Does Not Regulate Energy Efficiency or Use. ....................... 17

  2. The Ordinance Is a Lawful Exercise of the City's Police Power. ............ 20

  3. The Ordinance Is Not Preempted by State Law Because It Was Filed with the California Building Standards Commission. ..................................... 22

  4. The Ordinance Does Not Conflict with the California Energy Code....... 23

  5. The Court Should Dismiss All of Plaintiff's Claims for Relief with Prejudice. .................................................................................................... 24

  6. The Court Should Decline to Exercise Jurisdiction Under 28 U.S.C. § 1367(c) If Plaintiff's EPCA Claim Is Dismissed. .................................... 25

IV. CONCLUSION .................................................................................................. 25

i

1

**<u>TABLE OF AUTHORTIES</u>**

2

**Federal Cases**

3

*Acri v. Varian Assocs., Inc.*,
     114 F.3d 999 (9th Cir. 1997) (en banc) ........................................................... 25

4

*Albrecht v. Lund*,
     845 F.2d 193 (9th Cir.) ...................................................................................... 24

5

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009) ........................................................................................... 17

6

7

*Bell Atlantic Corp. v. Twombly*,
     550 U.S. 544 (2007) ........................................................................................... 17

8

*Bishop Paiute Tribe v. Inyo Cnty*,
     863 F.3d 1144 (9th Cir. 2017) ........................................................................... 11

9

10

*Calvary Chapel Bible Fellowship v. County of Riverside*,
     2017 WL 6883866 (C.D. Cal. Aug. 18, 2017) ................................................. 10

11

*Carnohan v. United States*,
     616 F.2d 1120 (9th Cir. 1980) ........................................................................... 13

12

13

*Caterpillar Inc. v. Williams*,
     482 U.S. 386 (1987) ............................................................................................. 7

14

*Clark v. City of Seattle*,
     899 F.3d. 802 (9th Cir 2018) ............................................................................. 11

15

16

*Clark v. Time Warner Cable*,
     523 F.3d 1110 (9th Cir. 2008) ........................................................................... 13

17

*Coto Settlement v. Eisenberg*,
     593 F.3d 1031 (9th Cir. 2010) ........................................................................... 17

18

19

*Crazy Eddie, Inc. v. Cotter*,
     666 F. Supp. 503 (S.D.N.Y. 1987) ...................................................................... 8

20

*Davel Commc'ns, Inc. v. Qwest Corp.*,
     460 F.3d 1075 (9th Cir. 2006) ........................................................................... 13

21

22

*Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*,
     463 U.S. (1983) .................................................................................................... 8

23

*Indus. Commc'ns Sys., Inc. v. Pacific Tel. & Tel. Co.*,
     505 F.2d 152 (9th Cir. 1974) ............................................................................. 13

24

25

*Janakes v. U.S. Postal Serv.*,
     768 F.2d 1091 (9th Cir. 1985) ............................................................................. 7

26

*Jensen v. National Marine Fisheries Service (NOAA)*,
     512 F.2d 1189 (9th Cir.1975) ............................................................................ 10

27

28

ii

*Kokkonen v. Guardian Life Ins. Co. of America*,
   511 U.S. 375 (1994) ............................................................................................. 6

*Lougy v. Volkswagen Group of America, Inc.*,
   2016 WL 3067686 (D.N.J. May 19, 2019) ............................................................. 8

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................. 10

*Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. (1987) ........................................ 8

*Murphy v. New Milford Zoning Commission*, 402 F.3d 342 (2d Cir. 2005) ............... 12

*Pacific Legal Found. v. State Energy Res. Conservation & Dev. Comm'n*,
   659 F.2d 903 (9th Cir. 1981) .............................................................................. 11

*PNG Telecomms., Inc. v. Pac-West Telecomm, Inc.*,
   2010 WL 3186195 (E.D. Cal. Aug. 11, 2010) ...................................................... 14

*Reudy v. Clear Channel Outdoor, Inc.*,
   2009 WL 1108519 (N.D .Cal. Apr. 24, 2009) ...................................................... 13

*Rivet v. Regions Bank*,
   522 U.S. 470 (1998) ............................................................................................. 7

*Roberts v. Corrothers*,
   812 F.2d 1173 (9th Cir. 1987) .............................................................................. 6

*Shanaghan v. Cahill*,
   58 F.3d 106 (4th Cir. 1995) ............................................................................... 25

*Southern Oregon Barter Fair v. Jackson County, Oregon*,
   372 F.3d 1128 (9th Cir. 2004) ............................................................................ 10

*Spokeo, Inc. v. Robins*,
   __U.S.__,136 S.Ct. 1540 (2016) ........................................................................ 9

*Standard Ins. Co. v. Saklad*,
   127 F.3d 1179 (9th Cir. 1997) .............................................................................. 7

*Steel Co. v. Citizens for Better Envt.*,
   523 U.S. 83 (1998) ............................................................................................... 9

*Stoianoff v. State of Mont.*
   695 F.2d 1214 (9th Cir. 1983) ............................................................................ 10

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
   368 F.3d 1053 (9th Cir. 2004) ............................................................................ 24

*Thomas v. Anchorage Equal Rights Comm'n*,
   20 F.3d 1134 (9th Cir. 2000) .............................................................................. 11

*United States v. Gen. Dynamics Corp.*,
   828 F.2d 1356 (9th Cir. 1987) ............................................................................ 13

iii

*Verizon Northwest, Inc. v. Portland Gen. Elec. Co.,*
    2004 WL 97615 (D. Or. Jan. 13, 2004) ................................................................. 13

*Warth v. Seldin,*
    422 U.S. 490 (1975) ............................................................................................... 11

*In re Wilshire Courtyard,*
    729 F.3d 1279 (9th Cir. 2013) ............................................................................... 6

**State Cases**

*ABS Inst. v. City of Lancaster,*
    24 Cal. App. 4th 285 (1994) ................................................................................. 22

*Big Creek Lumber Co. v. Cty. of Santa Cruz,*
    38 Cal. 4th 1139 (2006) ........................................................................................ 20

*Birkenfeld v. City of Berkeley,*
    17 Cal. 3d 129 (1976) ........................................................................................... 20

*Bldg. Indus. Assn. v. City of Livermore,*
    45 Cal.App.4th 719 (1996) .................................................................................... 14

*Massingill v. Dep't of Food & Agric.,*
    102 Cal. App. 4th 498 (2002) ............................................................................... 20

**U.S. Constitution**

 Article III, § 2 of the U.S. Constitution ...................................................................... 9

**State Constitution**

Article XI, § 7 of the California Constitution .............................................................. 20

**Federal Statutes**

28 U.S.C. § 1331 ........................................................................................................... 6

28 U.S.C. § 1367(c) .................................................................................................... 25

42 U.S.C. § 6297(c) .................................................................................................... 17

42 U.S.C. § 6297(f)(3)(B) ..................................................................................... 17, 19

**State Statutes**

Cal. Health & Safety Code § 17958 ........................................................................... 23

Cal. Health & Safety Code § 17958.5 ................................................................... 14, 22

Cal. Health & Safety Code § 17958.7 ............................................................ 4, 14, 22, 23

iv

Cal. Health & Safety Code § 18909(a) .................................................................. 21

Cal. Health & Safety Code § 18930(a) .................................................................. 14

Cal. Health & Safety Code § 18941.5 ............................................................... 14, 22

Cal. Health & Safety Code § 18945 .................................................................. 14, 15

Cal. Pub. Res. Code § 25402 ................................................................................ 15

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) ........................................................ 2, 6, 9

Federal Rule of Civil Procedure 12(b)(6) ........................................................ 1, 6

Cal. Code Regs. Pt. 1 § 10-107(a) ........................................................................ 16

Cal. Code Regs. Pt. 6, § 10-106 ............................................................................ 23

Berkeley Municipal Code § 1.28.030 ...................................................................... 7

Berkeley Municipal Chapter 12.80 ................................................................. *passim*

Berkeley Municipal Code § 23B.60.020 .................................................................. 7

Sacramento Metropolitan AQMD Rule 414 ............................................................ 18

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1)
AND 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES, Case No. 4:19-CV-07668-YGR

**NOTICE IS HEREBY GIVEN** that on March 10, 2020, at 2:00 p.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at 1301 Clay Street, Courtroom 1, Fourth Floor, Oakland, California, Defendant City of Berkeley ("City") will and hereby does move the Court to dismiss all claims for relief in the Complaint filed by Plaintiff California Restaurant Association ("Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

The City makes this motion on the grounds that the Court lacks jurisdiction to entertain the claims for relief alleged in the Complaint and that Plaintiff fails to state a claim upon which relief may be granted. Accordingly, the City seeks dismissal of this action with prejudice. This motion is based upon this Notice of Motion, the below Memorandum of Points and Authorities, the Request for Judicial Notice, the Declaration of Sarah Moore, the Complaint on file in this action, and other matters as may be presented to the Court at the time of the hearing.

## STATEMENT OF ISSUES TO BE DECIDED

1. Does the Court have subject matter jurisdiction over this action?
2. Does Plaintiff have standing to maintain this action?
3. Are Plaintiff's claims ripe for adjudication?
4. Should the Court defer to the primary jurisdiction of the state agencies responsible for implementing the California Building Standards and Energy Codes?
5. Have Plaintiff's failed to state a claim upon which relief may be granted?

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On July 23, 2019, the City adopted an ordinance that will progressively eliminate natural gas connections from new buildings constructed in the City. The ambition of this first-in-the-nation attempt to tackle the adverse climate and health impacts of natural gas in buildings was tempered by two carefully crafted exemptions that ensure the City's Natural Gas Infrastructure Ordinance ("Ordinance") is both feasible to implement and consistent with state and federal law. The first exemption allows any newly constructed building that cannot meet state (and implicitly, federal) energy efficiency requirements to install natural gas infrastructure and

1

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES, Case No. 4:19-CV-07668-SK

1   comply with the mixed-fuel (*i.e.*, both gas and electric) provisions of Berkeley's recently

2   adopted local Energy Code Amendments (commonly known as a "reach code"). The second

3   exemption gives the City's Zoning Adjustments Board (or in some cases, City staff) broad

4   discretion to consider exemptions in the "public interest" in deciding whether to allow the

5   installation of natural gas infrastructure in new buildings. This exemption explicitly

6   contemplates that there may be circumstances where substitutes for natural gas technology are

7   inadequate, and the public interest is served by allowing natural gas infrastructure to be installed.

8        Rather than waiting for its members to attempt to take advantage of these carefully

9   crafted exemptions, Plaintiff elected to file this lawsuit in November 2019, almost two months

10   before the Ordinance's January 1, 2020 effective date. As of the filing of this motion, no

11   permitting decisions have been made under the City's Ordinance, and no restaurant has sought

12   an exemption under either the "building type" or "public interest" exemptions discussed above.

13   Accordingly, there is no basis for challenging the actual application of the Ordinance to Plaintiff

14   or its members; instead, Plaintiff requests the Court to issue an advisory opinion that the

15   Ordinance is preempted by state and federal law.

16        Plaintiff's request for an advisory opinion suffers from multiple jurisdictional flaws.

17   Plaintiff has not pleaded a federal claim or any other basis that could give rise to federal

18   jurisdiction, has not established that it has standing to seek relief for a hypothetical injury, and

19   has filed an action that is manifestly unripe for judicial review. Moreover, the Complaint alleges

20   claims that are squarely within the primary jurisdiction of two state agencies, the California

21   Building Standards Commission and the California Energy Commission. For all of these

22   reasons, Plaintiff's claims should be dismissed for lack of subject matter jurisdiction under

23   Federal Rule of Civil Procedure 12(b)(1).

24        Plaintiff's claims for relief also fail on the merits. The allegations in the Complaint and

25   judicially noticeable facts demonstrate that the Ordinance is consistent with federal and state

26   energy efficiency standards and is not preempted by state building standards law. Accordingly,

27   the Court should also dismiss all claims for relief in the Complaint under Federal Rule of Civil

28   Procedure 12(b)(6), thereby ending Plaintiff's ideologically motivated, legally deficient attack

2

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1)
AND 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES, Case No. 4:19-CV-07668-YGR

1    on the City's carefully crafted efforts to address greenhouse gas emissions from newly

2    constructed buildings and to limit the construction of new natural gas infrastructure that will

3    soon become obsolete.

4    **II.    BACKGROUND**

5         **A.    The City's Natural Gas Infrastructure Ordinance**

6         On July 23, 2019, the Berkeley City Council adopted Ordinance No. 7,672-N.S. *See*

7    Request for Judicial Notice ("RJN"), Exh. 1. The Ordinance, codified in Chapter 12.80 of the

8    Berkeley Municipal Code ("BMC"), provides—subject to certain exceptions—that "Natural Gas

9    Infrastructure shall be prohibited in Newly Constructed Buildings." *Id.* § 12.80.040.A.[1] The

10   City's first-in-the-nation restrictions on natural gas connections in new construction is intended

11   to "eliminate obsolete natural gas infrastructure and associated greenhouse gas emissions in new

12   buildings where all-electric infrastructure can be most practicably integrated, thereby reducing

13   the environmental and health hazards produced by the consumption and transportation of natural

14   gas." *Id.* § 12.80.010.H. The Ordinance took effect of January 1, 2020. *Id.* § 12.80.080.

15        The Ordinance contains two exceptions to the general ban on new Natural Gas

16   Infrastructure to ensure that compliance with the California Energy Code is feasible and to allow

17   for the installation of Natural Gas Infrastructure where specific uses require natural gas. The first

18   exemption, in BMC § 12.80.040.A.1, provides that "Natural Gas Infrastructure may be permitted

19   in a Newly Constructed Building if the Applicant establishes that it is not physically feasible to

20   construct the building without Natural Gas Infrastructure." *Id.* § 12.80.040.A.1. The definition of

21   "physically feasible" allows for an exemption from the ban on natural gas infrastructure where

22   compliance with the California Energy Code would be impossible for all-electric construction.

23   *Id.*; *see also* RJN, Exh. 2 (July 9, 2019 Report to Berkeley City Council) at 19 (noting that the

24   Natural Gas Infrastructure Ordinance will be implemented for certain "building types and

25

---

26   [1] "Natural Gas Infrastructure" is be defined as "fuel gas piping, other than service pipe, in or in
     connection with a building, structure or within the property lines of premises, extending from the
27   point of delivery at the gas meter as specified in the California Mechanical Code and Plumbing
     Code." RJN, Exh. 1 § 12.80.030.E. "Newly Constructed Building" is defined as "a building that
28   has never before been used or occupied for any purpose." *Id.* § 12.80.030.F.

3

1  systems as the California Energy Commission creates [computer] models that allow developers

2  to have their buildings approved"). Consistent with these provisions to ensure compliance with

3  the Energy Code, the Ordinance expressly disavows any intention to amend the Energy Code or

4  to set standards regulating the use of appliances. RJN, Exh. 1 § 12.80.020.C. ("This chapter [the

5  Ordinance] shall in no way be construed as amending California Energy Code requirements

6  under California Code of Regulations, Title 24, Part 6, nor as requiring the use or installation of

7  any specific appliance or system as a condition of approval.").

8      The second exception allows for an exemption from the ban on Natural Gas

9  Infrastructure when it is established that the use of natural gas "serves the public interest." RJN,

10  Exh. 1 § 12.80.050.A. This exemption allows for a discretionary determination made by the

11  City's Zoning Adjustments Board or, in some cases at the staff level, as part of the entitlement

12  process for new construction. *Id.* § 12.80.020.D. In reviewing requests for a public interest

13  exemption, the Zoning Adjustment Board or City staff must consider (1) "[t]he availability of

14  alternative technologies or systems that do not use natural gas" and (2) "[a]ny other impacts that

15  the decision to allow Natural Gas Infrastructure may have on the health, safety, or welfare of the

16  public." *Id.* § 12.80.050.A.

17      **B.      Local Amendments to the Building Standards and Energy Codes**

18      The Natural Gas Infrastructure Ordinance does not affect state Building Standards Code

19  requirements, and provisions of the Code relating to natural gas installation will continued to

20  apply in structures where Natural Gas Infrastructure is allowed (including all existing structures

21  and any new structures subject to the exemptions in BMC § 12.80.040.A.1 or § 12.80.050.A).

22  Nevertheless, in deference to the California Building Standards Commission, the City filed the

23  Ordinance with the Building Standards Commission along with other local code amendments

24  adopted as part of the 2019 amendments to Building Standards Code. RJN, Exh. 3 (Dec. 17,

25  2019 Letter to California Building Standards Commission). The Ordinance and the City's

26  submission to the Building Standards Commission include findings that such changes "are

27  reasonably necessary because of local climatic, geological or topographical conditions," made

28  pursuant to Health & Safety Code § 17958.7. *Id.* at 76-85.

4

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1)
AND 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES, Case No. 4:19-CV-07668-YGR

1    In addition, subsequent to the adoption of the Ordinance, the City enacted local

2  amendments to the California Energy Code, which regulates the energy efficiency of newly

3  constructed buildings. The local amendments to the Energy Code, known as a "reach code,"

4  require cost-effective increases in energy efficiency to support the implementation of the Natural

5  Gas Infrastructure Ordinance. RJN, Exh. 4 (Dec. 3, 2019 Staff Report) at 4-5. The City's reach

6  code is "electric-favored," meaning that mixed-fuel buildings must achieve additional energy

7  efficiency reductions to comply with the code's requirements, whereas all-electric buildings

8  need only meet the standard, state-mandated Energy Code's requirements. Id. at 5-6. The City's

9  reach code is supported by cost-effectiveness studies for each of the covered building types. Id.

10  at 82-316. Critically, both electric-only and mixed-fuel buildings permitted under the reach code

11  must comply with state energy efficiency standards. Id. at 6 (noting that "[n]ew all-electric

12  buildings . . . must . . . demonstrate compliance with the Energy Code"). In this way, the

13  Ordinance works in tandem with the reach code by requiring the construction of all-electric

14  buildings that meet Energy Code requirements, unless doing so is not feasible, in which case the

15  building may be built mixed-fuel but must meet the reach code's efficiency requirements.

16    The City submitted the reach code to the California Energy Commission for approval on

17  December 6, 2020. RJN, Exh. 5 (Dec. 6, 2019 Letter to Energy Commission). Energy

18  Commission approval is expected in February 2020. Declaration of Sarah Moore ("Moore

19  Decl.") ¶ 3.

20    **C.    Plaintiff's Facial Challenge to the Natural Gas Infrastructure Ordinance**

21    Plaintiff's Complaint is a facial challenge to the Natural Gas Infrastructure Ordinance.

22  The Complaint alleges generally that Plaintiff's members "rely on gas for cooking particular

23  types of food, whether it be flame-seared meats, charred vegetables, or the use of intense heat

24  from a flame under a wok," and that "restaurants specializing in international foods so prized in

25  the Bay Area will be unable to prepare many of their specialties without natural gas." Complaint

26  ¶ 5. However, Plaintiff does not allege that any of its members has applied for and been denied a

27  permit for the construction of Natural Gas Infrastructure in a Newly Constructed Building,

28  despite the explicit provisions in BMC Chapter 12.80 providing for exemptions requiring the

5

1   City to consider the feasibility of all-electric construction and the availability of alternative

2   technologies in determining whether to approve the installation of Natural Gas Infrastructure.

3        Notwithstanding the failure of Plaintiff or any of its members to apply for any such

4   exemption, Plaintiff filed this Complaint on November 21, 2019. The Complaint, which seeks

5   declaratory relief (as well as an injunction based on that declaratory relief), alleges that the

6   Ordinance is preempted by the federal Energy Policy and Conservation Act ("EPCA").

7   Complaint ¶¶ 51-56. In addition, in apparent ignorance of the City's Building and Energy Code

8   adoption process, the Complaint alleges violations of the California Building Standards and

9   Energy Codes. *Id.* ¶¶ 68-90. The Complaint also alleges the Ordinance is an "unenforceable

10  exercise of police power," which is simply a different way of stating Plaintiff's argument that the

11  Ordinance is inconsistent with the Building Standards Code. *Id.* ¶¶ 57-67.

12       Because Plaintiff has failed to allege a basis for federal jurisdiction over this action and

13  because each claim for relief is deficient as a matter of law, the City files this motion to dismiss

14  pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

15  **III.   ARGUMENT**

16       **A.   The Court Should Dismiss the Complaint Under Rule 12(b)(1).**

17       Any party may move to dismiss an action for lack of subject matter jurisdiction under

18  Federal Rule of Civil Procedure 12(b)(1). The plaintiff bears the burden of establishing federal

19  subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 376-

20  78 (1994); *In re Wilshire Courtyard*, 729 F.3d 1279, 1284 (9th Cir. 2013). In ruling on a motion

21  to dismiss under Rule 12(b)(1), the Court is not limited to considering the allegations in the

22  complaint. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). The Court may consider

23  extrinsic evidence, and "the existence of disputed material facts will not preclude the [Court]

24  from evaluating for itself the merits of jurisdictional claims." *Id.*

25       **1.   The Court Lacks Subject Matter Jurisdiction.**

26       Plaintiff seeks to invoke federal question jurisdiction under 28 U.S.C. § 1331. To assess

27  whether federal question jurisdiction is established, courts apply the "well-pleaded complaint"

28  rule under which "federal jurisdiction exists only when a federal question is presented on the

6

1    face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386,

2    391-92 (1987). "A defense is not a part of a plaintiff's properly pleaded statement of [a] claim."

3    *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998).

4          The only purported basis for federal question jurisdiction is Plaintiff's allegation that the

5    Natural Gas Infrastructure Ordinance is preempted by the EPCA. This is in substance a claim for

6    declaratory relief.  Complaint ¶ 56 ("Plaintiff . . . requests that the Court declare that the

7    Berkeley Ordinance is preempted by the EPCA and enjoin Defendant from enforcement of the

8    preempted Berkeley Ordinance."). However, the Declaratory Judgment Act is not an

9    independent source of federal jurisdiction. *Janakes v. U.S. Postal Serv.*, 768 F.2d 1091, 1093

10   (9th Cir. 1985). There must be an independent claim for relief that gives rise to federal question

11   jurisdiction. *Id.*

12         To assess whether a federal question exists in a declaratory judgment action, a court must

13   consider the underlying dispute that gives rise to the action. *Standard Ins. Co. v. Saklad*, 127

14   F.3d 1179, 1181 (9th Cir. 1997). The Ninth Circuit has explained that where "the declaratory

15   judgment defendant could have brought a coercive action in federal court to enforce its rights,

16   then [the court] ha[s] jurisdiction." *Id.* (internal citation omitted). Thus, a court must "reposition

17   the parties in a declaratory relief action by asking whether [the court] would have jurisdiction

18   had the declaratory relief defendant been a plaintiff seeking a federal remedy." *Id.*

19         In this case, the City of Berkeley would not be entitled to bring any "coercive action" in

20   federal court. The hypothetical "coercive action" that Plaintiff seeks to preemptively, and

21   prematurely, litigate would be a code enforcement action by the City. For example, a restaurant

22   could hypothetically install Natural Gas Infrastructure without obtaining the required approval,

23   and the City could take "coercive action" to enforce the requirements of the Natural Gas

24   Infrastructure Ordinance through its administrative citation process, or by seeking to revoke a

25   land use permit issued for construction of a new building. *See* RJN, Exh. 1 § 12.80.020 (noting

26   requirements of Ordinance must be incorporated into conditions of approval of a project); *see*

27   *also* RJN, Exh. 6, BMC § 23B.60.020.A (allowing for revocation of permit if permittee fails to

28   comply with a condition of approval) & BMC § 1.28.030 (authorizing issuance of administrative

7

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1)
AND 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES, Case No. 4:19-CV-07668-YGR

1    citations). Such causes of action would arise under state law and would be litigated in state court.

2    There would be no federal question jurisdiction over such an action.

3        The availability of a federal preemption argument does not change this conclusion. While

4    Plaintiff's EPCA preemption argument could be asserted as a defense in a hypothetical code

5    enforcement action, a federal preemption defense does not establish federal question jurisdiction.

6    As the Court observed in *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63 (1987),

7    federal preemption is a defense that "does not appear on the face of a well-pleaded complaint"

8    and therefore does not establish federal question jurisdiction. *See also Caterpillar*, 482 U.S. at

9    393 (preemption defense does not establish federal question jurisdiction, "even if both parties

10   concede that the federal defense is the only question truly at issue"); *Franchise Tax Bd. of State*

11   *of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 16 (1983) ("[I]f,

12   but for the availability of the declaratory judgment procedure, the federal claim would arise only

13   as a defense to a state created action, jurisdiction is lacking.").

14       The only federal law issue raised by Plaintiff's Complaint is a "claim for relief" seeking

15   a declaration that Plaintiff would have a federal preemption defense under the EPCA in a

16   hypothetical action by the City to enforce its Natural Gas Infrastructure Ordinance. In *Lougy v.*

17   *Volkswagen Group of America, Inc.*, 2016 WL 3067686 (D.N.J. May 19, 2019), the court

18   concluded that the same EPCA defense did not arise under federal law, observing that "state law

19   provides the substantive standards that Volkswagen has allegedly violated, as well as the

20   remedies for those violation." *Id.* at *3 (original alterations omitted). Similarly, in *Crazy Eddie,*

21   *Inc. v. Cotter*, 666 F. Supp. 503 (S.D.N.Y. 1987), the plaintiff attempted to remove a complaint

22   to federal court based on an EPCA defense, arguing that Congress intended that EPCA occupy

23   the entire field of energy efficiency standards. *Id.* at 509. While acknowledging that removal "on

24   the basis of preemption" may be appropriate "when federal law completely displaces state law

25   and confers federal remedies," the court concluded that the EPCA fell far short of this

26   standard—sometimes inaptly referred to as "complete preemption" [2]—and observed that it

27

28   [2] *See Lehmann v. Brown*, 230 F.3d 916, 919-20 (7th Cir. 2000) (characterizing "complete preemption" as a "misnomer, having nothing to do with preemption"); *see also Schmeling v.*

8

1    "ha[d] difficulty fathoming how [the plaintiff] can make this argument with a straight face." *Id.*

2    The court continued:

3         The inclusion within the statute of explicit provisions permitting the states to set
          more rigorous [energy] efficiency standards completely undermines any argument
4         that Congress occupied the entire field and made it inherently federal. Rather than
          evincing an explicit or implicit intent to preempt all state standards, Congress
5         specifically contemplated concurrent state regulation. Had Congress wished
          instead to supplant all state regulation, it would simply have specified uniform
6         national standards or have prohibited state standards entirely.

7    *Id.* at 509-10 (footnote omitted). Thus, the court concluded: "Because the EPCA does not

8    exclude state regulation of energy efficiency standards, the preemption that [the plaintiff] argues

9    is necessarily a defense to the state action and does not afford any basis for removal

10   jurisdiction." *Id.* at 510.

11        *Lougy*, *Crazy Eddie*, and the long-established precedent cited above make clear that

12   Plaintiff's hypothetical EPCA defense does not give rise to federal question jurisdiction.

13   Plaintiff's other allegations are based solely on state law. Accordingly, the Court lacks

14   jurisdiction, and this action should be dismissed under Federal Rule of Civil Procedure 12(b)(1).

15                 **2.    Plaintiff Lacks Standing.**

16        Article III, § 2 of the U.S. Constitution limits a federal court's power to "actual cases or

17   controversies" and requires a plaintiff to plead and prove standing to file a lawsuit. *Spokeo, Inc.*

18   *v. Robins*, __U.S.__, 136 S.Ct. 1540, 1547 (2016).  To establish standing, a plaintiff "must have

19   (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

20   defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citations

21   omitted). Injury in fact is "the 'first and foremost' of standing's three elements. *Id.* (original

22   alterations omitted) (quoting *Steel Co. v. Citizens for Better Envt.*, 523 U.S. 83, 103 (1998)).

23        "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a

24   legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not

25   conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

26

27   _____

     *NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996) (observing that "complete preemption" arises
28   when federal law "substitutes a federal cause of action for the state cause of action, thereby
     manifesting Congress's intent to permit removal").

                                                      9

1  560 (1992)).  The "mere existence of a statute," which may or may not ever be applied to a

2  plaintiff, is insufficient to establish standing. *Jensen v. National Marine Fisheries Service*

3  *(NOAA)*, 512 F.2d 1189, 1191 (9th Cir.1975) (possibility that fishing boat owners and operators

4  could be prosecuted for violating federal regulation does not give rise to case or controversy

5  under Article III); *see also Stoianoff v. State of Mont.* 695 F.2d 1214, 1223 (9th Cir. 1983)

6  (operator of "head shop" had no standing to challenge statute restricting advertisements of drug

7  paraphernalia, in the absence of any actual or pending threat of prosecution).

8  　　　Here, Plaintiff is challenging the "mere existence" of the City's Natural Gas

9  Infrastructure Ordinance. Plaintiff has not identified any of its members seeking to operate in the

10  City, much less identified a member seeking to operate a restaurant in a Newly Constructed

11  Building, and even less a member who has applied for and been denied a permit to install

12  Natural Gas Infrastructure in such a building.[3] Instead, Plaintiff seeks to challenge the Ordinance

13  on its face, without waiting for any of its members to seek approval to install Natural Gas

14  Infrastructure under the explicitly established, clearly defined exemptions in the Ordinance.

15  　　　Given these facts, Plaintiff's alleged injury is conjectural, hypothetical, and insufficient

16  to establish standing. While the type of facial challenge Plaintiff has advanced here may be

17  available under limited circumstances where First Amendment violations are alleged, there is no

18  basis for challenging an ordinary land use regulation on this ground. As the Ninth Circuit

19  observed in *Southern Oregon Barter Fair v. Jackson County, Oregon*, 372 F.3d 1128 (9th Cir.

20  2004), "laws of general application that are not aimed at conduct commonly associated with

21  expression and do not permit licensing determinations to be made on the basis of ongoing

22  expression or the words about to be spoken, such as laws requiring building permits, pose little

23  danger of censorship and may therefore be challenged only by the usual as-applied method." *Id.*

24  at 1135; *see also Calvary Chapel Bible Fellowship v. County of Riverside*, 2017 WL 6883866, at

25  *8 (C.D. Cal. Aug. 18, 2017) (church lacks standing to challenge zoning ordinance provisions

26

27  _____

28  [3] For purposes of this motion to dismiss only, the Court may accept as true Plaintiff's allegations
    that it has standing to sue on behalf of its members. *See American Diabetes Association v.
    United States Department of the Army*, 938 F.3d 1147, 1155-56 (9th Cir. 2019).

10

1    that do not discriminate based on the content or viewpoint of speech).  Plaintiff's challenge to

2    the City's regulation of Natural Gas Infrastructure must be brought, if at all, through the "usual

3    as-applied method." *Southern Oregon Barter Fair*, 372 F.3d at 1135. There is no standing to

4    challenge a hypothetical enforcement action or permit denial by the City of Berkeley, and

5    Plaintiff's Complaint must be dismissed on this alternative ground.

6           **3.     The Complaint Should Be Dismissed Because It Is Unripe.**

7           Plaintiff's claims are also unripe for judicial review. The doctrines of standing and

8    ripeness are "closely related," but ripeness "requires an additional inquiry into 'whether the harm

9    asserted has matured sufficiently to warrant judicial intervention.'" *Pacific Legal Found. v. State*

10   *Energy Res. Conservation & Dev. Comm'n*, 659 F.2d 903, 915 (9th Cir. 1981) (citing *Warth v.*

11   *Seldin*, 422 U.S. 490, 499 n.10 (1975)). "For a case to be ripe, it must present issues that are

12   'definite and concrete, not hypothetical or abstract.'" *Bishop Paiute Tribe v. Inyo Cnty*, 863 F.3d

13   1144, 1153 (9th Cir. 2017) (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d

14   1134, 1139 (9th Cir. 2000)). The ripeness doctrine applies to challenges to legislation or

15   regulations, and courts have held that if the issues raised by such a challenge "would be

16   illuminated by the development of a better factual record, the challenged statute or regulation is

17   generally not considered fit for adjudication until it has actually been applied." *Pacific Legal*

18   *Found.*, 659 F.2d at 915 (citations omitted).

19          *Clark v. City of Seattle*, 899 F.3d. 802 (9th Cir 2018), illustrates these principles. The

20   case arose from a group of rideshare drivers' challenge to a Seattle ordinance that established a

21   complex collective bargaining process for qualifying for-hire drivers in the city. *Id.* at 805-06.

22   The drivers asserted that they did not wish to be represented by the union selected to represent

23   them through the city-mandated process and did not wish to be bound by any future agreement

24   the union may reach with Uber or Lyft. *Id.* at 807. The court observed that it was "speculative"

25   whether the union would ever reach an agreement and represent the drivers, and therefore the

26   drivers' alleged harm was hypothetical and their challenge to the ordinance was unripe. *Id.* at

27   811.

28          Moreover, even where an ordinance is applied, plaintiffs must utilize all available

11

1  appeals processes before filing in federal court. In *Murphy v. New Milford Zoning Commission*,

2  402 F.3d 342 (2d Cir. 2005), the plaintiffs filed suit challenge a city zoning enforcement

3  officer's determination that prayer meetings at their home violated single-family zoning

4  regulations. *Id.* at 345. The court held that in the absence of a determination of the plaintiffs'

5  rights by the city's zoning board, the plaintiffs' claims were not ripe for adjudication. *Id.* at 352-

6  53. The court observed that the zoning board was "in the most advantageous position to interpret

7  its own regulations and apply them to the situations before it," and noted "the virtual

8  impossibility of determining what use will be permitted on a particular lot of land when its use is

9  subject to the decision of a regulatory body invested with great discretion, which it has not yet

10  even been asked to exercise." *Id.* (original alteration omitted). The court concluded that until the

11  zoning board had been given the opportunity to exercise its discretion, "the dispute remain[ed] a

12  matter of unique local import over which we lack jurisdiction." *Id.* at 354.

13      The same type of uncertainties limit the Court's jurisdiction here. Under the Natural Gas

14  Infrastructure Ordinance, Plaintiff or its members can seek authorization to construct Natural

15  Gas Infrastructure in Newly Constructed Buildings under two separate exemptions: the first

16  based on the infeasibility of compliance with the California Energy Code, and the second based

17  on whether the proposed use "serves the public interest." RJN, Exh. 1 §§ 12.80.040.A.1,

18  12.80.050.A. With respect for the public interest exemption, the City's Zoning Adjustments

19  Board or Zoning Officer (depending on the type of permit issued) would be required to consider

20  "[t]he availability of alternative technologies or systems that do not use natural gas" in

21  considering whether to approve the installation of Natural Gas Infrastructure in a Newly

22  Constructed Building. *Id.* § 12.80.050.A.1. Plaintiff or any of its impacted members would have

23  the opportunity to present evidence of the need for natural gas in restaurants and the availability

24  and limitations of technologies that do not use natural gas. See Complaint ¶ 5. Similarly, the

25  permit applicant could apply for the infeasibility exemption by presenting evidence that

26  compliance with the California Energy Code would not be feasible for an all-electric building.

27  See RJN, Exh. 1 § 12.80.040.A.1. The Zoning Adjustments Board or Zoning Officer would then

28  have the opportunity to weigh such evidence as part of a discretionary permitting process and to

12

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1)
AND 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES, Case No. 4:19-CV-07668-YGR

1    decide whether to allow the installation of Natural Gas Infrastructure. *Id.* § 12.80.020.D.

2         Plaintiff seeks to short-circuit this process and adjudicate the validity of the Natural Gas

3    Infrastructure Ordinance in all circumstances, as applied to all Newly Constructed Buildings in

4    Berkeley. As in *Murphy*, it would be virtually impossible for the Court to predict every

5    conceivable outcome of this process. The Court should not try to do so in the absence of an

6    attempt to actually apply the Ordinance by the entities that are vested with discretion to enforce

7    it and to grant exemptions when appropriate. The Court should therefore dismiss Plaintiff's

8    Complaint as unripe.

9         **4.    Plaintiff's State Law Claims Should Be Dismissed Under the Doctrine
10               of Primary Jurisdiction.**

11        Primary jurisdiction applies where "a court determines that an otherwise cognizable

12   claim implicates technical and policy questions that should be addressed in the first instance by

13   the agency with regulatory authority" having jurisdiction over the subject matter of the claim.

14   *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). In the Ninth Circuit, the

15   doctrine should be applied where there is "(1) the need to resolve an issue that (2) has been

16   placed by Congress [or a state legislature] within the jurisdiction of an administrative body

17   having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a

18   comprehensive regulatory scheme that (4) requires expertise or uniformity in administration."

19   *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086-87 (9th Cir. 2006) (quoting *United*

20   *States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)). Courts in the Ninth

21   Circuit have cited primary jurisdiction as a basis for deferring to the jurisdiction of state

22   agencies. *See, e.g.*, *Indus. Commc'ns Sys., Inc. v. Pacific Tel. & Tel. Co.*, 505 F.2d 152, 155-59

23   (9th Cir. 1974) (staying proceedings based on primary jurisdiction doctrine pending a decision

24   by the California Public Utilities Commission ("CPUC")); *Carnohan v. United States*, 616 F.2d

25   1120, 1121-22 (9th Cir. 1980) (affirming dismissal because the Food and Drug Administration

26   and California State Department of Health Services had primary jurisdiction); *Reudy v. Clear*

27   *Channel Outdoor, Inc.*, 2009 WL 1108519, at *4 (N.D .Cal. Apr. 24, 2009) (deferring to primary

28   jurisdiction of the City of San Francisco); *Verizon Northwest, Inc. v. Portland Gen. Elec. Co.*,

13

1    2004 WL 97615, at *9 (D. Or. Jan. 13, 2004) (deferring to primary jurisdiction of the Oregon

2    Public Utilities Commission); *PNG Telecomms., Inc. v. Pac-West Telecomm, Inc.*, 2010 WL

3    3186195, at *8 (E.D. Cal. Aug. 11, 2010) (deferring to the primary jurisdiction of the CPUC).

4    The critical question raised by these cases is whether the agency "is best situated to determine in

5    the first instance whether and to what extent it has the authority to resolve the issues raised."

6    *PNG Telecomms.*, 2010 WL 3186195, at *8.

7                          **a.    The Court Should Decline to Hear Plaintiff's Second and
                                  Third Claims for Relief in Deference to the Jurisdiction of the
8                                 California Building Standards Commission.**

9            The Complaint acknowledges that state law grants the Building Standards Commission

10   the authority "to oversee process related to the California Building Code." Complaint ¶ 14. The

11   Commission reviews building standards adopted or proposed by state agencies prior to

12   codification. Cal. Health & Safety Code § 18930(a). The Building Standards Code is a detailed,

13   multi-part set of technical regulations covering everything from historical preservation to

14   elevator safety. *See generally* 24 Cal. Code Regs., Titles 1-12.[4]

15           Generally, the Commission has authority to approve uniform, statewide building

16   standards. *Bldg. Indus. Assn. v. City of Livermore*, 45 Cal.App.4th 719, 726 (1996). The

17   California Health and Safety Code provides that local amendments to the statewide standards

18   may be made based on "local climatic, geological or topographical conditions"—subject to

19   review by the Commission. Health & Safety Code §§ 17958.5, 17958.7, 18941.5. Specifically,

20   local building standards amendments must be submitted to the Building Standards Commission,

21   along with the required findings regarding local climatic, geological or topographical conditions,

22   and the Commission "may reject a modification or change filed by the governing body of a city

23   or county if no finding was submitted." *Id.* § 17958.7. Health & Safety Code § 18945 also

24   expressly provides that "any person adversely affected by any regulation, rule, omission,

25   interpretation, decision, or practice of" a local agency "respecting" any building standard may

26   appeal to the Commission, and that the Commission may accept an appeal if it "determines that

27

28
─────────────────────
[4] *See* RJN at 1, a*vailable at* https://www.dgs.ca.gov/BSC/Codes/.

14

1    the issues involved in such appeal have statewide significance." *Id.* § 18945(b). Thus, California

2    law establishes a comprehensive scheme in which the Building Standard Commission approves

3    uniform state building standards, subject to local jurisdictions' ability to modify those standards

4    if appropriate findings are made, and provides an administrative means of redress to a party that

5    is adversely affected by a local modification to building standards.

6        Plaintiff's Complaint does not reflect the City's submission of the Natural Gas

7    Infrastructure Ordinance to the Building Standards Commission, which took place after the date

8    on which this action was filed. Complaint ¶¶ 73-74. Nevertheless, Plaintiff asks the Court to

9    weigh in on the day-to-day implementation of a highly technical regulatory scheme without

10   giving the Commission charged with implementing the scheme the opportunity to make a

11   decision, or to provide an authoritative interpretation of the Building Standards Code that

12   Plaintiff could have requested under Health & Safety Code § 18945(b). Under the doctrine of

13   primary jurisdiction, the Court should give the Building Standards Commission the opportunity

14   to resolve such issues in the first instance.[5] The Court should defer to this state agency under the

15   doctrine of primary jurisdiction and decline Plaintiff's request for an advisory opinion regarding

16   the City's obligations under the California Building Standards Code.

17           **b.    The Court Should Decline to Hear Plaintiff's Fourth
                     Claim for Relief in Deference to the Jurisdiction of the
18                   California Energy Commission.**

19       The California Energy Commission establishes state energy efficiency standards for

20   Newly Constructed Buildings under Title 24, Part 6 of the California Code of Regulations ("the

21   Energy Code"). Pub. Res. Code § 25402. The Complaint acknowledges the primary jurisdiction

22   of the California Energy Commission over matters related to the California Energy Code,

23   alleging that (1) the Energy Commission must review local amendments to the Energy Code to

24

25   ───────────────

26   [5] Health & Safety Code § 18945(b) requires the Building Standards Commission to determine
     that the issue presented is a matter of "statewide significance" before accepting an appeal. More
27   than 20 jurisdictions elsewhere in the state have either enacted limitations on natural gas
     infrastructure or expressed interest in enacting such legislation. Moore Decl. ¶ 4. This fact—not
28   to mention Plaintiff's insistence on seeking an advisory opinion from a federal court before the
     Ordinance takes effect—demonstrate the statewide importance of the Berkeley Ordinance.

1    determine if the local amendments "will require buildings to be designed to consume less energy

2    than permitted by Title 24, Party 6" and (2) that the Energy Commission "must approve any

3    such local standards." Complaint ¶¶ 81-83.

4         The Energy Commission also has authority to resolve disputes regarding the

5    interpretation of the Energy Code. Specifically, Section 10-107 of the California Administrative

6    Code authorizes the Commission to make a binding, "written determination as to the

7    applicability or interpretation of any provision of this article [Energy Building Regulations] or of

8    Part 6 [the Energy Code] upon written application, if a dispute concerning a provision arises

9    between an applicant for a building permit and the enforcement agency, and the dispute has been

10   heard by the local board of permit appeals or other highest local review body." RJN, Exh. 7, 24

11   Cal. Code Regs. Pt. 1 § 10-107(a).[6] The Energy Commission may also—unlike this Court—

12   issue nonbinding advice concerning the interpretation of the Energy Code "upon request." *Id.* §

13   10-107(b).

14        On December 6, 2019, the City submitted local "reach code" amendments to the Energy

15   Code for approval by the Energy Commission. RJN, Exh. 5. The newly adopted "electric-

16   preferred" code will complement the Natural Gas Infrastructure Ordinance by creating

17   incentives for all-electric construction where it is feasible for an all-electric building to comply

18   with the Energy Code, while also providing a mixed-fuel compliance pathway where all-electric

19   construction is not feasible. RJN, Exh. 4 at 4-6. The Commission is expected to approve the

20   reach code in or about February 2020. Moore Decl. ¶ 3.

21        The Natural Gas Infrastructure Ordinance was not part of the City's reach code because,

22   as discussed in Section III.B.5, below, the Ordinance does not amend the California Energy

23   Code. Plaintiff makes a strained argument that limitations on Natural Gas Infrastructure are

24   energy efficiency standards. While this argument is incorrect, the Court need not address it now

25   because the doctrine of primary jurisdiction confirms that in the first instance the argument

26   should be addressed by the California Energy Commission.  But instead of attempting to obtain

27

28

[6] *See* RJN at 2, *available at* https://www.dgs.ca.gov/BSC/Codes/.

1   an opinion (whether binding or nonbinding) from the Energy Commission, Plaintiff asks this

2   federal Court to interpret questions of state regulatory and administrative law that fall squarely

3   within the jurisdiction of a state agency that was created to enforce a complex, technical

4   administrative and regulatory scheme.

5        Plaintiff's attempt to invoke the jurisdiction of this Court at this time raises serious

6   concerns about inconsistent interpretations of state law and comity between state and federal

7   jurisdictions, in addition to the jurisdictional issues discussed above. Thus, as with the Plaintiff's

8   other state law claims, the primary jurisdiction doctrine compels the Court to conclude that it

9   should not exercise jurisdiction over Plaintiff's request for an advisory opinion regarding the

10   City's obligations under the California Energy Code.

11      **B.**    **The Complaint Fails to State a Claim Upon Which Relief Can Be Granted.**

12        Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a

13   complaint on the ground that the complaint "fails to state a claim upon which relief may be

14   granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss for failure to state a claim,

15   the Court may consider "the facts and inferences apparent from the complaint itself, documents

16   incorporated by reference into the complaint, matters of public record, and facts susceptible to

17   judicial notice." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). A complaint

18   must allege facts that are sufficient to state a "plausible" claim for relief to survive a motion to

19   dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Moreover, unlike well-

20   pleaded facts, "legal conclusions are not entitled to the assumption of truth." *Ashcroft v. Iqbal*,

21   556 U.S. 662, 679 (2009).

22        **1.**    **The Natural Gas Infrastructure Ordinance Is Not Preempted by the EPCA Because It Does Not Regulate Energy Efficiency or Use.**

23

24        Petitioner's EPCA argument cites 42 U.S.C. § 6297(c), which preempts—subject to

25   numerous exceptions—any state regulation "concerning the energy efficiency, energy use, or

26   water use of [a] covered product." 42 U.S.C. § 6297(c). "Covered product" includes various

27   categories of consumer products, including appliances and lighting. *Id.* §§ 6291(2), 6292. The

28   Complaint also cites EPCA standards for commercial appliances, which generally "supersede

17

1  any State or local regulations concerning energy efficiency or energy use of a product for which

2  a standard is prescribed or established." *Id.* §§ 6313, 6316(b)(2)(A). Each of these provisions

3  turns on whether a state or local regulation regulates the "energy efficiency" or "energy use" of a

4  covered product, which are defined, respectively, as "the ratio of the useful output of services

5  from a consumer product to the energy use of such product," and "the quantity of energy directly

6  consumed by a consumer product at point of use." *Id.* § 6291(4)-(5).

7  The Natural Gas Infrastructure Ordinance simply does not regulate "energy efficiency"

8  or "energy use" of covered products. Instead, the Ordinance limits the installation of Natural Gas

9  Infrastructure in Newly Constructed buildings by establishing a general prohibition on new

10  natural gas connections, subject to exceptions where all-electric construction is not feasible or

11  where allowing the construction of new Natural Gas Infrastructure is in the public interest. RJN,

12  Exh. 1 §§ 12.80.040.A.1, 12.80.050.A. The Ordinance does not in any way regulate the

13  efficiency of consumer products or the amount of energy consumed by the products and is

14  therefore not preempted by the EPA.

15  The Complaint does not explain the discrepancy between the plain meaning of the

16  Ordinance and the allegation that the Ordinance regulates energy efficiency or energy use.  The

17  Complaint's apparent suggestion that any local ordinance that may indirectly affect energy

18  efficiency or energy use is preempted by the EPCA is without precedential support, and would

19  upend vast areas of law that are universally understood to be the proper subject of local

20  regulation. For example, it is well-understood that dense, multifamily construction is more

21  energy efficient that single-family homes, but it would be absurd to suggest that local zoning

22  ordinances that establish single-family residential zoning are preempted by the EPCA. Even

23  more to the point, Plaintiff's argument would imply that a local or state decision to allow or

24  disallow a natural gas franchise would be subject to EPCA preemption. Finally, to take another

25  example, there are well-established local regulations restricting the emissions of nitrogen oxide

26  ($NO_x$) and carbon monoxide from hot water heaters—a "covered product" under the EPCA.[7]

27  _____

28  [7] EPCA energy efficiency standards for water heaters can be found at 10 C.F.R. Part 430,
Appendix E.

1 | *See, e.g.*, RJN, Exh. 8 (Sacramento Metropolitan AQMD Rule 414). These air quality

2 | regulations limit the ability of builders and homeowners to install certain models of EPCA-

3 | compliant water heaters because the appliances do not meet air emissions standards, but no one

4 | would suggest that these types of routine, local health and safety regulations are preempted by

5 | the EPCA.

6 | These examples show just how far-fetched Plaintiff's preemption argument is. In each of

7 | these examples, as in this case, state or local jurisdictions are able to make decisions regarding

8 | land use or infrastructure deployment without displacing federal energy efficiency standards.

9 | The federal standards apply, and are applied to the types of consumer products that may be

10 | installed in a local jurisdiction, given constraints imposed by local land use and infrastructure

11 | restrictions. The City's Natural Gas Infrastructure Ordinance is not distinguishable in any

12 | meaningful way from these long-recognized spheres of local and state control.

13 | Nor is there any concern that the Ordinance would directly or indirectly require the

14 | installation of consumer products that exceed federal energy efficiency standards. As noted

15 | above, the Ordinance expressly exempts from the prohibition on new Natural Gas Infrastructure

16 | where all-electric construction cannot demonstrate compliance with California Energy Code

17 | efficiency standards. RJN, Exh. 1 § 12.80.040.A.1. Consistent with this exemption, the

18 | Ordinance also expressly provides it "shall in no way be construed as amending California

19 | Energy Code requirements under California Code of Regulations, Title 24, Part 6, nor as

20 | requiring the use or installation of any specific appliance or system as a condition of approval."

21 | *Id.* § 12.80.020.C. Thus, the Ordinance allows for a mixed-fuel compliance pathway in any

22 | instance where compliance with state energy efficiency standards is not feasible for all-electric

23 | construction.

24 | This provision, which ensures compliance with the state Energy Code, also ensures

25 | compliance with federal law. State building codes concerning energy efficiency or energy use,

26 | including the California Energy Code, are expressly excluded from the scope of EPCA

27 | preemption so long as, among other conditions, the codes do not "require that [a] covered

28 | product have an energy efficiency exceeding the applicable [federal] energy conservation

19

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1)
AND 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES, Case No. 4:19-CV-07668-YGR

standard" without a waiver. 42 U.S.C. § 6297(f)(3)(B). Plaintiff does not, and cannot reasonably allege, that the California Energy Code is inconsistent with the EPCA, and in fact, the Energy Commission assumes that appliances meet but *do not exceed* minimum federal standards in modeling the energy efficiency of Newly Constructed Buildings for purpose of developing the Energy Code. *See, e.g.*, RJN, Exh. 9 (Energy Commission 2019 Residential Compliance Manual) at 5-9 to 5-12 (noting, for example, that Energy Commission regulations for water heaters "align with federal efficiency standards").

The City's Ordinance incorporates the same standard, as it requires compliance with the California Energy Code and exempts Newly Constructed Buildings from restrictions on Natural Gas Infrastructure where Energy Code compliance is not feasible for all-electric construction. RJN, Exh. 1 § 12.80.040.A.1. This exemption forecloses any possible argument that the Natural Gas Infrastructure Ordinance interferes with federal energy efficiency standards. For this reason and the reasons stated above, the Court should dismiss Plaintiff's first claim for relief seeking a declaration of Plaintiff's hypothetical future right to assert a defense under the EPCA.

## 2.   The Ordinance Is a Lawful Exercise of the City's Police Power.

The City's Natural Gas Infrastructure Ordinance is within the scope of the City's police power because it is not a "building standard" and is therefore not preempted by state law. *See* Complaint ¶ 64. Article XI, § 7 of the California Constitution provides that municipalities may enact ordinances "not in conflict with general laws" of the state. Cal. Constit., Art. XI, § 7. In the absence of a conflict with the general state law, local jurisdictions retain "inherent police power" to control their own land use decisions. *Big Creek Lumber Co. v. Cty. of Santa Cruz*, 38 Cal. 4th 1139, 1151 (2006). "The police power extends to legislative objectives in furtherance of public peace, safety, morals, health and welfare." *Massingill v. Dep't of Food & Agric.*, 102 Cal. App. 4th 498, 504 (2002) (citing *Birkenfeld v. City of Berkeley* 17 Cal. 3d 129, 160 (1976).)

The City's enactment of legislation to address climate change and to reduce the eventual costs that will be incurred due to obsolete Natural Gas Infrastructure falls within the City's broad authority to enact legislation "in furtherance of public peace, safety, morals, health and welfare." *See id.* Plaintiff's argument to the contrary rests on the erroneous proposition that the Natural

20

1   Gas Infrastructure Ordinance is a "building standard" within the meaning of the California

2   Building Standards Code and is therefore "preempted" by state law, unless certain findings are

3   made and procedural requirements are met. *See Bldg. Indus. Ass'n of N. Cal.*, 45 Cal. App. 4th at

4   726 (holding that state law "has generally preempted the field of residential building standards").

5          Plaintiff's argument is unsupported by the plain meaning of the term "building standard"

6   and defies common sense. California Health & Safety Code § 18909(a) defines a "building

7   standard" as "any rule, regulation, order, or other requirement . . . that specifically regulates,

8   requires, or forbids the method of use, properties, performance, or types of materials used in the

9   construction, alteration, improvement, repair, or rehabilitation of a building, structure, factory-

10  built housing, or other improvement to real property, including fixtures therein, and as

11  determined by the commission." Cal. Health & Safety Code § 18909(a). The City's Natural Gas

12  Infrastructure Ordinance does not regulate methods of construction at all; rather, it limits the

13  installation of new Natural Gas Infrastructure to reduce greenhouse gas emissions from new

14  construction and to reduce the wasteful expenditure of resources to install new natural gas

15  connections that will soon become obsolete. This is an exercise of the City's police power to

16  enact legislation to advance public welfare, and is not a preempted "building standard."

17         The Complaint offers a laundry list of Building Code provisions that are purportedly

18  impacted by the Ordinance (Complaint ¶¶ 23, 25), but the Ordinance does not affect those

19  provisions, either explicitly or implicitly. In fact, those provisions, regulating the methods of

20  construction of natural gas appliances and other infrastructure, will continue to apply in the City

21  where the installation of Natural Gas Infrastructure in Newly Constructed Buildings is allowed,

22  consistent with the exemptions in BMC § 12.80.040.A.1 and § 12.80.050.B. These provisions

23  could not be identified by "amendments, additions or deletions [to the Building Code] expressly

24  marked" (Complaint ¶ 32) because they remain in effect and will continue to apply to Newly

25  Constructed Buildings that qualify for the exemptions adopted by the City.

26         The fact that building standards governing the construction of Natural Gas Infrastructure

27  Ordinance will not be applied in every Newly Constructed Building does not make the

28  Ordinance a Building Code amendment. The City of Berkeley, like virtually every jurisdiction in

the state, adopts zoning provisions that prohibit the construction of buildings that the Building Code classifies as commercial or multifamily (four stories or more) at certain building sites. RJN at 2-3. Nevertheless, the commercial and multifamily building standards in the state Building Code remain part of Berkeley's local Building Code, and no one would reasonably suggest that the City's Zoning Ordinance creates building standards because it prohibits the construction of commercial or multifamily buildings in certain zoning districts.

The Natural Gas Infrastructure Ordinance is no different. It defines the circumstances under which certain types of construction are allowed, but does not regulate the method of construction. The only difference is that Plaintiff has chosen to advance an ideologically motivated argument to oppose a routine exercise of police power by the City because in this case, the Ordinance is directed at reducing greenhouse gas emissions. In fact, the Ordinance's purpose lies within the core of the City's police power, as it seeks to protect public health, safety, and welfare from the adverse impacts of climate change. The Court should reject this argument and confirm the common sense conclusion that the Natural Gas Infrastructure Ordinance is a lawful exercise of the City's police power under California law.

### 3. The Ordinance Is Not Preempted by State Law Because It Was Filed with the California Building Standards Commission.

The Natural Gas Infrastructure Ordinance is also valid if construed as a building standard because it was filed with the California Building Standards Commission pursuant to Health & Safety Code § 17958.7. As noted above, Health & Safety Code §§ 17958.5, 17958.7, and 18941.5 authorize a local jurisdiction to amend state building standards if the jurisdiction "make[s] an express finding that such modifications or changes are reasonably necessary because of local climatic, geological or topographical conditions" and files those findings and any modification or change to Building Standards Code with the California Building Standards Commission. Health & Safety Code § 17958.7(a). The findings are a legislative act, and are reviewed only for whether there was a "reasonable basis" for the local jurisdiction's decision. *ABS Inst. v. City of Lancaster*, 24 Cal. App. 4th 285, 296 (1994). The local building standards become operative upon submission to the Building Standards Commission, unless the

22

1    Commission rejects the filed standards. *Id.* § 17958.7(a)-(b).

2           The City filed the Ordinance with the Building Standards Commission on December 17,

3    2019, along with other local building standards amendments that the City adopted in December

4    2019 and that took effect on January 1, 2020. RJN, Exh. 3.[8] As explained above, the Ordinance

5    does not repeal or amend any existing provisions of the Building Standards Code, and therefore

6    no "deletions" of code provisions were required pursuant to Health & Safety Code § 17958. The

7    City also submitted its findings of necessity due to local conditions, which apply to the

8    Ordinance, thereby satisfying the requirements of Health & Safety Code § 17958.7.

9           Thus, to the extent that the Court may construe the Natural Gas Infrastructure Ordinance

10   as a building standard, its submission to the Building Standards Commission complied with the

11   process set forth in Health & Safety Code § 17958.7. Further, while it is true that the Building

12   Standards Commission retains the right to review and reject the submission, it has not yet done

13   so—a fact that highlights the jurisdictional defects in Plaintiff's Complaint discussed above. In

14   either case, the defects in Plaintiff's pleadings—whether jurisdictional or otherwise—require the

15   dismissal of Plaintiff's third claim for relief.

16           **4.      The Ordinance Does Not Conflict with the California Energy Code.**

17          As noted above, the California Energy Commission establishes state energy efficiency

18   standards for Newly Constructed Buildings, which are codified as the Energy Code at Part 6 of

19   Title 24 of the California Code of Regulations. The powers of the Commission include the

20   power to review and approve local energy efficiency standards, or "energy standards," pursuant

21   to Section 10-106 of the Energy Code. *See* RJN, Exh. 7, 24 Cal. Code Regs. Pt. 6, § 10-106, and

22   Acknowledgements Page (defining "Energy Standards").

23          The Natural Gas Infrastructure Ordinance does not establish or modify energy efficiency

24   standards for all-electric or mixed-fuel construction—those standards were modified by the local

25   "reach code" amendments to the Energy Code that the City submitted to the Energy Commission

26

27   [8] The adoption of these local code amendments coincided with the state's triennial Building
     Standards Code amendment process, which culminated in the adoption of the 2019 California
28   Building Standards Code that took effect on January 1, 2020. *See* RJN at 2, Cal. Code. Regs.,
     Title 24 (2019 Triennial Edition), *available at* https://www.dgs.ca.gov/BSC/Codes.

23

1   on December 6, 2019. RJN, Exh. 5. The local Energy Code Amendments will become effective

2   upon approval by the Energy Commission, which is currently pending, and are in any event not

3   the subject of any allegations in Plaintiff's Complaint. The Natural Gas Infrastructure Ordinance

4   does not affect the independent obligation to enforce the Energy Code, inclusive of any

5   approved local amendments.

6          Further, as noted in Section III.B.2, above, the exemptions in the Ordinance ensure that

7   there is no conflict with state energy efficiency standards. The Ordinance expressly exempts any

8   building where all-electric construction cannot demonstrate compliance with state energy

9   efficiency standards from the prohibition on new Natural Gas Infrastructure. RJN, Exh. 1

10  § 12.80.040.A.1. Thus, where it is not feasible for all-electric construction to comply with the

11  Energy Code, a project will be exempt from the prohibition on new Natural Gas Infrastructure,

12  and mixed-fuel construction will be permitted. The exemption forecloses any possible argument

13  that the Natural Gas Infrastructure Ordinance interferes with state energy efficiency standards.

14  For these reasons, Plaintiff's fourth claim for relief regarding the theoretical rights of its

15  members under the California Energy Code should be dismissed.

16         **C.     The Court Should Dismiss All of Plaintiff's Claims for Relief with Prejudice.**

17         The Court may deny leave to amend if it is apparent from the pleadings that amendment

18  of the Complaint would be futile. *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d

19  1053, 1061 (9th Cir. 2004); *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir.), *amended by* 856 F.2d

20  111 (9th Cir. 1988). Here, the defects in Plaintiff's pleadings are attributable to Plaintiff's

21  impermissible attempt to seek an advisory opinion from this Court and its erroneous arguments

22  regarding pure legal questions. Because such defects cannot be cured by amendment to the

23  pleadings, the Court should dismiss all claims for relief in the Complaint with prejudice.[9]

24         **D.     The Court Should Decline to Exercise Jurisdiction Under 28 U.S.C. § 1367(c)
               If Plaintiff's EPCA Claim Is Dismissed.**

25

26

27  _____

28  [9] Plaintiff's fifth and sixth claims for injunctive and "declaratory" relief, respectively, do not
    contain any additional substantive allegations and must also be dismissed with prejudice for the
    reasons stated above.

1    Under 28 U.S.C. § 1367(c), a district court "has discretion to retain or dismiss state law

2  claims when the federal basis for an action drops away." *Shanaghan v. Cahill*, 58 F.3d 106, 109

3  (4th Cir. 1995) (citing 28 U.S.C. § 1367); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th

4  Cir. 1997) (en banc)). "[I]n the usual case in which all federal-law claims are eliminated before

5  trial, the balance of factors will point toward declining to exercise jurisdiction over the

6  remaining state-law claims." *Acri*, 114 F.3d at 100 (citation and original alterations omitted).

7    The dismissal of Plaintiff's EPCA claim tips the balance strongly against the Court

8  retaining jurisdiction over any remaining state law claims, should they not also be dismissed.

9  Plaintiff's state law claims implicate the jurisdiction of the California Buildings Standards

10  Commission and the California Energy Commission, two state agencies with authority to

11  implement and administer complex, technical areas of state law. There is no benefit to having

12  these state law issues adjudicated in a federal forum, and the interests of comity weigh heavily in

13  favor of dismissing any state law claims, should they survive this motion to dismiss.

14  **IV.    CONCLUSION**

15    For the reasons stated above, the Court should dismiss all of Plaintiff's claims for relief

16  with prejudice and enter judgment in favor of the City.

17   Dated:  January 13, 2020                BERKELEY CITY ATTORNEY'S OFFICE

18

19                                           By:  /s/Christopher D. Jensen

20                                                Farimah Brown
                                                  Christopher D. Jensen

21                                           Attorneys for Defendant City of Berkeley

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1)
AND 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES, Case No. 4:19-CV-07668-YGR