Courtland L. Reichman (CA Bar No. 268873)
**REICHMAN JORGENSEN LLP**
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449
creichman@reichmanjorgensen.com

Sarah Jorgensen (*Pro Hac Vice*)
**REICHMAN JORGENSEN LLP**
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309
Telephone: (404) 609-1040
Facsimile: (650) 623-1449
sjorgensen@reichmanjorgensen.com

*Attorneys for Plaintiff*
*California Restaurant Association*

Gary J. Toman (*Pro Hac Vice*)
**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL LLP**
3344 Peachtree Road NE, Suite 2400
Atlanta, GA 30326
Telephone: (404) 876-2700
Facsimile: (404) 875-9433
gtoman@wwhgd.com

Kylie Chiseul Kim (*Pro Hac Vice Pending*)
**KELLOGG, HANSEN, TODD, EVANS, FIGEL & FREDERICK LLP**
1615 M St NW #400
Washington, DC 20036
Telephone: (202) 326-7924
Facsimile: (202) 326-7999
kkim@kelloghansen.com

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA RESTAURANT ASSOCIATION, a California nonprofit mutual benefit corporation, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF BERKELEY, <br><br> Defendant. | Case No. 3:19-cv-07668-YGR <br><br> **CALIFORNIA RESTAURANT ASSOCIATION'S OPPOSITION TO MOTION TO DISMISS** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br> Action Filed: Nov. 21, 2019 |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

STATEMENT OF ISSUES ................................................................................................. 4

BACKGROUND ................................................................................................................. 4

ARGUMENT....................................................................................................................... 7

   I.    THIS COURT HAS SUBJECT MATTER JURISDICTION........................................ 7

   II.   THE CRA HAS STANDING AND ITS DISPUTE IS RIPE.......................................... 9

      A.   The CRA Need Not Wait For An Enforcement Action To Make A Facial Challenge............. 10

      B.   The Nominal Availability Of Exemptions To The Ordinance Does Not Change The Standing Or Ripeness Analysis. ........................................................................... 11

      C.   The CRA Does Not Need To Name A Specific Affected Member. ....................................... 13

   III.  THERE IS NO BASIS FOR THIS COURT TO DEFER TO THE CBSC AND CEC, WHICH DO NOT HAVE AUTHORITY TO RULE ON PREEMPTION........................................... 14

   IV.  BERKELEY'S BAN CONCERNS ENERGY USE IN VIOLATION OF THE EPCA. ........ 18

      A.   Berkeley's Ban Concerns Energy Use And Is Therefore Preempted.................................... 19

      B.   Berkeley Does Not Qualify For Any Exemption From Preemption...................................... 20

   V.   BERKELEY'S BAN IS PREEMPTED BY STATE LAW.......................................... 22

      A.   Berkeley's Ban Is An Invalid Exercise Of The Police Power And Is Preempted................... 22

      B.   Berkeley's Ban Is Preempted By The State Building Code. ............................................... 23

      C.   Berkeley's Ban Is Preempted By The State Energy Code................................................... 25

CONCLUSION ................................................................................................................. 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ABS Institute v. City of Lancaster*,
    24 Cal. App. 4th 285 (1994) ..................................................................................................23

*Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*,
    410 F.3d 492 (9th Cir. 2005) ................................................................................................19

*Air Conditioning, Heating & Refrigeration Inst. v. City of Albuquerque*,
    2008 WL 5586316 (D.N.M. Oct. 3, 2008) .............................................................11, 18, 19

*Algonquin Gas Transmission, LLC v. Town of Weymouth*,
    365 F. Supp. 3d 147 (D. Mass. 2019) ..................................................................................12

*Am. Diabetes Ass'n v. U.S. Dep't of the Army*,
    938 F.3d 1147 (9th Cir. 2019) ..............................................................................................10

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ................................................................................................15

*Bldg. Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council*,
    683 F.3d 1144 (9th Cir. 2012) ........................................................................................20, 21

*Briseno v. City of Santa Ana*,
    6 Cal. App. 4th 1378 (1992) ..............................................................................................5, 23

*Building Ind. Ass'n v. City of Livermore*,
    45 Cal. App. 4th 719 (1996) ............................................................................................23, 24

*Cal. Tow Truck Ass'n v. City & Cty. of S.F.*,
    693 F.3d 847 (9th Cir. 2012) ................................................................................................10

*Cal. Trucking Ass'n v. Becerra*,
    2020 WL 248993 (S.D. Cal. Jan. 16, 2020) .........................................................................13

*Calvary Chapel Bible Fellowship v. Cty. of Riverside*,
    2017 WL 6883866 (C.D. Cal. Aug. 18, 2017) .....................................................................13

*Carnohan v. United States*,
    616 F.2d 1120 (9th Cir. 1980) ..............................................................................................15

*Clark v. City of Seattle*,
    899 F.3d 802 (9th Cir. 2018) ................................................................................................11

*Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.*,
   99 F.3d 937 (9th Cir. 1996)................................................................................16

*Crazy Eddie, Inc. v. Cotter*,
   666 F. Supp. 503 (S.D.N.Y. 1987).........................................................................8

*Desert Citizens Against Pollution v. Bisson*,
   231 F.3d 1172 (9th Cir. 2000).................................................................................9

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*,
   463 U.S. 1 (1983)....................................................................................................8

*Harris v. Bd. of Supervisors, L.A. Cty.*,
   366 F.3d 754 (9th Cir. 2004)..................................................................................9

*Harris v. Mex. Specialty Foods, Inc.*,
   564 F.3d 1301 (11th Cir. 2009)............................................................................10

*Hodel v. Va. Surface Min. & Reclamation Ass'n, Inc.*,
   452 U.S. 264 (1981)..............................................................................................12

*Knox v. Brnovich*,
   907 F.3d 1167 (9th Cir. 2018)..............................................................................10

*L.A. Cty. Bar Ass'n v. Eu*,
   979 F.2d 697 (9th Cir. 1992)................................................................................10

*League of Women Voters of Cal. v. Kelly*,
   2017 WL 3670786 (N.D. Cal. Aug. 25, 2017)....................................................13

*Lougy v. Volkswagen Grp. of Am., Inc.*,
   2016 WL 3067686 (D.N.J. May 19, 2016) ...........................................................8

*Maronyan v. Toyota Motor Sales, U.S.A., Inc.*,
   658 F.3d 1038 (9th Cir. 2011)..........................................................................14, 15

*Murphy v. New Milford Zoning Comm'n*,
   402 F.3d 342 (2d Cir. 2005)................................................................................11

*N. Star Gas Co. v. Pac. Gas & Elec. Co.*,
   2016 WL 5358590 (N.D. Cal. Sept. 26, 2011) ...................................................16

*Nat'l Audubon Soc'y Inc. v. Davis*,
   307 F.3d 835 .........................................................................................................12

*Nat'l Council of La Raza v. Cegavske*,
   800 F.3d 1032 (9th Cir. 2015)..............................................................................13

*Nat'l Treasury Emps. Union v. Chertoff*,
452 F.3d 839 (D.C. Cir. 2006) ................................................................................11

*NE Hub Partners, L.P. v. CNG Transmission Corp.*,
239 F.3d 333 (3d Cir. 2001) ...................................................................................11

*O'Connell v. City of Stockton*,
41 Cal. 4th 1061 (2007) .........................................................................................22

*Pac. Legal Found. v. State Energy Res. Conservation & Dev. Comm'n*,
659 F.2d 903 (9th Cir. 1981) ..................................................................................11

*Pac. Merch. Shipping Ass'n v. Aubry*,
918 F.2d 1409 (9th Cir. 1990) ..................................................................................8

*Peick v. Pension Ben. Guar. Corp.*,
539 F. Supp. 1025 (N.D. Ill. 1982), aff'd, 724 F.2d 1247 (7th Cir. 1983) ....................12

*Pharm. Research & Mfrs. of Am. v. Walsh*,
538 U.S. 644 (2003) (Breyer, J., concurring) ............................................................14

*Pimental v. Google, Inc.*,
2012 WL 1458179 (N.D. Cal. Apr. 26, 2012) .......................................................14, 15

*PNG Telecomms., Inc. v. Pac-West Telecomm, Inc.*,
2010 WL 3186195 (E.D. Cal. Aug. 11, 2010) ...........................................................16

*Reudy v. Clear Channel Outdoor, Inc.*,
2009 WL 1108519 (N.D. Cal. Apr. 24, 2009) ...........................................................16

*Reudy v. Clear Channel Outdoor, Inc.*,
2010 WL 4918792 (N.D. Cal. Nov. 29, 2010) .......................................................16, 17

*Rhoades v. Avon Prods., Inc.*,
504 F.3d 1151 (9th Cir. 2007) .................................................................................15

*Roe No. 2 v. Ogden*,
253 F.3d 1225 (10th Cir. 2001) ...............................................................................10

*S. Cal. Gas Co. v. Cty. of L.A.*,
2017 WL 8793753 (C.D. Cal. Dec. 4, 2017) ..............................................................8

*S. Or. Barter Fair v. Jackson Cty.*,
372 F.3d 1128 (9th Cir. 2004) .................................................................................13

*S. Pac. Transp. Co. v. Pub. Utils. Comm'n of Cal.*,
716 F.2d 1285 (9th Cir. 1983) ..................................................................................8

*S.E.C. v. McCarthy*,
   322 F.3d 650 (9th Cir. 2003)................................................................................24

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004)..............................................................................9

*Sanders v. Choice Mfg. Co., Inc.*,
   2011 WL 6002639 (N.D. Cal. Nov. 30, 2011)....................................................16

*Shaw v. Delta Air Lines, Inc.*,
   463 U.S. 85 (1983)...............................................................................................8

*Stoianoff v. State of Mont.*,
   695 F.2d 1214 (9th Cir. 1983)............................................................................11

*Tex. and Pac. Ry. Co. v. Abilene Cotton Oil Co.*,
   204 U.S. 426 (1907).............................................................................................14

*Thomas v. Anchorage Equal Rights Comm'n*,
   220 F.3d 1134 (9th Cir. 2000)..............................................................................9

*United States v. Arizona*,
   641 F.3d 339 (9th Cir. 2011), *rev'd in part on other grounds*, 567 U.S. 387 (2012) ....................12

*United States v. Colo. Supreme Court*,
   87 F.3d 1161 (10th Cir. 1996).............................................................................10

*United States v. Supreme Court of N.M.*,
   980 F. Supp. 2d 1334 (D.N.M. 2013)..................................................................11

*United States v. W. Pac. R.R. Co.*,
   352 U.S. 59 (1956)..............................................................................................14

*W. Flagler Assocs., Ltd. v. City of Miami*,
   407 F. Supp. 3d 1291 (S.D. Fla. 2019) ...............................................................12

*W. Oil & Gas Ass'n v. Sonoma Cty.*,
   905 F.2d 1287 (9th Cir. 1990)...............................................................................9

*W. States Trucking Ass'n v. Schoorl*,
   377 F. Supp. 3d 1056 (E.D. Cal. 2019)...............................................................13

*Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*,
   654 F.3d 919 (9th Cir. 2011)...............................................................................10

**Statutes**

42 U.S.C. §§ 6201 et seq..................................................................................... *passim*

Cal. Code Reg. tit. 24, pt. 2.5, § 1.1.8.1 ................................................................24

Cal. Code Reg. tit. 24, pt. 4, § 1.1.8.1 ...................................................................24

Cal. C17ode Reg. tit. 24, pt. 5, § 1.1.8.1 ...............................................................24

Cal. Code Reg. tit. 24, pt. 6, § 1.1.8.1 ...................................................................25

Cal. Health & Safety Code § 17958 ..................................................................17, 24

Cal. Health & Safety Code § 18909 ............................................................5, 22, 23

Cal. Health & Safety Code § 18945 ..................................................................17, 18

Cal. Pub. Res. Code § 25402.1 ..............................................................................25

Code Cal. Reg. § 10-106 ..........................................................................................6

Ordinance No. 7,672-N.S., Municipal Code §§ 12.80.010 et seq. ................................. *passim*

**Other Authorities**

Black's Law Dictionary 102 (11th ed. 2019) ..........................................................24

California Constitution Article XI, section 7 .........................................................22

Fed. R. Civ. P. 12 ...................................................................................................18

Richard J. Pierce, Jr., *Primary Jurisdiction: Another Victim of Reality*, 69 Admin. L.
    Rev. 431, 437 (2017) .......................................................................................15

S. Rep. No. 110-6 (1987) .....................................................................................4, 5

The California Restaurant Association (the "CRA") hereby opposes the Motion to Dismiss ("Motion," ECF No. 18) filed by the City of Berkeley ("Berkeley" or the "City").

## INTRODUCTION

Berkeley rushed to enact a natural gas infrastructure ban so as to lay claim to being the first city in the nation to prohibit the use of natural gas. To be the first, it needed to cut corners. Specifically, it needed to bypass state law requiring it to follow specific procedures for amending the state's energy and building standards codes. Regardless of the City's policy objectives, it is not too much to expect city officials to comply with the law, or to shine daylight on the City's actions by having the Court hear the arguments of concerned citizens.

Berkeley's July 2019 ban on natural gas infrastructure in new buildings (the "Ordinance") impacts the members of the CRA, who are restaurant owners and chefs operating in Berkeley and who rely on natural gas for their manner and speed of food preparation and for an affordable and reliable energy source. This ban will prevent members from occupying new restaurant buildings, since many restaurants cannot prepare their unique dishes without using gas, or will force them to alter their food preparation and bear higher costs.

State law in the form of energy and building standards codes govern both the regulation of energy and building standards. Municipalities must comply with these codes. They may deviate from them only by following specific procedures for amending the codes (which in the parlance is known as passing a "reach code"). Instead of complying with the state law, the City attempted by fiat to declare that it was "not" amending the Energy Code, even though it plainly did. And it tried to bypass the regulatory scheme by alleging that the Ordinance was passed pursuant to the City's police powers. Controlling law provides, however, that a city may not rely on these police powers to simply exempt itself from state law.

Now that the Ordinance has been challenged on federal and state preemption grounds, Berkeley resorts to a variety of semantic arguments about all the things its ban is not: it is not a ban; it does not address energy efficiency; it is not a building standard; it is not an energy standard; and it is not an "amendment." Characterizing the ban as something else does not change the result under the plain language of the governing statutes.

Berkeley claims the Ordinance is not a ban because it is subject to two "exemptions."  But even Berkeley's brief describes its Ordinance as a ban and as "first-in-the-nation restrictions on natural gas connections in new construction" that "is intended to 'eliminate obsolete natural gas infrastructure.'" Motion at 3.  Further, case law makes clear that the exemptions do not make this any less of a ban -- as-applied exemptions do not undercut a facial challenge to an ordinance.  Applicants will have to go through a permitting process that is itself preempted.  Moreover, the "exemptions" Berkeley now touts are illusory -- as a practical matter buildings are still subject to the ban.  And that a City official might find that it is in the "public interest" to allow the use of natural gas and that no "alternatives" (*e.g.*, electric) exist, is not really an exemption when it comes to a facial challenge to an ordinance.

Berkeley also asserts its ban does not regulate "energy efficiency" and therefore is not subject to federal energy regulation under the EPCA. But the language of the EPCA is not so limited; it addresses any regulation that "concerns" "energy use" of the covered products, and the Ordinance falls within this scope by barring natural gas and therefore appliances that *use* natural gas.

Berkeley's claim that the Ordinance is not a "building standard" under state law fares no better. A city enacts a "building standard" if it seeks to regulate "properties" or "types of material" that can be used for "construction" or "improvement" of a building or property. This is plainly the case here, where Berkeley has banned natural gas infrastructure in new construction. And state law does not permit Berkeley's apparent distinction that it has not "amended" the code unless it "deletes" a provision; that interpretation ignores the ordinary meaning of "amend" and would make other statutory terms surplusage.

Similarly, municipal ordinances that alter the state's Energy Code are preempted unless they are adopted under a very specific statutory grant of authority. The Ordinance modifies the Energy Code by precluding use of natural gas infrastructure and appliances that would otherwise be available under the state code. Instead of following the statutorily-required procedures for such modifications, the Ordinance states in conclusory fashion that it is not amending the Energy Code. But Berkeley cannot simply opt out of the state law by fiat. Berkeley does not even claim to have met the state procedural requirements, which it could not have done given the speed with which it passed the Ordinance.

The result of all this is that Berkeley did, in fact, enact a natural gas infrastructure ban, that ban is

a building standard, and that building standard amends the state Building and Energy Codes. Accordingly, the ban is preempted by state law unless Berkeley can show it met the specific statutory grants of authority for such amendments, which it all but concedes it did not.

Finally, Berkeley's jurisdictional challenges fail under black letter law. The Court has subject matter jurisdiction because the CRA seeks to enjoin state action under a preempted law. The CRA has standing to make a facial preemption attack on the Ordinance, which is presumed to be ripe, rendering the as-applied cases cited by the City inapplicable in this context. Further, the primary jurisdiction doctrine generally is for purposes of deference to federal agencies — the Ninth Circuit has questioned its applicability to deference to state agencies, which in any event is sharply limited. Here, the Court is in the best position to determine whether a municipality's ordinance is preempted by federal and state law — agencies have no special authority or expertise in deciding these questions, which are well within the conventional experience of district courts. Indeed, it is unclear that there even is a procedure to challenge an ordinance on preemption grounds before the state agencies.

By rushing to pass this Ordinance in violation of federal and state law, Berkeley bypassed an important public debate, and now seeks to avoid scrutiny of its actions by a court. Questions such as whether to require citizens to use all-electric appliances, to ban natural gas, and to encourage one form of energy over another are decisions on which the public has a right to expect that statutory protections will be respected. For example, generation of electricity to run appliances may require more gas to create the electricity than if the appliance were gas-powered in the first place. And it may not make sense to overburden the electrical grid during a time of electricity-caused wildfires and widespread blackouts. Moreover, citizens may want the choice of using gas for cooking and eating at favored restaurants. The CRA notes these policy questions not for the Court to resolve them, but to underscore the importance of elected bodies complying with laws that strike a deliberate balance when it comes to federal and state energy policy. When a municipality's actions may violate federal and state law, it is perfectly appropriate for the matter to be heard by a federal court, particularly when involving separation of powers and federalism. This is all the more true here given the charged emotions involved in this dispute, which already have led to barely-veiled threats to the CRA's members for bringing this case.

The CRA respectfully requests that the Court deny Berkeley's motion to dismiss, and enter a schedule under which this case can be promptly heard and resolved on the merits.

## STATEMENT OF ISSUES

1. Does the Court have subject matter jurisdiction over the CRA's claims, which seek to enjoin state action based on federal preemption?

2. Is the CRA's facial challenge to the Ordinance justiciable in terms of both standing and ripeness?

3. Should the Court defer to state agencies on federal preemption claims and statutory interpretation?

4. Has the CRA plausibly pled that the Ordinance concerns energy use and is thus preempted under federal law?

5. Has the CRA plausibly pled that Berkeley did not comply with state statutory requirements for modifications to the state code?

## BACKGROUND

With great fanfare, in July 2019, Berkeley adopted Ordinance No. 7,672-N.S., Municipal Code §§ 12.80.010 et seq., prohibiting all natural gas infrastructure in newly constructed buildings in Berkeley, which went into effect on January 1, 2020. Compl. ¶¶ 42-43. This Ordinance effectively bars the use of natural gas and natural gas appliances in newly constructed buildings in Berkeley. *Id.* ¶ 1.

The federal EPCA, 42 U.S.C. §§ 6201 et seq., regulates the energy efficiency and energy use of a variety of consumer and commercial products. Compl. ¶¶ 3, 35, 39. Both gas and electric appliances are regulated, including air conditioners, water heaters, furnaces, clothes washers and dryers, and kitchen ranges. *Id.* ¶ 35; 42 U.S.C. §§ 6292, 6295. The EPCA was enacted following the adoption of a multiplicity of state energy standards, and Congress recognized that "appliance manufacturers were confronted with the problem of a growing patchwork of differing state regulations which would increasingly complicate their design, production and marketing plans." S. Rep. No. 110-6 at 4 (1987); Compl. ¶ 2. One of the purposes of the EPCA was to "reduce the regulatory and economic burdens on the appliance manufacturing industry through the establishment of national energy conservation standards for

major residential appliances." S. Rep. No. 110-6 at 2; Compl. ¶ 2.

Consistent with this purpose, the EPCA's consumer standards explicitly preempt state and local regulations "concerning the energy efficiency" and "energy use" of the products covered by the EPCA. Compl. ¶ 36; 42 U.S.C. §§ 6297(c), 6316(b)(2)(A). The EPCA contains only limited exceptions to this general rule of preemption, requiring state and local regulations to meet seven statutory criteria to qualify for exemption. Compl. ¶ 37; 42 U.S.C. § 6297(f)(3). The EPCA also governs the energy efficiency of certain commercial appliances, including air conditioners, furnaces, and water heaters. Compl. ¶ 39; 42 U.S.C. § 6313. Again, these standards with limited exceptions explicitly "supersede any State or local regulation concerning the energy efficiency or energy use of a product for which a standard is" in the federal statute. Compl. ¶ 40; 42 U.S.C. § 6316(b)(2)(A).

The California Legislature also has enacted state-wide policies for certain aspects of energy policy and building standards and has manifested its intent to preempt the field of building standards. Compl. ¶¶ 13, 19; *Briseno v. City of Santa Ana*, 6 Cal. App. 4th 1378, 1381-82 (1992). The California Building Standards Law, Sections 18901 et seq. of the California Health and Safety Code ("HSC"), defines a building standard as "any rule, regulation, order, or other requirement . . . that specifically regulates, requires, or forbids the method of use, properties, performance, or types of materials used in the construction . . . of a building." Compl. ¶ 18; HSC § 18909(a). The California Building Standards Code (together with the California Building Standards Law, "Building Code"), set forth in Title 24 of the California Code of Regulations, regulates a variety of aspects of energy use in buildings, including infrastructure for and installation of natural gas appliances. Compl. ¶¶ 19-27. Specifically, Part 2.5 of the Building Code, known as the California Residential Code, allows natural gas appliances for fireplaces. *Id.* ¶¶ 20-21. Part 4, the California Mechanical Code, regulates matters such as the maximum pressure for natural gas in piping in a structure; the size of gas piping; the volumetric flow rate for gas; gas pressure regulators; and appliance connections to gas piping. *Id.* ¶¶ 22-23. Part 5, the California Plumbing Code, contains regulations of gas piping and gas piping systems in a structure. *Id.* ¶¶ 24-25. The Building Code permits installation of gas infrastructure and use of gas appliances in newly constructed buildings so long as its standards are met. *Id.* ¶¶ 20-25.

These provisions of the Building Code preempt local regulation of these matters. Where a local government desires to amend the Building Code to adopt more stringent requirements, it must expressly make findings of local necessity and identify each amendment and the findings applicable to each. *Id.* ¶¶ 29, 31-32. The amendments must be filed with the California Building Standards Commission ("CBSC") before they can become effective. *Id.*

Similarly, Part 6, the California Energy Code ("Energy Code"), establishes certain energy standards and includes requirements applicable to natural gas devices and appliances, including, by way of example, requirements for appliances in newly constructed buildings such as efficiency standards for gas engine heat pumps, gas fired warm air furnaces, and gas water heaters and systems. Compl. ¶¶ 26-27. Under these provisions, the Energy Code permits the use of natural gas and natural gas appliances and devices so long as its requirements are met. *Id.*

As part of the building standards, local regulation of energy standards also is preempted. To amend the Energy Code, local entities must make detailed applications to the California Energy Commission ("CEC") for approval and must submit (1) the proposed energy standards; (2) "findings and supporting analyses on the energy savings and cost effectiveness of the proposed energy standards;" (3) a finding that the proposed standards "will require buildings to be designed to consume less energy;" and (4) any determination "required pursuant to the California Environmental Quality Act" ("CEQA"). *Id.* ¶ 33; Cal. Code Reg. § 10-106 (listing submission requirements).

In July 2019, Berkeley voted to pass a new Ordinance amending its Municipal Code to add a new Chapter 12.80, "Prohibiting Natural Gas Infrastructure" in newly constructed buildings. Compl. ¶ 42. The Berkeley Municipal Code contains a section, Title 19, regulating "Buildings and Construction," which contains Berkeley's building and energy code. Compl. ¶ 45. The Ordinance, however, was enacted as part of Berkeley's Health and Safety Code and provides that its requirements "shall apply to Use Permit or Zoning Certificate applications." Compl. ¶¶ 44-45.

Berkeley's ban has two purported "exemptions." The first allows gas where all-electric is "not physically feasible," Berkeley Ordinance § 12.80.040.A.1, which Berkeley explains reflects the that the ban applies to buildings where the CEC has modeled all-electric construction but will apply to all

buildings as the CEC issues new models, Motion at 3 — i.e., there is no "exemption" available for the types of buildings already covered by the ban. The second exemption allows gas if the City finds it to be in the "public interest" based on (a) other alternatives that are available, and (b) issues of safety and health — issues that have already been determined in the Ordinance itself. Berkeley Ordinance § 12.80.050.A.

The CRA brought this case because it has members that do business in Berkeley. Compl. ¶ 8. Its members "rely on gas for cooking particular types of food, whether it be flame-seared meats, charred vegetables, or the use of intense heat from a flame under a wok," as well as for heating space and water, and for backup power. *Id.* ¶ 5. The CRA's members "will be unable to prepare many of their specialties without natural gas," and will lose speed and control over the "manner and flavor of food preparation." *Id.* Berkeley's Ordinance affects and will affect its members, who will not be able to move into or build new buildings and still prepare food in the manner and speed necessary and with a reliable and affordable energy source. *Id.* ¶¶ 5, 8-9.

In its rush to be the first all-electric city in California to ban natural gas, Berkeley violated federal and state law. *Id.* ¶ 2. While the CRA supports addressing climate change, Berkeley's Ordinance will do little to improve the environment while imposing harm and cost on the CRA members. *Id.* ¶¶ 1, 6. Berkeley's conclusory assertion that use of electricity in buildings is better for the environment than alternative forms of energy, such as gas, is not based on reliable studies or on a robust public debate, and ignores other concerns such as reliability and resilience of the energy grid and affordability. *Id.* ¶¶ 4, 6. This is part and parcel of why federal and state regulatory frameworks impose specific requirements on the regulation of energy use. *Id.* ¶ 4.

## ARGUMENT

## I.   THIS COURT HAS SUBJECT MATTER JURISDICTION.

It is black-letter law that federal courts have jurisdiction over suits in which the plaintiff seeks to enjoin state action. Berkeley's motion to dismiss ignores this well-established law and focuses instead on the general rule that federal courts ordinarily lack jurisdiction over claims where the federal question is only relevant to a defense. Motion at 7-8. While this is correct, in *Franchise Tax Board*, which confirmed this general rule, the Supreme Court recognized "in some cases . . . a person subject to a scheme of federal

regulation may sue in federal court to enjoin application to him of conflicting state regulations." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 20 n.20 (1983). And indeed, in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983), the Supreme Court found it "beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Id.* (citing *Ex parte Young,* 209 U.S. 123, 160-62 (1908)). The Court thus held that an airline alleging that a New York statute was preempted by ERISA could bring a declaratory judgment action in federal court. In short, there is federal question jurisdiction when a party "seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail." *Id.* The Ninth Circuit has likewise held that federal courts have jurisdiction to hear suits to enjoin the enforcement of preempted state laws: "when a plaintiff seeks to enjoin state action because federal law preempts it, jurisdiction is proper." *S. Pac. Transp. Co. v. Pub. Utils. Comm'n of Cal.*, 716 F.2d 1285, 1288 (9th Cir. 1983); *see also Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1414 (9th Cir. 1990); *S. Cal. Gas Co. v. Cty. of L.A.*, 2017 WL 8793753, at *4 (C.D. Cal. Dec. 4, 2017). Accordingly, this Court has subject matter jurisdiction.

In light of this controlling precedent, Berkeley's reliance on two district court cases that involve the EPCA is misplaced. In both (at least in the portions Berkeley cites), the courts were addressing *removal* based on a federal defense, which under the well-pleaded complaint rule is treated differently than a suit to enjoin a state actor. *See Crazy Eddie, Inc. v. Cotter*, 666 F. Supp. 503, 508-09 (S.D.N.Y. 1987) (removal improper since no federal question appeared on the face of New York's complaint, and the preemption issue was merely a defense); *Lougy v. Volkswagen Grp. of Am., Inc.*, 2016 WL 3067686, at *1-3 (D.N.J. May 19, 2016) (removal question answered from the face of a well-pleaded complaint). Berkeley ignores the part of the *Crazy Eddie* court's decision that addressed the separate suit for declaratory and injunctive relief — which is more analogous to the suit here. There, the court recited the principles explained above but abstained from decision in light of the first-filed, state-court enforcement action. *Id.* at 511. Berkeley cites the wrong portion of the case (relating to removal); *Crazy Eddie* does not support its argument on jurisdiction.

## II.        THE CRA HAS STANDING AND ITS DISPUTE IS RIPE.

To establish standing, the CRA must show an injury in fact, a causal connection between the injury and the conduct (here, the Ordinance), and that the injury is redressable by a court decision. *See Harris v. Bd. of Supervisors, L.A. Cty.*, 366 F.3d 754, 760 (9th Cir. 2004) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). An association has standing to sue on behalf of its members where: "(1) the organization's members must otherwise have had standing to sue on their own; (2) the interests the organization seeks to protect must be germane to its purpose; and (3) neither the asserted claim nor the requested relief may require the members' individual participation in the suit." *Id.* at 761. In deciding the issue of standing at the pleadings stage, the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the" plaintiff. *Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1178 (9th Cir. 2000) (quotation omitted). Similarly, ripeness turns on whether a particular issue is concrete, not hypothetical, and fit for judicial review. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000); *W. Oil & Gas Ass'n v. Sonoma Cty.*, 905 F.2d 1287, 1291 (9th Cir. 1990) (quotation omitted).

Here, the allegations in the Complaint are sufficient to demonstrate that the CRA is a proper party to litigate whether Berkeley's ban is preempted, and that its facial challenge to the ban is ripe. The CRA has alleged that it has members that do business in Berkeley; that those members use and rely on natural gas for food preparation, heating space and water, and backup power; that members will not be able to prepare their specialties in the same manner or speed without the use of gas; and that the loss of gas in newly constructed buildings will affect its members. *See* Compl. ¶¶ 5, 8-9. Taking these allegations as true, they are more than sufficient to show a concrete injury.

Berkeley's argument is based on the facts alleged in the Complaint (as opposed to facts outside the complaint).[1] Berkeley also does not challenge that the harm to the CRA's members, if they could not

---

[1] The CRA understands that Berkeley is making a facial challenge to standing, not a factual challenge. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (explaining that a factual attack is one where "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction"); *see also* Motion at 10 (not disputing the truth of the CRA's

use natural gas appliances in new buildings, would constitute a legal injury. Instead, Berkeley argues that the facts alleged in the Complaint are legally insufficient for three reasons: first, because Berkeley has not yet brought an enforcement action against a CRA member; second, because the CRA member has not yet requested and been denied an exemption to the Ordinance; and third, because the CRA has not named a specific affected member in Berkeley. None of these arguments defeats standing or ripeness.

### A.  __The CRA Need Not Wait For An Enforcement Action To Make A Facial Challenge.__

Berkeley argues the CRA was required to wait for an enforcement action to bring an as-applied challenge on the facts of a particular case.  But this is not an <u>as-applied</u> challenge. Rather, it is a <u>facial</u> challenge, which does not depend on the particular application of the Ordinance. *See Harris v. Mex. Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009); *Roe No. 2 v. Ogden*, 253 F.3d 1225, 1232 (10th Cir. 2001) ("[W]e will not benefit from further factual development because the Students' action is a facial challenge.")*; L.A. Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) ("Further factual development will not assist our consideration of" a facial challenge where the "relevant facts are clear"). Indeed, courts routinely allow facial challenges for preemption claims. *See, e.g.*, *Cal. Tow Truck Ass'n v. City & Cty. of S.F.*, 693 F.3d 847, 865 (9th Cir. 2012); *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 926 (9th Cir. 2011); *Knox v. Brnovich*, 907 F.3d 1167, 1173 (9th Cir. 2018). "Once the gun has been cocked and aimed and the finger is on the trigger, it is not necessary to wait until the bullet strikes to invoke the Declaratory Judgment Act." *United States v. Colo. Supreme Court*, 87 F.3d 1161, 1166 (10th Cir. 1996) (quotation omitted).

In other words, "[i]n the context of a facial challenge, a purely legal claim is *presumptively ripe* for judicial review because it does not require a developed factual record." *Harris*, 564 F.3d at 1308 (emphasis added); *see also id.* (noting that ripeness "applies differently to facial and as-applied challenges"). As the court noted in assessing a preemption claim under the EPCA, a "challenge to the facial validity" of an ordinance involves "predominantly legal questions" that do not require "further

---

allegations, and arguing only that the "alleged injury is . . . insufficient to establish standing"). But in any event, if Berkeley intended to make a factual attack, its failure to provide contrary evidence is fatal to its argument. *See Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1151 (9th Cir. 2019).

factual development." *Air Conditioning, Heating & Refrigeration Inst. v. City of Albuquerque*, 2008 WL 5586316, *4 (D.N.M. Oct. 3, 2008) (collecting cases). "[U]ndergoing the [preempted state] process . . . is a hardship cognizable for preemption purposes, and thus for determining ripeness of [the] preemption claims." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 345 (3d Cir. 2001) (finding ripe preemption claims against proceedings before a state agency for Pennsylvania); *see also United States v. Supreme Court of N.M.*, 980 F. Supp. 2d 1334, 1340-41 (D.N.M. 2013) ("Courts have repeatedly held that cases involving preemption issues are ripe for judicial resolution even in the absence of the development of specific factual issues."). Here, the issues raised — preemption under the EPCA and state law — are primarily legal and do not require further factual development.[2]

**B. The Nominal Availability Of Exemptions To The Ordinance Does Not Change The <u>Standing Or Ripeness Analysis.</u>**

Berkeley suggests that the Ordinance's exemptions preclude a facial challenge because a member of the CRA theoretically could apply for an exemption before suing. But this argument again ignores the distinction between facial and as-applied challenges. "[A] purely legal challenge to final agency action is not unfit for review merely because the application of the disputed rule remains within the agency's discretion." *Nat'l Treasury Emps. Union v. Chertoff*, 452 F.3d 839, 854 (D.C. Cir. 2006). The question is not "whether state and local law enforcement officials can apply the statute in a constitutional way"; rather, "there can be no constitutional application of a statute that, on its face, conflicts with

---

[2] Berkeley's cases all involve as-applied challenges. *See, e.g.*, *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342 (2d Cir. 2005) (challenge to the *application* of a zoning regulation to prevent prayer group meetings in the plaintiff's home); *Clark v. City of Seattle*, 899 F.3d 802, 810 (9th Cir. 2018) (adjudicating an as-applied challenge on preemption grounds). Indeed, Berkeley quotes the Ninth Circuit for the proposition that a claim is unripe if it "would be illuminated by the development of a better factual record." Motion at 11 (quoting *Pac. Legal Found. v. State Energy Res. Conservation & Dev. Comm'n*, 659 F.2d 903, 915 (9th Cir. 1981)). But the previous sentence of the same case notes that "[a] challenge to a statute or regulation that has not yet been applied is generally considered fit for judicial determination if the issue raised is a 'purely legal one.'" *Id.* Similarly, only one standing case Berkeley cites involves a facial challenge, and in that case, the Ninth Circuit in fact adjudicated the plaintiff's facial challenge to aspects of the statute that the plaintiff expected would be applied to him, and held only that the plaintiff could not "make a facial challenge to a statute claimed to be unconstitutional *as applied to the conduct of others*." *Stoianoff v. State of Mont.*, 695 F.2d 1214, 1218-23 (9th Cir. 1983) (emphasis added). Berkeley cites no case holding that a plaintiff cannot raise legal questions through pre-enforcement facial challenge.

Congressional intent and therefore is preempted." *United States v. Arizona*, 641 F.3d 339, 346 (9th Cir. 2011) (finding standing to bring a facial challenge on preemption grounds), *rev'd in part on other grounds*, 567 U.S. 387 (2012); *see also Nat'l Audubon Soc'y Inc. v. Davis*, 307 F.3d 835, 843, 849, 852, 856 (finding standing to challenge Proposition 4, an animal leg-trap ban, despite an explicit exception to the ban "for the protection of human health or safety" and despite a lack of enforcement except as to one individual trapper who was not involved in the case).

Courts repeatedly have held that the nominal availability of exemptions does not mean a *facial* preemption challenge is unripe.[3] For example, in a recent case, a gas company sought declaratory judgment that a town's regulation was preempted by the Natural Gas Act. *Algonquin Gas Transmission, LLC v. Town of Weymouth*, 365 F. Supp. 3d 147, 150 (D. Mass. 2019). The defendant argued that the claim was not ripe because the plaintiff "never requested an exemption from local zoning requirements." *Id.* at 155. The court held that when its ruling would determine whether the plaintiff even *needed* to seek such an exception, the issue was ripe. *Id.* That result is consistent with how courts regularly distinguish the impact of exemptions on the ripeness of facial claims as compared to as-applied ones. "[T]he lack of a factual record and the possibility of an exemption might indicate a lack of ripeness if plaintiffs were challenging [the statute] as applied," but the exemptions "present no bar" to a facial challenge. *Peick v. Pension Ben. Guar. Corp.*, 539 F. Supp. 1025, 1038 (N.D. Ill. 1982), aff'd, 724 F.2d 1247 (7th Cir. 1983). Indeed, when the Supreme Court ruled on a lawsuit combining both facial and as-applied challenges to coal mining regulations, the Court ruled on the facial challenges, and refused to evaluate *only* the as-applied challenges because the plaintiffs had not sought an exemption. *Hodel v. Va. Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 297 (1981); s*ee also W. Flagler Assocs., Ltd. v. City of Miami*, 407 F. Supp. 3d 1291, 1295-97 (S.D. Fla. 2019) (distinguishing between facial and as-applied challenges in deciding whether plaintiff had to try to "obtain an exception" to a land use regulation before suing).[4]

---

[3] Berkeley also argues that the CRA's state law preemption claims regarding the CBSC are not ripe because of the potential availability of exemptions. This argument fails for the same reason articulated here: the possibility that an exemption *could* apply does not make a facial attack unripe.

[4] Despite this authority, Berkeley suggests that facial challenges are only "available under limited

C. **The CRA Does Not Need To Name A Specific Affected Member.**

Berkeley also claims that the CRA's allegations of injury are insufficient because it has not named specific members who seek to operate in new buildings in Berkeley. But the Ninth Circuit has held that pleadings do not have to name an affected member of an association as long as the effect on the members "is relatively clear, rather than merely speculative" and "where the defendant need not know the identity of a particular member to understand and respond" to the claims." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).  Similarly, in holding that an organization need not "identify its members by name to establish associational standing," the Northern District of California noted: "The court cannot discern why — at the pleadings stage — the identity of particular members is required for fair notice of the claims." *League of Women Voters of Cal. v. Kelly*, 2017 WL 3670786, at *8 (N.D. Cal. Aug. 25, 2017); *see also Cal. Trucking Ass'n v. Becerra*, 2020 WL 248993, at *5 (S.D. Cal. Jan. 16, 2020) (finding associational standing because the challenger failed to explain why it could not "address the predominately legal claims" without identification of a particular member); *W. States Trucking Ass'n v. Schoorl*, 377 F. Supp. 3d 1056, 1069 (E.D. Cal. 2019) (same).

The *Nat'l Council of La Raza* requirements are met here, and the CRA need not identify a particular affected member. The CRA has adequately pled clear injury to its members. Compl. ¶¶ 5, 8-9. Berkeley provides no explanation of why the harm alleged to the CRA's members is insufficient unless a member is named, nor does it explain why the identity of a member is necessary to allow analysis of the preemption claims. The CRA's preemption claims are predominately legal, and Berkeley can "understand and respond" to the claims without knowing the identity of an injured member.[5]

---

circumstances where First Amendment violations are alleged," but not "for challenging an ordinary land use regulation." Motion at 10. This is simply incorrect: courts regularly adjudicate facial challenges to land use regulations; there is no categorical bar to bringing non-First-Amendment challenges to land use regulations. In context, the cases Berkeley cites hold only that *First Amendment* claims cannot be brought against land use licensing laws unless the land use regulations have a "close enough nexus to expression." *See S. Or. Barter Fair v. Jackson Cty.*, 372 F.3d 1128, 1135 (9th Cir. 2004); *Calvary Chapel Bible Fellowship v. Cty. of Riverside*, 2017 WL 6883866, *8 (C.D. Cal. Aug. 18, 2017).

[5] Further, given the politically sensitive topic of this case, there are good reasons not to publicly provide the identity of members. Groups opposed to this lawsuit have made thinly veiled threats to

### III.   THERE IS NO BASIS FOR THIS COURT TO DEFER TO THE CBSC AND CEC, WHICH DO NOT HAVE AUTHORITY TO RULE ON PREEMPTION.

While insisting that its Ordinance is not a building standard and does not affect the energy code, Berkeley nevertheless suggests that the Court should defer to the state agencies charged with overseeing the Building and Energy Codes. But this effort is unavailing —  those agencies have no special authority or expertise in deciding state and federal preemption claims, claims well within the conventional experience of district courts.

The primary jurisdiction doctrine is a prudential policy (not a jurisdictional prerequisite) that allows courts to defer in favor of an agency determination where the agency has authority over the issue in question and has expertise or technical knowledge that makes it more appropriate for the agency to resolve the question in the first instance. The classic example of these types of issues is rate-setting in the railway context. As the Supreme Court explained:

> Primary jurisdiction . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956); *see also, e.g.*, *Tex. and Pac. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 440-41 (1907). "[T]he question in each instance is whether a case raises 'issues of fact not within the conventional experience of judges,' but within the purview of an agency's responsibilities . . ." *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 673 (2003) (Breyer, J., concurring) (quotation omitted).

The Ninth Circuit has held that deference may be appropriate where, among other things, the issue is "not within the conventional experiences of judges" and "involves technical or policy considerations within the agency's particular field of expertise." *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1048-49 (9th Cir. 2011) (quotation and internal quotation marks omitted); *Pimental v. Google, Inc.*, 2012 WL 1458179, at *3 (N.D. Cal. Apr. 26, 2012) (same). "Allowing the district court to decline a

---

members of the CRA's Board, seeking to pressure them to discontinue the lawsuit. To the extent the Court were to conclude that it is necessary to name an affected member, the CRA respectfully requests that a protective order be entered to submit such information under seal.

declaratory relief action on a primary jurisdiction rationale is sensible only if the agency is better equipped to handle the action." *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1164 (9th Cir. 2007); *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (noting that "the doctrine is reserved for a limited set of circumstances") (quotation and internal quotation marks omitted); Richard J. Pierce, Jr., *Primary Jurisdiction: Another Victim of Reality*, 69 Admin. L. Rev. 431, 437 (2017) (explaining that "[j]udicial invocations of primary jurisdiction have become rare" due to delay and the possibility of agency amicus briefs). And "courts must also consider whether invoking primary jurisdiction would needlessly delay the resolution of claims." *Astiana*, 783 F.3d at 760.

The CRA's claims are simply not the type for which primary jurisdiction was designed. Federal and state preemption are not within the authority or discretion of either the CBSC or CEC to resolve. To the contrary, preemption and statutory interpretation are well within "the conventional experience" of district courts. *See Maronyan*, 658 F.3d at 1048-49; *Pimental*, 2012 WL 1458179, at *3.[6] That is particularly true here, where the CRA brings a facial challenge, not an as-applied challenge, that requires the resolution of primarily legal issues. And punting these issues to state agencies not clearly equipped to deal with them "would needlessly delay the resolution of" these claims. *Astiana*, 783 F.3d at 760.

In addition, while Berkeley suggests that concerns with uniformity could counsel in favor of deference to an agency, that theoretical concern does not apply here. Berkeley's Ordinance is unique; the other cities that Berkeley references in Sarah Moore's declaration (ECF No. 18-11) are passing "reach codes" that are very different than Berkeley's Ordinance — indeed, they are actual reach codes, where the cities did not cut corners, and instead attempted to follow state law for amending state building and energy codes.[7] But in all events, these local ordinances represent a departure from the state code and are not "uniform," and deferring resolution on Berkeley's Ordinance will not promote the goal of avoiding

---

[6] The issues here relating to preemption are not like the FCC's ratemaking authority or the FDA's ability to approve labels, where primary jurisdiction defers to agencies charged with applying the law in particular instances. For this reason, Berkeley's citation to *Carnohan v. United States*, 616 F.2d 1120, 1121-22 (9th Cir. 1980) is inapposite, because that case involved the FDA's decision on a matter within its special competence — and the FDA in fact had already resolved the issue raised.

[7] The CRA objects to consideration of the Moore Declaration on a motion to dismiss. *See* Response to Request for Judicial Notice at 7-8.

different results for different cities.

Moreover, it is doubtful whether primary jurisdiction may even be applied in a federal court with respect to a state agency, and the Ninth Circuit has expressed skepticism about this practice. Berkeley suggests that "[c]ourts in the Ninth Circuit have cited primary jurisdiction as a basis for deferring to the jurisdiction of state agencies," Motion at 13 (citing *Indus. Commc'ns Sys., Inc. v. Pac. Tel. & Tel. Co.*, 505 F.2d 152, 155-59 (9th Cir. 1974)). But Berkeley ignores that in *Cost Management Services*, the Ninth Circuit expressly called into question the decision in *Industrial Communications Systems*, noting that the trend is away from such deference. *See Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.*, 99 F.3d 937, 949 n.12 (9th Cir. 1996) (stating "that because 'the primary jurisdiction doctrine is in effect, a power-allocating mechanism, a court must not employ the doctrine unless the particular division of power was intended by Congress'") (quotation omitted). To be sure, a handful of district court cases after *Cost Management Services* have deferred to state agencies, but those cases are the exception and not the rule, and deferred only in sharply limited circumstances, where the agency *was already addressing the issue* or where there was an *express statutory grant of authority* to the agency. *E.g.*, *Reudy v. Clear Channel Outdoor, Inc.*, 2009 WL 1108519, at *4 (N.D. Cal. Apr. 24, 2009) (city was already doing what plaintiff sought);[8] *PNG Telecomms., Inc. v. Pac-West Telecomm, Inc.*, 2010 WL 3186195, at *8 (E.D. Cal. Aug. 11, 2010) (deferring to the CPUC where "the issues raised in this case are already pending before the CPUC" and "the statutory scheme specifically grants state commissions the authority to interpret" the relevant statute). Northern District of California cases have repeatedly recognized that deferring is improper in the absence of these narrowly defined categories — categories not applicable here. *E.g.*, *N. Star Gas Co. v. Pac. Gas & Elec. Co.*, 2016 WL 5358590, at *8 (N.D. Cal. Sept. 26, 2011) (rejecting application of the doctrine and distinguishing other cases on the grounds that "each of those cases, save one, involved a congressional delegation of authority by statute to either a federal or state agency"); *Sanders v. Choice Mfg. Co., Inc.*, 2011 WL 6002639, at *4 (N.D. Cal. Nov. 30, 2011) (distinguishing

---

[8] The court in *Reudy* subsequently clarified that it was *not* acting pursuant to the primary jurisdiction doctrine, but under the principle of equitable abstention (which has not been raised here). *Reudy v. Clear Channel Outdoor, Inc.*, 2010 WL 4918792, at *1-2 (N.D. Cal. Nov. 29, 2010).

*Reudy* on the grounds that the agency there was already considering the issue, and noting that it "is reluctant to stay this action pending a determination by the DOI since there is no indication that the DOI has taken up or will take up the issue"). In short, Berkeley's authority does not support the proposition that deference to state agencies is routine, let alone permissible here.

As to Berkeley's specific arguments, it points to no procedure that would allow claims of state and federal preemption to be raised and heard before the CBSC or CEC, nor does it provide any reason to believe that either agency has any authority to make such decisions. On Counts 2 and 3 (police power and California Building Code, respectively), Berkeley contends, in particular, that the Court should decline to hear these claims because they fall within the primary jurisdiction of the CBSC. Berkeley points, first, to the fact that cities can adopt local amendments to statewide standards, subject to findings concerning "local climatic, geological or topographical conditions," Motion at 22 (quoting HSC §§ 17958.5, 17958.7, 18941.5), and must file the modifications and findings with the CBSC. But Berkeley's cited CBSC review mechanisms do not establish the authority or discretion to address the state and federal preemption issues at stake in this lawsuit. HSC Section 17958 says that the CBSC "may" reject a modification *only* if "no finding was submitted." This severely cabins the grounds on which the CBSC could reject a modification, and Berkeley points to no authority for the CBSC to conduct a preemption review.

Second, Berkeley notes that HSC Section 18945(b) provides a dispute mechanism for a local agency's application of local ordinances and argues the CRA should be compelled to use it. As an initial matter, Berkeley's argument presumes the CRA must bring an as-applied challenge, rather than a facial challenge — which is incorrect. But what is more, HSC Section 18945(b) appears to allow an "appeal" only if *both* the city and the challenger agree to an appeal; even then the Commission has discretion on whether to accept the appeal, but only if the Commission thinks it is an issue of statewide importance:

> (b) If any local agency having authority to enforce a state building standard and any person adversely affected by any regulation, rule, omission, interpretation, decision, or practice of such agency respecting such building standard *both wish to appeal the issue for resolution to the commission, then both parties may appeal to the commission*. The commission may accept such appeal only if the commission determines that the issues involved in such appeal have statewide significance.

*Id.* (emphasis added).  Berkeley leaves out the key language – the part stating "both wish to appeal,"

referencing the "local agency" *and* the "person adversely affected" – and instead selectively quotes only the "any person adversely affected" language.  *See* Motion 14-15. In short, the limited conditional review afforded by these mechanisms does not suggest deference to the CBSC would be permissible.

As to the CEC, Berkeley points to specific sections in the Energy Code on disputes with building permits. But the CRA is not challenging a building permit decision but the whole scheme, and the appeal mechanism in Section 10-107(a) is thus wholly inapplicable.[9] Also, as to Section 10-107(b), it is unclear why it would be appropriate to stay or dismiss proceedings so that Berkeley can seek nonbinding advice. Put together, these mechanisms do not suggest that there is any procedure to seek the CEC's input in this litigation, nor that the CEC has any authority to review a preemption claim.

## IV.    BERKELEY'S BAN CONCERNS ENERGY USE IN VIOLATION OF THE EPCA.

Berkeley seeks dismissal under Rule 12(b)(6) on the grounds that the federal EPCA statute and regulations do not apply to the Ordinance. To the contrary, the Ordinance "concerns" the energy efficiency and "energy use" of appliances covered by the EPCA insofar as the Ordinance requires all appliances in newly constructed buildings to use only electric power and not natural gas. Compl. ¶ 47. Accordingly, the CRA has met the Rule 12(b)(6) standard for stating a plausible claim for relief, which should be heard and decided in the ordinary course.

EPCA regulates the energy efficiency and use of products including kitchen ranges, air conditioners, water heaters, and furnaces. *See* 42 U.S.C. §§ 6292, 6295, 6313. EPCA expressly bars state and local regulations "concerning the energy efficiency" or "energy use" of such covered products. 42 U.S.C. § 6297(c); *see also* 42 U.S.C. § 6316(b)(2)(A) (noting that EPCA's standards for commercial products also explicitly "supersede any State or local regulation concerning the energy efficiency or energy use of a product for which a standard is prescribed or established" in the federal statute). *Albuquerque* noted that "'[c]oncerning' is defined as 'relating to,'" and that such terms "express a broad pre-emptive purpose." 2008 WL 5586316, at *7 (D.N.M. Oct. 3, 2008) (quoting Black's Law Dictionary

---

[9] Since Berkeley has not submitted the ban to the CEC for approval, it is not clear why this provision would apply. While conceivably a court could defer in some instances where an issue was within the CEC's authority and expertise, preemption is not such an instance.

289 (6th ed. 1990)).[10] Thus, the "plain language of the [EPCA] preemption statute makes clear that Congress intended the preemption to be broad in scope." *Albuquerque*, 835 F. Supp. 2d at 1136. Also, legislative history shows Congress meant to "preempt[] state law under most circumstances" to address "the problem of a growing patchwork of differing State regulations which would increasingly complicate [appliance manufacturers'] design, production and marketing plans." *Id.* at 1136-37 (quotation omitted).

In sum, the CRA need only show that the Ordinance is a regulation concerning energy use of a covered product, which makes it preempted by default under the EPCA. Berkeley must then show that the Ordinance meets all the statutory conditions for exemption from preemption.

### A. Berkeley's Ban Concerns Energy Use And Is Therefore Preempted.

Under these standards, the Ordinance is preempted. The Berkeley Ordinance "concern[s] the energy efficiency" and "energy use" of covered products. *See* 42 U.S.C. §§ 6297(c), 6316(b)(2)(A). It expressly "prohibit[s]" all "Natural Gas Infrastructure" in new buildings. *See* Section 12.80.040(A); 12.80.030(E) (defining Natural Gas Infrastructure to include "fuel gas piping" from the gas meter into the property). That prohibition "concerns" the "energy use" of covered products because it requires buildings not to use natural gas products, which are indisputably "covered products" in the EPCA.

In response, Berkeley focuses exclusively on the Ordinance's effects on "energy efficiency" — ignoring "energy use" — and argues that the EPCA does not preempt every law that "indirectly affects" energy efficiency (for example, by increasing housing density). *See* Motion at 18. But the Ordinance's effects on "energy use" are not indirect: it directly bars the use of natural gas appliances by barring use of natural gas pipelines in new construction. In other words, "energy use" is the very subject of the Ordinance, which explicitly concerns what type of energy citizens use — that is, it is a regulation

---

[10] "Preemption can occur in one of three ways: express pre-emption by statute, occupation of the field, or conflict between state and federal regulation." *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 495 (9th Cir. 2005). Express preemption "boils down to the interpretation of the statutory provision that allegedly preempts state law." *Id.* This analysis should start "with the text of the provision in question," taking into account the "structure and purpose of the Act" only if "need be." *Id.* at 495-96.

"concerning . . . energy use" for covered appliances. Berkeley's insistence that its ban does not concern "the amount of energy consumed by" covered products, Motion at 18, makes no sense. To the contrary, the Ordinance regulates the amount of consumption of a specific type of energy — natural gas — by ensuring that appliances in new buildings consume *no* natural gas.

**B. Berkeley Does Not Qualify For Any Exemption From Preemption.**

Since it is by default preempted, the Ordinance in order to be permissible must fall into narrow statutory exceptions to preemption in the EPCA. *See Bldg. Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council*, 683 F.3d 1144, 1148 (9th Cir. 2012). Berkeley does not make a serious effort to show how its Ordinance meets the requirements for exemption. And indeed, it cannot.

As an initial matter, to avoid preemption, a regulation must be "in a building code for new construction." 42 U.S.C. §§ 6297(c)(3), 6297(f)(3), 6316(b)(2)(B). The Berkeley Ordinance is not in the Berkeley Buildings and Construction Code (Title 19) — and indeed, Berkeley insists it is <u>not</u> a building standard — and is instead in the Berkeley Health and Safety Code (Title 12). *See* Ordinance No. 7,672-N.S.; Berkeley Municipal Code, tit. 12, ch. 12.80. By placing its new building Ordinance in the Health and Safety Code, rather than the Buildings and Construction Code, Berkeley apparently attempted to bolster its claim that this is a use of the police power involving zoning and land use and that it does not have to comply with state law requirements for building standards. This attempted workaround places the Berkeley Ordinance outside the scope of local regulations eligible for exemption from preemption. The EPCA language is clear: the only non-preempted regulations are those "in a building code for new construction." 42 U.S.C. § 6297(c)(3). Berkeley's Ordinance is not eligible for exemption.

Second, Berkeley fails to address the statutory requirements to be exempt from preemption. The EPCA lays out seven requirements for state or local regulations attempting to govern the energy efficiency or energy use of consumer appliances — all of which must be met — which functionally bar any such regulations that ban, mandate, or favor certain types of appliances.[11] *See* 42 U.S.C. § 6297(f)(3)

---

[11] Similarly, regulations of commercial appliances are preempted unless they do "not require that the energy efficiency of" a product covered in the federal statute "exceed the applicable minimum energy efficiency requirement." 42 U.S.C. § 6316(b)(2)(B).

(listing Requirements A–G). Local regulations can at most set heightened aggregate efficiency requirements across a building, leaving the builder discretion about how to combine appliances to reach that aggregate standard. For example, Requirement A is that the local regulation "permits a builder to meet an energy consumption or conservation objective for a building by selecting items whose combined energy efficiencies meet the objective." *Id.* § 6297(f)(3)(A). Requirement F is that "[t]he energy consumption or conservation objective is specified in terms of an estimated total consumption of energy (which may be calculated from energy loss- or gain-based codes) utilizing an equivalent amount of energy (which may be specified in units of energy or its equivalent cost)." *Id.* § 6297(f)(3)(F). Requirement C mandates that the "credit" for using products that exceed the federal standards must be "on a one-for-one equivalent energy use or equivalent cost basis." *Id.* § 6297(f)(3)(C).

By banning natural gas, Berkeley necessarily does not meet these requirements, nor does it explain how it would.  The Ninth Circuit has held that these requirements do not permit local regulations to "favor[] certain options over others." *Bldg. Indus. Ass'n of Wash.*, 683 F.3d at 1151. In that case, Washington's regulations were permissible because they only "require[d] builders to reduce a building's energy use by a certain amount," allowing the builder to "choose how to meet that requirement." *Id.* at 1145. But the court emphasized that the EPCA would bar a regulation "requir[ing] a builder, as a matter of law, to select a particular product or option." *Id.* "[A] building code must grant credits on the basis of how much each option reduces energy use or cost, without favoring particular products or methods." *Id.* at 1146; *see also id.* at 1153 ("To survive preemption, Washington's Building Code must therefore give credits in proportion to energy use savings without favoring particular products or methods.").

The Ordinance falls squarely on the wrong side of the line the Ninth Circuit drew in *Building Industry Association.* Rather than setting neutral efficiency standards that citizens choose how to meet, the Ordinance instead bans an entire category of appliances. It does not specify its requirements "in terms of an estimated total consumption of energy," permitting business owners to "select[] items whose combined energy efficiencies meet the objective." *See* 42 U.S.C. § 6297(f)(3)(A), (F). Nor does it give credit on a "one-for-one" basis to all appliances that exceed the federal standards. *See id.* § 6297(f)(3)(C). A business receives no credit for using more efficient natural gas appliances (since any gas appliance is prohibited),

while it is allowed to use any electric appliance meeting the state code (no matter how inefficient).

Berkeley also asserts that the Ordinance does not "require the installation of consumer products that exceed federal energy efficiency standards" because it exempts buildings if all-electric construction would not comply with the state Energy Code.  Motion at 19. But allowing compliance with the state code is irrelevant to the federal preemption claim: a local building code could allow compliance with the California Energy Code while still being in conflict with the EPCA's provisions. In other words, the fact that the Ordinance "ensures compliance with the state Energy Code," *id.*, in no way guarantees that the locally complying products do not exceed federal standards.[12] There is no EPCA exemption to preemption for local ordinances that conform to state law — but even if there were, Berkeley did more than merely adopt the state's 2019 Building Energy Efficiency Standards, and instead passed two separate ordinances *modifying* the state standards. The presumed legality of the California Energy Code thus does not imply the legality of Berkeley's Ordinance.

## V.      BERKELEY'S BAN IS PREEMPTED BY STATE LAW.

### A.   Berkeley's Ban Is An Invalid Exercise Of The Police Power And Is Preempted.

The Berkeley Ordinance is an invalid attempt to establish building standards under the City's general police powers rather than through the specific grant of statutory authority under California law, and it is therefore preempted and void.  The California Building Code provides for the adoption of statewide building standards. HSC Section 18909(a) defines a "building standard" as

> any rule, regulation, order, or other requirement, including any amendment or repeal of that requirement, that specifically **regulates, requires, or forbids the method of use, properties, performance, or types of materials used in the construction, alteration, improvement, repair, or rehabilitation of a building, structure, factory-built housing, or other improvement to real property**, including fixtures therein, and as determined by the commission.

*Id.* (emphasis added). Under the California Constitution Article XI, section 7, any ordinance that conflicts with state law or enters an area fully occupied by state general law is preempted and void. *O'Connell v.*

---

[12] This entire argument, while untrue, is based on preemption standards that apply to commercial appliances, not consumer appliances.

*City of Stockton*, 41 Cal. 4th 1061, 1067 (2007); *see also Building Ind. Ass'n v. City of Livermore*, 45 Cal. App. 4th 719, 726 (1996). California courts have held that through the California Building Code, the state has occupied the field of building standards. *E.g., Livermore*, 45 Cal. App. 4th at 726; *Briseno*, 6 Cal. App. 4th at 1381-82. Consequently, local governments may not use their general police powers to regulate in this area and may only exercise those powers established by a specific statutory grant of authority. *Livermore*, 45 Cal. App. 4th at 726-27; *ABS Institute v. City of Lancaster*, 24 Cal. App. 4th 285, 293 (1994). A building standard adopted by a municipality under general police power thus is preempted and is unenforceable and void.

The Berkeley Ordinance establishes building standards — on its face, it regulates the "method of use, properties, performance, or types of materials used in the construction" of new buildings. Because Berkeley adopted its ban under the City's general police power, it is preempted and void.

Berkeley argues that its Ordinance is not a "building standard" because prohibiting natural gas pipelines or infrastructure does not regulate a "method" of "construction." Motion at 22. Berkeley's reading of the statute ignores the broad sweep of the language, including words such as "properties," "performance," or "types of materials," and "construction, alteration, improvement, repair, or rehabilitation." HSC § 18909(a). It is simply not plausible that prohibiting natural gas piping is not a regulation of the "types of materials" "used" for "construction" of buildings. *See id.* Berkeley's unduly narrow interpretation would undermine the statute's broad language and the state's intent to occupy the field. *See Livermore*, 45 Cal. App. 4th at 726; *Briseno*, 6 Cal. App. 4th at 1381-82.

Berkeley also argues this is not a building standard, but a land use and zoning statute, and therefore falls on the police power side of the line. Motion at 18-20, 22. But municipalities may only regulate where the state has not done so. So regardless of whether Berkeley calls this a "land use" and "zoning" ordinance, because the Ordinance intrudes into the field of building standards as defined by state law, it is an impermissible exercise of the police power. *Livermore*, 45 Cal. App. 4th at 726.

**B. Berkeley's Ban Is Preempted By The State Building Code.**

Berkeley's ban is also preempted by the state Building Code, which establishes requirements for making local amendments or modifications. By prohibiting gas infrastructure and thus the use of gas and

gas appliances, the Ordinance establishes building standards (as defined above) and modifies provisions of the California Building Code. Compl. ¶ 71. But the Ordinance does not "make express findings for *each* amendment, addition or deletion based upon climatic, topographical, or geological conditions" with the amendments "*expressly marked and identified* as to the applicable findings," as required by the Building Code. *See, e.g.*, Cal. Code Reg. tit. 24, pt. 4, § 1.1.8.1 (emphasis added); *see also id.* pt. 2.5, § 1.1.8.1; *id.* pt. 5, § 1.1.8.1; HSC § 17958.7. Thus, it does not comply with requirements for the adoption of local modifications and is preempted and unenforceable. *See Livermore*, 45 Cal. App. 4th at 725, 727.

Berkeley nevertheless argues that it "satisf[ied] the requirements of" Section 17958 because it "submitted its findings of necessity due to local conditions" to the CBSC after this lawsuit was filed. Motion at 4, 23. But this argument ignores the specific requirements of the Building Code: Berkeley did not identify its specific amendments or tie its local findings to each amendment.[13]

Berkeley seeks to excuse this failure by claiming that its Ordinance "does not repeal or amend" the Building Code, Motion at 23, and so there was nothing to identify.[14] This position is flawed — an "amendment" includes any change or modification, and prohibiting the use of infrastructure that would otherwise be in compliance with the Building Code modifies the code. Indeed, the statute refers to "amendments, additions, or deletions" — which indicates that an "amendment" includes modifications that are not additions or deletions. *See* Black's Law Dictionary 102 (11th ed. 2019) (defining amendment to include any "minor revision" or "alteration in wording"); *S.E.C. v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) ("It is a well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words."). Moreover, the ban does in fact add a new building standard: even where an applicant could qualify for an exemption, the need to go through the application process and apply for an exemption is

---

[13] In addition, Berkeley subsequently passed a "reach code" and submitted it to the CEC, where approval is pending. Berkeley admits its reach code does not repeal and replace the Ordinance and is instead designed to "work[] in tandem." Motion at 5. The reach code is irrelevant to this suit, and is not part of the CRA's claims, although the reach code itself also raises preemption questions.

[14] Berkeley simultaneously argues that it made no amendments *and* that it complied with the requirements for amendments — which include identifying the very amendments it denies exist.

1  itself preempted by state law.

2      **C.**   <u>**Berkeley's Ban Is Preempted By The State Energy Code.**</u>

3          Berkeley's Ordinance is also preempted by the Energy Code. The ban on natural gas

4  infrastructure modifies a host of provisions of the California Energy Code, including, for example,

5  requirements for gas water heating systems, gas furnaces, and cooking appliance pilot lights. Compl. ¶ 85.

6  Under California law, such local modifications to the Energy Code are preempted unless they are adopted

7  under a specific statutory grant of authority and approved by the CEC. *See* Cal. Pub. Res. Code §

8  25402.1(h)2; Cal. Code Reg. tit. 24, pt. 6, §§ 10-106, 10-110.[15] Berkeley makes no pretense of having

9  met any of the statutory procedural requirements, nor has it submitted its ban to the CEC. That is enough

10  to show preemption.

11          Berkeley claims its ban does not "amend" the state standards, and that there is "no conflict"

12  because its Ordinance has exemptions. But on its face, the ban prohibits use of an energy source permitted

13  under the state code and thus has "amended" or "modified" the Energy Code. And that it has done so for

14  most buildings, but not all buildings, does not make it any less a modification.  In the same vein, ensuring

15  that "compliance" with the state electric code provisions is possible does not mean that the Ordinance

16  does not modify the state code provisions allowing the use of gas. And, as explained above, Berkeley's

17  claim that the exemptions "ensure that there is no conflict" misses the point. That Berkeley theoretically

18  may allow use of gas for "limited exemptions" is not the same as allowing use of gas as permitted by the

19  Energy Code. Berkeley's claim boils down to the suggestion that a "ban" on use of an energy source is

20  not a standard regulating use of that energy source, and that claim is not feasible. Berkeley's failure to

21  follow the statutory procedure means its Ordinance is preempted.

22                                    <u>**CONCLUSION**</u>

23          For the above reasons, the Court should deny Berkeley's Motion to Dismiss.

24

25

---

26       [15] A city or county hoping to adopt reach codes must submit an application including the proposed
27  amendments; findings and supporting analyses on the energy savings and cost effectiveness; a finding that the standards will require buildings to be designed to consume less energy; and any findings or
28  determinations pursuant to CEQA. Cal. Code Reg. tit. 24, pt. 6, § 10-106.

1

2    Dated: February 10, 2020                    Respectfully submitted,

3                                                **REICHMAN JORGENSEN LLP**

4                                                */s/ Courtland L. Reichman*

5                                                Courtland L. Reichman (CA Bar No. 268873)
                                                 creichman@reichmanjorgensen.com
6                                                REICHMAN JORGENSEN LLP
                                                 100 Marine Parkway, Suite 300
7                                                Redwood Shores, CA 94065
                                                 Telephone: (650) 623-1401
8                                                Facsimile: (650) 623-1449

9
                                                 Sarah Jorgensen (*Pro Hac Vice*)
10                                               sjorgensen@reichmanjorgensen.com
                                                 REICHMAN JORGENSEN LLP
11                                               1201 West Peachtree Street, Suite 2300
                                                 Atlanta, GA 30309
12                                               Telephone: (404) 609-1040
                                                 Facsimile: (650) 623-1449
13

14                                               Gary J. Toman (*Pro Hac Vice*)
                                                 gtoman@wwhgd.com
15                                               WEINBERG, WHEELER, HUDGINS, GUNN &
                                                 DIAL LLP
16                                               3344 Peachtree Road NE, Suite 2400
                                                 Atlanta, GA 30326
17                                               Telephone: (404) 876-2700
                                                 Facsimile: (404) 875-9433
18

19
                                                 Kylie Chiseul Kim (*Pro Hac Vice Pending*)
20                                               KELLOGG, HANSEN, TODD, EVANS, FIGEL &
                                                 FREDERICK LLP
21                                               1615 M St NW #400
                                                 Washington, DC 20036
22                                               Telephone: (202) 326-7924
                                                 Facsimile: (202) 326-7999
23

24
                                                 *Attorneys for Plaintiff*
25                                               *California Restaurant Association*

26

27

28