Farimah F. Brown, City Attorney, SBN 201227
Christopher D. Jensen, Deputy City Attorney, SBN 235108
BERKELEY CITY ATTORNEY'S OFFICE
2180 Milvia Street, Fourth Floor
Berkeley, CA 94704
Telephone:  (510) 981-6998
Facsimile:  (510) 981-6960
cjensen@cityofberkeley.info

Attorneys for Defendant CITY OF BERKELEY

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIA RESTAURANT ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BERKELEY,<br><br>Defendant. | No.  4:19-CV-07668-YGR<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**<br><br>Judge:    Hon. Yvonne Gonzalez Rogers<br>Date:     November 17, 2020<br>Time:     2:00 p.m.<br>Location:  Courtroom 1, Fourth Floor |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................ 1

II.  ARGUMENT ................................................................................................................. 2

    A.   Plaintiff Has Not Met Its Burden of Proving Standing. ................................................. 2

    B.   Plaintiff Has Not Met Its Burden of Showing That Its Claims Are Ripe..................... 3

    C.   Plaintiff's Jurisdictional Arguments Demonstrate Why Plaintiff Cannot Prevail on the Merits............................................................................................................................ 6

    D.   Plaintiff's Facial Challenge Under EPCA Fails as a Matter of Law............................ 7

    E.   The Natural Gas Infrastructure Ordinance Does Not Conflict with the California Energy Code. ............................................................................................................... 12

    F.   The Natural Gas Infrastructure Ordinance Does Not Conflict with the California Building Standards Code. .......................................................................................... 14

III. CONCLUSION ............................................................................................................ 15

## TABLE OF AUTHORITIES

**Federal Cases**                                                                    **Page(s)`**

*Air Conditioning & Refrigeration Instit. v. Energy Resource Conserv. &*
  *Development Comm'n,*
  410 F.3d 492 (9th Cir. 2005) .................................................9

*Air Conditioning, Heating & Refrigeration Intit. v. City of Albuquerque,*
  2008 WL 5586316 (D.N.M. Oct. 3, 2008) .................................................5

*Algonquin Gas Transmission, LLC v. Town of Weymouth,*
  365 F. Supp. 3d 147 (D. Mass. 2019) .................................................5

*Blumenkron v. Eberwein*
  715 Fed. Appx. 633 (9th Cir. 2017) .................................................3

*Building Industry Ass'n of Wash. v. Washington State Building Code Council,*
  683 F.3d 1144 (9th Cir. 1151) .................................................10, 11

*California Div. of Labor Stds. Enforcement v. Dillingham Constr., N.A., Inc.,*
  519 U.S. 316 (1997) .................................................8, 9, 10

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca,*
  152 F.3d 1184 (9th Cir. 1998) .................................................9, 10

*Fed. Power Comm'n v. S. Cal. Edison Co.,*
  376 U.S. 205 (1964) .................................................12

*In re MacIntyre,*
  74 F.3d 186 (9th Cir. 1996) .................................................7

*Medtronic, Inc. v. Lohr,*
  518 U.S. 470 (1996) .................................................9, 12

*Morrison v. Peterson,*
  809 F.3d 1059 (9th Cir. 2015) .................................................6

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,*
  461 U.S. 190 (1983) .................................................5

*Pac. Legal Found. v. State Energy Res. Conservation & Dev. Comm'n,*
  659 F.2d 903 (9th Cir. 1981) .................................................4, 5

*Prof'l Bus. Bank v. Fed. Deposit Ins. Corp.,*
  2011 WL 13152586 (C.D. Cal. Feb. 18, 2011) .................................................6

*Safe Air for Everyone v. Meyer,*
  373 F.3d 1035 (9th Cir. 2004) .................................................2

ii

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R.
CIV. P. 12(B)(1) AND 12(B)(6), Case No. 4:19-CV-07668-YGR

*Sierra Forest Legacy v. Sherman*
    646 F.3d 1161 (9th Cir. 2011)............................................................................3, 4

*Steel Co. v. Citizens for a Better Environment*
    523 U.S. 83 (1998) ...............................................................................................3

*Stengel v. Medtronic Inc.*,
    704 F.3d 1224 (9th Cir. 2013)............................................................................12

*Thomas v. Anchorage Equal Rights Comm'n*,
    220 F.3d 1134 (9th Cir. 2000)..........................................................................3, 4

*United States v. United States Bd. of Water Commissioners*,
    893 F.3d 578 (9th Cir. 2018)..............................................................................13

**State Cases**

*Augustus v. ABM Sec. Servs., Inc.*,
    2 Cal. 5th 257 (2016)..........................................................................................13

*Yamaha Corp. of Am. v. State Bd. of Equalization*,
    19 Cal. 4th 1 (1998)............................................................................................13

**Federal Statutes**

15 U.S.C. § 717 .........................................................................................................8

42 U.S.C. § 6291 .....................................................................................................10

42 U.S.C. § 6292 .....................................................................................................10

42 U.S.C. § 6297 ...............................................................................................7, 9, 11

**State Statutes**

Health & Safety Code § 17958.7............................................................................15

Health & Safety Code § 18909...............................................................................14

Pub. Res. Code § 25402 .........................................................................................13

Pub. Res. Code § 25402.1 ......................................................................................13

**Other Authorities**

24 Cal. Code Regs. § 10-106..................................................................................13

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fed. R. Civ. P. 12 ...................................................................................................2, 3, 6

H.R. Rep. 100-11 (1987) ............................................................................................10

S. Rep. 100-6 (1987) .............................................................................................10, 11

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R.
CIV. P. 12(B)(1) AND 12(B)(6), Case No. 4:19-CV-07668-YGR

1    **I.     INTRODUCTION**

2          The City of Berkeley has adopted restrictions on new natural gas connections to address

3    two critical health and safety issues: the first, an immediate concern about the indoor air quality

4    impacts of gas-fueled appliances, and the second, a longer-term but increasingly urgent need to

5    limit greenhouse gas emissions to prevent global climate change. The City's authority to

6    legislate in these areas is beyond dispute.

7          Faced with decades of federal inaction to address the critical issue of climate change,

8    state and local governments, including the City of Berkeley, have taken it upon themselves to

9    adopt legislation to address greenhouse gas emissions. The City's Natural Gas Infrastructure

10   Ordinance is a small and measured, but necessary, step in that direction, given the abdication of

11   responsibility for addressing climate change at the federal level.

12         Plaintiff nonetheless argues that federal legislation first adopted in the 1970s to address

13   the energy efficiency of consumer and industrial appliances limits the ability of state and local

14   governments to regulate new natural gas connections. Plaintiff's argument is a cynical ploy to

15   use legislation that establishes uniform federal energy efficiency standards for appliances to

16   serve a purpose it was never intended to serve. Neither the plain meaning nor intent of EPCA

17   preempts local regulation of natural gas connections. The claim that decades-old legislation that

18   has nothing to do with climate change in general and natural gas connections in particular

19   preempts local efforts to fill the vacuum left by the federal government's refusal to address a

20   critical policy issue borders on absurd.

21         Any common sense interpretation of EPCA, informed by establish Supreme Court and

22   Ninth Circuit case law, compels the conclusion that the City's Natural Gas Infrastructure

23   Ordinance is as a matter of law not preempted by federal law. Moreover, by conceding that this

24   case is a facial challenge to the Ordinance, Plaintiff has essentially admitted that there is no way

25   it can win on the merits. The Court need only confirm that obvious conclusion to conclude that

26   Plaintiff has failed to state a claim for relief.

27         Apart from Plaintiff's failure to state a claim on the merits, the deeply cynical nature of

28   this case is evident in Plaintiff's response to the City's jurisdictional arguments. It is clear that

1

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R.
CIV. P. 12(B)(1) AND 12(B)(6), Case No. 4:19-CV-07668-YGR

1   there is no real plaintiff who has been harmed here, and this Court is being asked to decide

2   hypothetical questions about undefined future injuries. Such claims do not meet basic

3   constitutional and prudential requirements for proving standing and ripeness.

4       Whether based on Plaintiff's failure to state a claim or lack of subject matter jurisdiction,

5   the Court should dismiss all claims for relief in the First Amended Complaint. As Plaintiff has

6   already been given an opportunity to cure the defects in its pleadings, dismissal should be with

7   prejudice and without leave to amend.

8   **II.   ARGUMENT**

9       **A.  Plaintiff Has Not Met Its Burden of Proving Standing.**

10      Plaintiff has not met its burden of presenting *evidence* to prove standing. Plaintiff

11  appears to believe that it can relieve itself of this burden by simply asserting that the City's

12  motion is a facial jurisdictional attack. Opp. at 9. The City has submitted multiple declarations

13  attesting to the lack of apparent interest in opening a restaurant with natural gas appliances in

14  any Newly Constructed Building in Berkeley. *See* Declaration of Steven Buckley ("Buckley

15  Decl.") ¶¶ 3-4; Declaration of Jordan Klein ("Klein Decl.") ¶ 4. Separately, the City has

16  submitted evidence showing why it is at least speculative, if not wholly improbable, that any

17  restaurant opening in the City would be impacted by the ability to install certain EPCA-regulated

18  appliances. *See* Declaration of Jay Ogden ("Ogden Decl.") ¶¶ 3-5.

19      In response, Plaintiff has submitted a declaration from its President and CEO stating that

20  CRA has "one or more members" who would seek to open a restaurant in a new building in

21  Berkeley but for the adoption of the Natural Gas Infrastructure Ordinance. *See* Declaration of Jot

22  Condie ("Condie Decl.") ¶¶ 2-3. Once again, Plaintiff fails to identify any particular member or

23  any potential future restaurant location that is impacted by the Ordinance.

24      Plaintiff's response to the City's motion raises serious and fatal evidentiary issues that

25  the Court may resolve under Federal Rule of Civil Procedure 12(b)(1). Having been presented

26  with the evidence in support of the City's Motion, Plaintiff now has the obligation to "furnish

27  affidavits or other evidence necessary to satisfy its burden of establishing subject matter

28  jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Plaintiff

2

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R.
CIV. P. 12(B)(1) AND 12(B)(6), Case No. 4:19-CV-07668-YGR

1  cannot shirk that burden by simply declaring that the City's motion is a facial attack on

2  jurisdiction, and it cannot meet its burden of proof with a conclusory declaration that is rebutted

3  by the absence of credible evidence establishing that any of Plaintiff's members would be

4  affected by the Natural Gas Infrastructure Ordinance. Indeed, the lack of transparency evident in

5  Mr. Condie's declaration, combined with Plaintiff's prior reluctance to disclose any information

6  about impacted members (*see* ECF #44), creates serious doubts about the credibility of anything

7  Plaintiff says with respect to its standing on behalf of its members. And in any event, Mr.

8  Codie's declaration is not sufficient to meet the burden of proof that Plaintiff bears under Rule

9  12(b)(1). *See Steel Co. v. Citizens for a Better Environment* 523 U.S. 83, 104 (1998). The Court

10  should dismiss the FAC for that reason.

11  **B.  Plaintiff Has Not Met Its Burden of Showing That Its Claims Are Ripe.**

12  Apart for proving it has standing, Plaintiff faces the additional, and higher, burden of

13  showing that a claim based on a hypothetical injury to an unidentified (and likely nonexistent)

14  member is ripe for review. Plaintiff attempts to meet that burden by arguing that facial

15  challenges are exempt from ripeness requirements.

16  That argument is incorrect. Both constitutional and prudential limitations on the ripeness

17  of disputes apply to facial challenges. *Sierra Forest Legacy v. Sherman* 646 F.3d 1161, 1193

18  (9th Cir. 2011). Even when a facial challenge is brought, the ripeness doctrine still applies, to

19  "prevent the courts, through avoidance of premature adjudication, from entangling themselves in

20  abstract disagreements over administrative policies." *Id.* (citing *Abbott Laboratories v. Gardner*,

21  387 U.S. 136, 148 (1967)); *see also Blumenkron v. Eberwein* 715 Fed. Appx. 633, 636 (9th Cir.

22  2017) (citing *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 891 (1990)) (observing that a

23  facial challenge is not ripe where "further factual development would significantly aid the court"

24  in determining whether a law or regulation is lawful).

25  In *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134 (9th Cir. 2000), the

26  en banc Ninth Circuit applied the ripeness doctrine to a facial challenge seeking pre-enforcement

27  review of an antidiscrimination law. First, the court held that the plaintiffs did not meet the

28  constitutional, Article III test for ripeness because they "do not at this time confront a realistic

3

1   danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Id.* at

2   1141 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). The

3   court then turned to prudential considerations, observing the analysis is guided by "the fitness of

4   the issues for judicial decision and the hardship to the parties of withholding court

5   consideration." *Id.* (quoting *Abbott Laboratories*, 387 U.S. at 149). Applying these factors, the

6   court rejected the argument that a facial challenge to the law should be allowed to proceed based

7   on the "hypothetical situations" posited by the plaintiffs. *Id.* at 1142.

8       The *Sierra Forest Legacy* and *Thomas* cases reflect well-settled law that contradicts

9   Plaintiff's attempt to excuse facial challenges from ripeness requirements. As pointed out in the

10   City's Memorandum, a challenge to legislation or to a regulation is not ripe if the challenge

11   "would be illuminated by the development of a better factual record, the challenged statute or

12   regulation is generally not considered fit for adjudication until it has actually been applied."

13   *Pacific Legal Found. v. State Energy Res. Conservation & Dev. Comm'n*, 659 F.2d 903, 915

14   (9th Cir. 1981). The undeveloped questions of fact are legion in this case. For example:

15   • Is there any identifiable member of Plaintiff's organization who is interested in

16     opening a restaurant in a Newly Constructed Building in Berkeley? *See* Condie Decl.

17     ¶¶ 2-3; Buckley Decl. ¶¶ 3-4; Klein Decl. ¶ 4.

18   • Is there a developer or property owner who is interested in having the hypothetical

19     member as a tenant (or selling the property to the member)?

20   • Does Plaintiff's hypothetical member wish to install natural gas appliances?

21   • Would Plaintiff's hypothetical member have any role in the selection of natural gas

22     appliances installed as part of the "building systems" for a newly constructed

23     building, or would those decisions be made by the developer or property owner? *See*

24     Ogden Decl. ¶¶ 3-5.

25   • Would Plaintiff's hypothetical member have any need for other natural gas

26     appliances, apart from the building systems? *See id.*

27   • Would the developer or building owner agree to allow Plaintiff's hypothetical

28     member to seek the installation of Natural Gas Infrastructure for their restaurant?

4

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R.
CIV. P. 12(B)(1) AND 12(B)(6), Case No. 4:19-CV-07668-YGR

- Would the hypothetical member or building owner be granted an exemption for the prohibition on new Natural Gas Infrastructure based on Energy Code requirements? *See* RJN, Exh. 1 § 12.80.040.A.1.

- Would the hypothetical member or building owner be granted an exemption for limits on new Natural Gas Infrastructure based on the public interest in allowing an exemption? *See id.* § 12.80.050.A.

- Would the building in which the hypothetical member seeks to open a restaurant ultimately be approved, or would the project fail to obtain a permit for reasons unrelated to the installation of new Natural Gas Infrastructure?

Until all of these questions are answered—and at this point they are largely unanswerable—there is no way of knowing whether, how, or to what extent any of Plaintiff's members would be harmed by the Natural Gas Infrastructure Ordinance. The speculative nature of Plaintiff's alleged injury makes clear that this case is not ready for adjudication in the absence of the "development of a better factual record." *See Pacific Legal Found*, 659 F.2d at 915.

The cases cited by Plaintiff are not to the contrary, as they involved challenges to regulations that would have identifiable, prejudicial impacts to specific plaintiffs. *See Air Conditioning, Heating and Refrigeration Institute v. City of Albuquerque*, 2008 WL 5586316, at *4 (D.N.M. Oct. 3, 2008) (plaintiffs included local HVAC distributors directly impacted municipal energy efficiency standards); *Algonquin Gas Transmission, LLC v. Town of Weymouth*, 365 F. Supp. 3d 147, 155 (D. Mass. 2019) (natural gas company seeking to build compressor station impacted by state environmental laws); *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) (nuclear power plant operator challenging state nuclear waste disposal requirements). Here, in contrast, the plaintiff is a membership organization seeking to avoid a future harm to a purported member that it has declined to identify. Even if Plaintiff's vague allegations and exceedingly thin evidence clear the bare constitutional minimum for alleging standing, they are not enough to meet Plaintiff's burden of establishing its claims are ripe. The Court should not speculate as to the hypothetical injuries that Plaintiff's hypothetical member might suffer in relation to a hypothetical proposal to

5

build a new restaurant in a hypothetical building, and should dismiss Plaintiff's claims as unripe.

### C.  Plaintiff's Jurisdictional Arguments Demonstrate Why Plaintiff Cannot Prevail on the Merits.

The above analysis demonstrates that Plaintiff's claims should be dismissed for lack of standing and ripeness. At the same time, Plaintiff's attempt to respond to the obvious jurisdictional flaws in its pleadings demonstrates why there is no possibility Plaintiff can state a claim for relief. First, Plaintiff attempts to address the City's ripeness argument by arguing the FAC, and particularly its preemption claim, raises "a pure question of law" that requires no further factual development (Opp. at 13)—and is therefore susceptible to resolution on a motion to dismiss under Rule 12(b)(6). *Prof'l Bus. Bank v. Fed. Deposit Ins. Corp.*, 2011 WL 13152586, at \*1 (C.D. Cal. Feb. 18, 2011). Second, Plaintiff concedes that it can only prevail if "there is no set of circumstances under which [the Natural Gas Infrastructure Ordinance] would be valid"— regardless of how all of the above questions are resolved. *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)) (original quotation marks omitted); *see also Morrison v. Peterson*, 809 F.3d 1059, 1064 (9th Cir. 2015) (citation omitted) ("A facial challenge asserts that the challenged law is unlawful "in all its applications."). It is impossible for Plaintiff to meet that standard, given that the hypothetical future application of the statute would be subject to multiple exemptions from the natural gas prohibition in BMC § 12.80.040.A; that there is no guarantee that a potential, hypothetical restaurateur would even be in a position to install EPCA-regulated appliances; and that there is no reason to believe a particular application of the Ordinance would have a sufficiently direct (as opposed "indirect, remote, or tenuous") impact on EPCA's regulatory scheme for consumer and industrial appliances to support a preemption claim (*see* Section II.D, *infra*). Thus, even if Plaintiff were to succeed in convincing the Court that it has jurisdiction to hear Plaintiff's claims, Plaintiff will also have succeeded in convincing the Court that those claims cannot possibility have merit. Either way, Plaintiff has demonstrated why its claims should be dismissed with prejudice.

**D.  Plaintiff's Facial Challenge Under EPCA Fails as a Matter of Law.**

Even setting aside the jurisdictional flaws and hypothetical and speculative nature of Plaintiff's claims, Plaintiff cannot state a claim under EPCA. The City's argument regarding Plaintiff's EPCA preemption claim is straightforward: the Natural Gas Infrastructure Ordinance does not regulate energy efficiency of covered appliances and therefore it is not preempted. Plaintiff's main response to this simple argument is to complain that it is too easy to understand, and to invite the Court to follow a convoluted path that equates regulating natural gas connections with imposing energy efficiency standards on consumer and industrial appliances.

The Court should decline that invitation. "The words of this statute must be interpreted to mean what they say." *In re MacIntyre*, 74 F.3d 186, 188 (9th Cir. 1996) (citing *Nesovic v. United States*, 71 F.3d 776 (9th Cir. 1995)) ("Courts must presume that a legislature says in a statute what it means and means in a statute what it says."). EPCA preempts state or local regulations concerning the "energy efficiency" or "energy use" of covered products and certain commercial appliances. 42 U.S.C. §§ 6297(c), 6316(b)(2)(A). The challenged provision of the Natural Gas Infrastructure Ordinance provides, subject to certain exceptions, that "Natural Gas Infrastructure shall be prohibited in Newly Constructed Buildings." RJN, Exh. 1 § 12.80.040.A. The Ordinance does not regulate the energy use or energy efficiency of appliances, and therefore the Ordinance is not preempted under a common sense, plain meaning interpretation of EPCA's preemption provisions.

Plaintiff's argument to the contrary incorrectly conflates the regulation of when and where an appliance can be installed with the energy that an appliance uses. Many local land use regulations incidentally impact energy use, including but not limited to the consumption of natural gas. For example, when a local government reserves land for open space or agricultural use, it curtails or eliminates the ability of property owners to install EPCA-regulated appliances on the property. (After all, there is no need to put a hot water heater in an open field.) These land use regulations reduce the energy use and may reduce the natural gas consumption on the property, but they do not regulate the energy use or energy efficiency of appliances.

Even more to the point, there are local jurisdictions throughout the United States where

7

natural gas use is effectively prohibited because the jurisdiction lacks a local natural gas distribution franchise.[1] As discussed in the City's Memorandum, the Natural Gas Act expressly delegates decisions about "the local distribution of natural gas" to state and local authorities. 15 U.S.C. § 717(b). It would be absurd for Plaintiff to argue that a state or local decision to deny approval of a natural gas franchise is preempted by EPCA because such a decision "ensures that appliances cannot use natural gas." *See* Opp. at 17. Plaintiff appears blind to the fact that the argument is equally absurd when applied to the Natural Gas Infrastructure Ordinance. That alone requires the dismissal of Plaintiff's EPCA preemption claim.

Moreover, while Plaintiff makes much of the "broad" preemptive scope of EPCA, the type of attenuated connection that Plaintiff is attempting to draw between energy efficiency and natural gas connections has been routinely rejected as a basis for federal preemption. For example, in *California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.,* 519 U.S. 316 (1997), the Supreme Court reviewed an ERISA preemption challenge to a state prevailing wage law based on the contention that the state law "related to" and had a "connection with" ERISA plans, on the theory that the state law increased the cost of providing certain benefits and thus affected the choices made by ERISA plans. *Id.* at 328, 335.  The Court unanimously rejected this argument, holding that a federal statute "could not preempt state law in an area of traditional state regulation based on so tenuous a relation" to ERISA plans. *Id.* at 334. The Court observed that "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." *Id.* at 325.

Notably, the Court reached this conclusion despite well-established law attesting to the "broad scope" and "expansive breadth" of ERISA preemption, based on "relate to" language in the statute that is parallel to the use of "concerning" in EPCA in which Plaintiff places so much stock. *See id* at 324. In his concurrence, Justice Scalia noted the flaw in relying on such language, observing that "applying the 'relate to' provision according to its terms was a project

---

[1] *See* https://hifld-geoplatform.opendata.arcgis.com/datasets/natural-gas-service-territories?geometry=-88.913%2C41.669%2C-68.094%2C44.477.

1   doomed to failure, since, as many a curbstone philosopher has observed, everything is related to

2   everything else. *Id.* at 325 (citation omitted). Thus, "the statutory text provides an illusory test,

3   unless the Court is willing to decree a degree of pre-emption that no sensible person could have

4   intended—which it is not." *Id.*

5          Ninth Circuit law supports the same conclusion. In *Californians for Safe & Competitive*

6   *Dump Truck Transp. v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998), the Ninth Circuit rejected an

7   argument that the same prevailing wage law was preempted because it was "related to" the

8   prices, routes, and services regulated under the Federal Aviation Administration Authorization

9   Act. *Id.* at 1188–89. The court observed that any arguable effect on the federally regulated

10  subject matter was too "indirect, remote, and tenuous" to support a clear congressional intent to

11  preempt the prevailing wage legislation. *Id.*

12         In *Air Conditioning & Refrigeration Institute v. Energy Resource Conservation &*

13  *Development Commission*, 410 F.3d 492 (9th Cir. 2005) ("*ACRI*"), the court considered a

14  provision of EPCA (not at issue in this case) that preempts state information disclosure

15  requirements for covered appliances, including any state law or regulation that "provides at any

16  time for the disclosure of information with respect to any measure of energy consumption or

17  water use of any covered product." 42 U.S.C. § 6297(a)(1)(B). The plaintiff argued that a

18  California regulation requiring the submission of data to the California Energy Commission

19  violated the prohibition against state "disclosure" requirements. *ACRI*, 410 F.3d at 497. The

20  court interpreted the statutory term "disclose of information" narrowly, noting that "[a] narrow

21  interpretation is consistent with our direction to find preemption when preemption is the 'clear

22  and manifest purpose of Congress.'" *Id.* (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485

23  (1996)). The court also observed that the legislative history of EPCA and its amendments

24  "demonstrates that Congress intended to preempt state energy efficiency standards, testing

25  procedures, and consumer labeling requirements," but not the submission of data to a state

26  regulator. *Id.* at 501.

27         Plaintiff's attempt to equate "energy use" with "the installation of natural gas appliances"

28  cannot be reconciled with these Ninth Circuit and Supreme Court authorities. *ACRI* stands for

9

1  the proposition that the preemption provisions in EPCA must be interpreted narrowly and

2  consistent with congressional intent, which includes an intent to preempt state energy efficiency

3  standards, but not to displace other state health and safety regulations that impact when and

4  where covered appliances may be installed. And complimenting *ACRI*'s holding, the *Dillingham*

5  and *Mendonca* cases make clear that even "expansive" federal preemption provisions should not

6  be read to intrude into traditional areas of state regulation that bear only a tenuous relationship to

7  the sphere of federal preemption. Plaintiff's argument that local restrictions on natural gas

8  connections are preempted because gas stoves that would otherwise be installed in new buildings

9  use energy runs afoul of the principles that: (1) preemption provisions should be narrowly

10  interpreted, (2) the interpretation of the scope of federal preemption should be informed by the

11  intent of Congress in enacting the statute, and (3) an "indirect, remote, and tenuous" effect on

12  federally regulated subject matter does not establish preemption. *Mendonca*, 152 F.3d at 1188.

13       Nor is there any reasonable dispute that the provisions of the statute at issue here are

14  directed at regulating the energy efficiency of appliances, not regulating natural gas connections.

15  *See* 42 U.S.C. §§ 6291(2), 6292. Plaintiff concedes those provisions were intended to establish

16  uniform natural energy efficiency standards for the benefit of appliance manufacturers. Opp. at

17  21. Indeed, Plaintiff notes that the purpose of enacting uniform energy efficiency standards was

18  to avoid a "patchwork" of regulations that would "complicate appliance manufacturers' design,

19  production and marketing plans." *Id.* at 5 (citing S. Rep. No. 100-6, at (1987), and H.R. Rep. No.

20  100-11, at 24 (1987)) (original alteration omitted). The fact that appliances cannot use natural

21  gas in certain Newly Constructed Buildings in Berkeley will have no effect on those design,

22  production, and marketing plans, given that appliance manufacturers are already limited to

23  selling only electric appliances in the large swaths of the county where natural gas service is not

24  available. Thus, the legislative history of EPCA, as well as its plain meaning, shows that

25  Congress intended to regulate appliance energy efficiency, not natural gas connections.

26       Plaintiff fails to cite any authority that would support a different interpretation. *Building*

27  *Industry Association of Washington v. Washington State Building Code Council*, 683 F.3d 1144

28  (9th Cir. 1151), arose from a challenge to state building standards that established "energy

1    efficiency objectives." The Ninth Circuit held that the Washington State code was consistent

2    with 42 U.S.C. § 6297(f)(3), which allows state and local building codes that, among other

3    requirements, "permit a builder to meet an energy consumption or conservation objective for a

4    building by selecting items whose combined energy efficiencies meet the objective." 42 U.S.C.

5    § 6297(f)(3)(A). But where a local ordinance does not regulate energy efficiency—as is the case

6    here—it is a non sequitur to ask whether the ordinance "favor[s] certain options over others" to

7    achieve energy efficiency objectives. Opp. at 20. The *Washington* case is not relevant to a local

8    ordinance that does not regulate energy efficiency or energy use.

9         Similarly, the passages of legislative history cited by Plaintiff provide no evidence that

10   EPCA's appliance energy efficiency standards were intended to dictate when and where EPCA-

11   regulated appliances could be installed. The Senate Energy and Natural Resources Committee

12   observed that state *energy efficiency* standards should be "even handed" so as not to put "undue

13   pressure on builders to install covered products exceeding Federal standards." S. Rep. 100-6, at

14   11. But again, the Natural Gas Infrastructure Ordinance does not regulate energy efficiency and

15   has exemptions that prevent any conflict with federal energy efficiency standards—which of

16   course would only be relevant if Plaintiff were asserting a conflict preemption argument.[2] The

17   Committee also noted that federal standards should not be set "so as to result in the

18   unavailability in the United States in any covered product type (or class) of *performance*

19   *characteristics*, such as size or capacity." *Id.* at 8 (emphasis added). The Commission was

20   agnostic to the availability of natural gas-fueled products, to the extent that the Commission's

21   views have any relevance on the regulation of natural gas connections.

22        It is also noteworthy that these decisions were made decades after the passage of the

23   Natural Gas Act, a critical fact that Plaintiff's opposition fails to persuasively address. The

24   question is not, as Plaintiff appears to suggest, whether another federal statute could

25   _____

26   [2] In deciding the City's motion to dismiss the initial Complaint, the Court was understandably confused by Plaintiff's EPCA arguments. Given that confusion, the City assumed that Plaintiff's

27   only conceivably plausible preemption argument would rely on the doctrine of conflict preemption. But Plaintiff disclaims any intent to assert a conflict preemption claim. Opp. at 22.

28   Plaintiff is left with an express preemption argument based on a statute that does not expressly preempt the Natural Gas Infrastructure Ordinance.

hypothetically preempt the regulation of natural gas connections to individual structures even through the Natural Gas Act does not. Rather, the question is whether EPCA contains sufficiently clear language to preempt well-settled law that draws a "bright line" between federal regulations of interstate transmission of natural gas and state and local regulation of other natural distribution infrastructure. *See Fed. Power Comm'n v. S. Cal. Edison Co.*, 376 U.S. 205, 215 (1964). EPCA provisions directed at energy efficiency fall well short of this standard.

For all of these reasons, Plaintiff cannot establish a congressional intent to preempt state and local regulations of natural gas connections for health and safety reasons—a field that the has traditionally been occupied by state and local law. *See Medtronic*, 518 U.S. at 475 (noting that states "traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons"). The Ninth Circuit and Supreme Court have made clear that "[i]n all preemption cases, and particularly those in which Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227 (9th Cir. 2013) (citing *Medtronic*, 518 U.S. at 485) (original alterations and quotation marks omitted). Under any even remotely fair reading of the statute, EPCA's preemption provisions do not regulate natural gas connections, and Plaintiff does not even come close to establishing a "clear and manifest" intent to preempt a local ordinance regulating an area of law traditionally given over to state control.

In sum, there is no hidden meaning in the words "energy efficiency" or "energy use"— the words that Congress chose in defining the preemptive scope of EPCA's appliance standards. The words mean what they say, and as a matter of law, they don't mean "natural gas connections." For this simple reason, Plaintiff fails to state a claim under EPCA.

### E. The Natural Gas Infrastructure Ordinance Does Not Conflict with the California Energy Code.

Just as the Natural Gas Infrastructure Ordinance does not set energy efficiency or energy use standards under federal law, it does not set "energy conservation" or "energy insulation"

1   standards under state law. The California Energy Code requires the Energy Commission to set

2   "energy conservation" and "energy insulation" standards for Newly Constructed Buildings, as

3   well as additions, alterations, or repairs to existing buildings. Pub. Res. Code §§ 25402,

4   25402.1(h)(2); 24 Cal. Code Regs. § 10-106. Under Public Resources Code § 25402.1(h)(2), a

5   local jurisdiction may modify the state standards if it "files the basis of its determination that the

6   standards are cost effective with the commission and the commission finds that the standards

7   will require the diminution of energy consumption levels permitted by the rules and regulations

8   adopted pursuant to those sections." Pub. Res. Code § 25402.1(h)(2). The City followed that

9   process in the adoption of its local "reach code" amendments to the Energy Code, which were

10   approved by the Energy Commission on February 20, 2020. RJN, Exh. 6. In contrast, the City

11   did not submit the Natural Gas Infrastructure Ordinance to the Energy Commission because the

12   Ordinance regulates Natural Gas Infrastructure, not energy conservation or energy insulation. As

13   such, the Ordinance does not amend the Energy Code, does need to be submitted to the Energy

14   Commission for review, and is not preempted under state law.

15         The Energy Commission's February 6, 2020 letter confirms this common sense

16   conclusion. *See* RJN, Exh. 7. The Commission's determination is entitled to "considerable

17   judicial deference" under applicable federal law. *United States v. United States Bd. of Water*

18   *Commissioners*, 893 F.3d 578, 596 (9th Cir. 2018); *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th

19   257, 262–63 (2016); *see also Yamaha Corp. of Am. v. State Bd. of Equalization*, 19 Cal. 4th 1,

20   11 (1998) (noting role of agency "expertise" in deference given to state agency). There is no

21   reason for a federal court to second guess the Energy Commission's reasonable, common sense

22   interpretation of state law.

23         Plaintiff attempts to mislead the Court into believing that the Energy Commission's

24   decision is "contradicted by the CEC's own treatment of other natural gas bans." Opp. at 25.

25   This is the same false story Plaintiff told the Court in its Surreply to the City's first motion to

26   dismiss. *See* Dkt. #33 at 2. As the City has previously explained, a local reach code amendment

27   to the state Energy Code is fundamentally different process than adopting a local regulation that

28   does not regulate "energy conservation" or set energy efficiency standards. *See* Dkt #35 at 1-2.

13

1    The Energy Commission could not have been clearer in stating that it has elected to treat the

2    City's Natural Gas Infrastructure Ordinance differently than reach codes adopted by the City of

3    Berkeley and other jurisdictions. Plaintiff's attempt to confuse the Court into believing that these

4    reach code Energy Code amendments are equivalent to the City's Natural Gas Infrastructure

5    Ordinance is perplexing, troubling, and ineffective. The Court should not be misled, and should

6    confirm the Energy Commission's common sense conclusion that the Ordinance is not

7    preempted by the California Energy Code.

8              **F.   The Natural Gas Infrastructure Ordinance Does Not Conflict with the**
                     **California Building Standards Code.**
9

10           Plaintiff's remaining state law claims for relief, relating to the Building Standards Code,

11   are caught in a Catch-22. On the one hand, Plaintiff does not coherently respond to the argument

12   that the City's police power includes the authority to decide whether it should allow the

13   installation of Natural Gas Infrastructure in Newly Constructed Buildings. On the other hand,

14   Plaintiff does not dispute that the Natural Gas Infrastructure Ordinance and accompanying

15   findings were filed with the Building Standards Commission, as is required for the adoption of a

16   building standard. Thus, the Ordinance is either enacted under the City's police power or is a

17   duly adopted local building standard—either way, Plaintiff's claims fail, and Plaintiff is entitled

18   to no relief from this Court.

19           With respect to the first argument, Plaintiff does not even attempt to distinguish the

20   Natural Gas Infrastructure Ordinance from the myriad land use regulations that are indisputably

21   subject to regulation under the City's police power. Plaintiff also fails to explain how the Natural

22   Gas Infrastructure Ordinance meets the definition of "building standard" in Health and Safety

23   Code § 18909(a). The critical language of the statute defines a building standard as a

24   requirement that "specifically regulates, requires, or forbids the method of use, properties,

25   performance, or types of materials" used in construction. Cal. Health & Safety Code § 18909(a).

26   The FAC cites a laundry list of building standards governing natural gas installations (FAC

27   ¶¶ 86-90), but Plaintiff fails to explain how the Natural Gas Infrastructure Ordinance changes the

28   "method of use, properties, performance, or types of materials" that are used to meet this

1  standards. This is because, like all land use regulations, the Ordinance determines where Natural

2  Gas Infrastructure is allowed, and not how Natural Gas Infrastructure is built. Such a regulation

3  is well within the City's police power to regulate.

4       And even setting aside this argument, Plaintiff's contention that the City should have

5  filed the Ordinance with the Building Standards Commission is undermined by the fact that the

6  City actually filed the Ordinance with the Building Standards Commission. RJN, Exh. 3.

7  Plaintiff attempts to avoid the obvious conclusion that the City complied with building standards

8  submission requirements with a hypertechnical argument accusing the City of improperly failing

9  to identify specific amendments. Opp. at 24. This argument defies common sense—

10 "identifying" the provisions of the Building Standards Code that the Natural Gas Infrastructure

11 Ordinance amends is both unnecessary and impossible. The Ordinance is an overlay that

12 prohibits Natural Gas Infrastructure in certain buildings, but allows natural gas connections in

13 others. The provisions of the Building Standards Code cited in the FAC continue to apply where

14 Natural Gas Infrastructure is allowed, and therefore it would be inappropriate and misleading to

15 change these provisions of the Code.

16      Of course, the difficulty in applying the local amendment procedures in Health and

17 Safety Code § 17958.7 to the Natural Gas Infrastructure Ordinance simply underscores the fact

18 that the Ordinance should not be considered an amendment to Building Standards Code at all.

19 But in any event, the City complied with the requirements for local amendments to the Code.

20 Thus, Plaintiff's claim alleging preemption by the Building Standards Code must be dismissed,

21 regardless of whether the Ordinance was adopted under the City's police power or pursuant to

22 the procedures for adopting local code amendments.

23 **III.  CONCLUSION**

24      For the reasons stated above, the Court should dismiss all of Plaintiff's claims for relief

25 with prejudice and enter judgment in favor of the City.

26

27

28

---

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated:  October 27, 2020

BERKELEY CITY ATTORNEY'S OFFICE

By:  /s/Christopher D. Jensen
     Farimah Brown
     Christopher D. Jensen

Attorneys for Defendant City of Berkeley

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6), Case No. 4:19-CV-07668-YGR