**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CALIFORNIA RESTAURANT ASSOCIATION,** <br> Plaintiff**,** <br> vs. <br> **CITY OF BERKELEY,** <br> Defendant**.** | Case No. 4:19-cv-07668-YGR <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** <br><br> Re: Dkt. No. 47 |

Plaintiff California Restaurant Association ("CRA") brings this action challenging defendant City of Berkeley's ("Berkeley") recently enacted and now in effect ordinance (the "Berkeley Ordinance" or the "Ordinance") that affects the availability of natural gas in new construction within Berkeley. CRA brings four causes of action against Berkeley: (1) federal preemption by the Energy Policy and Conservation Act ("EPCA"); (2) preemption by California law as a void and unenforceable exercise of police power; (3) preemption by California law as conflicting with California Building Standards Code ("CBSC"); and (4) preemption by California law as conflicting with the California Energy Code ("CEC").

Now before the Court is Berkeley's motion to dismiss the operative first amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6). (*See* Dkt. Nos. 46 (first amended complaint), 47 (motion to dismiss).) CRA opposes the motion. (Dkt. No. 52; *see also* Dkt. No. 58 (reply).) The Court further received an amici curiae brief from: (i) the National Association of Home Builders; (ii) the National Association of Manufacturers; (iii) the Air Conditioning, Heating, and Refrigeration Institute; and (iv) the Hearth, Patio, & Barbecue Association (collectively, the "amici"). (Dkt. No. 66.) The Court heard oral argument on February 2, 2021. (Dkt. No. 70.) For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** the motion to dismiss, and **GRANTS IN PART** the request for judicial notice.

## I. BACKGROUND[1]

### A. Factual Background

The dispute in this litigation centers on a recent ordinance adopted by Berkeley, referred to by the parties as the "Berkeley Ordinance" or the "Ordinance" (Berkeley Ordinance No. 7,672-N.S.).[2] The Court summarizes the allegations from the operative first amended complaint that are relevant to the disposition of the pending motion. The Court further includes in its summaries the documents and materials for which it has taken judicial notice. Thus:

CRA: Plaintiff CRA is a nonprofit mutual benefit corporation organized under the laws of California with its principal office in the County of Sacramento, California. As alleged, CRA is an association of members in the restaurant industry, and has a substantial interest in having the laws relating to building standards executed and the duties at issue here enforced. CRA's members include both restaurant owners and chefs. CRA has members that do business in Berkeley, California, or who seek to do business in Berkeley, and whose interests will be directly affected by this ordinance. Specifically, the CRA has one or more members who are interested in

---

[1] Berkeley requests the Court to take judicial notice of several related documents. (*See* Dkt. No. 47-1.) With the exception of Exhibit 1 (the Berkeley Ordinance) and parts of Exhibit 18 (excerpts of the 2019 Building Energy Standards for Residential and Nonresidential Buildings), CRA opposes the request for judicial notice. (Dkt. No. 52-1.) CRA further concedes that Exhibit 1 is properly considered under the doctrine of reference by incorporation, as the first amended complaint references the Ordinance. (*Id.*) The Court agrees. The Court **GRANTS IN PART** judicial notice of Exhibits 1, 3, 6, and 8 through 18 to the request for judicial notice but does not take judicial notice of the adjudicative facts that are incorporated therein. *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 978 (9th Cir. 2007) (taking judicial notice of guidelines published by the Defense Security Cooperation Agency of the U.S. Department of Defense); *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, Case No. 13-cv-0883(JGB), 2019 WL 2610965, at *5 (C.D. Cal. Apr. 19, 2019) (taking judicial notice of a decree "for the existence of the document"). With respect to Exhibits 2, 4, 5, and 7, the Court declines takes to take judicial notice of these documents, which are not relevant to the disposition of the pending motion. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) ("We decline to take judicial notice of the two Staff Reports, as they are not relevant to the resolution of this appeal."). Finally, the Court declines to consider additional declarations submitted by Berkeley, which are outside the scope of this *facial* 12(b)(1) motion to dismiss. *See infra* Sections II, and III.A.

[2] *See* Dkt. No. 47-2 (RJN Exh. 1, Berkeley Ordinance).

opening a new restaurant or in relocating a restaurant to a new building in Berkeley after January 1, 2020, but who cannot do so because of the Ordinance's ban on natural gas. In other words, one or more of its members would seek to open or relocate a restaurant in a new building in Berkeley but for the ban on natural gas. As alleged, its members will be irreparably harmed by the Berkeley Ordinance through the loss of the ability to use natural gas appliances in newly constructed buildings.

Berkeley: Defendant Berkeley is a California city located within the boundaries of the United States District Court for the Northern District of California.

The Ordinance: The Berkeley City Council passed the Berkeley Ordinance on July 23, 2019, and was later signed into law by the Berkeley Mayor, Jesse Arreguin, on August 6, 2019.

The Berkeley Ordinance amends the Berkeley Municipal Code ("BMC"), adding a new Chapter 12.80 ("Prohibition of Natural Gas Infrastructure in New Buildings") prohibiting natural gas infrastructure in new buildings effective January 1, 2020. The Ordinance prohibits "Natural Gas Infrastructure" in "Newly Constructed Buildings." Berkeley Ordinance § 12.80.040.A. Natural Gas Infrastructure is defined as "fuel gas piping, other than service pipe, in or in connection with a building, structure or within the property lines of premises, extending from the point of delivery at the gas meter." *Id.* § 12.80.030.E.

The Berkeley Ordinance provides that its requirements "shall apply to Use Permit or Zoning Certificate applications submitted on or after the effective date of this Chapter for all Newly Constructed Buildings proposed to be located in whole or in part within the City," *id.* § 12.80.020.A, and accordingly relies on Berkeley's general police power as the source of its authority. Significantly, the Ordinance is part of Title 12 of the Berkeley Municipal Code, which concerns "Health and Safety." This is separate from Title 19, regarding "Buildings and Construction," which contains Berkeley's building code and energy code.

The Berkeley Ordinance contains two exemptions. The first exemption, in section 12.80.040.A.1, provides that "Natural Gas Infrastructure may be permitted in a Newly Constructed Building if the Applicant establishes that it is not physically feasible to construct the building without Natural Gas Infrastructure." *Id.* § 12.80.040.A.1. The definition of "physically feasible"

3

allows for an exemption from the ban on natural gas infrastructure where compliance with the California Energy Code ("CEC") would be impossible for all-electric construction. *Id.*[3] CRA alleges that this merely represents a "phasing in" of the ban as the CEC models all-electric construction for additional building types – *i.e.*, there is no "exemption" for the types of buildings already covered by the ban.

The second exception allows for an exemption from the ban on natural gas infrastructure when it is established that the use of natural gas "serves the public interest." *Id.* § 12.80.050.A. This exemption allows for a discretionary determination made by the City's Zoning Adjustments Board or, in some cases at the staff level, as part of the entitlement process for new construction. *Id.* § 12.80.020.D. In reviewing requests for a public interest exemption, the Zoning Adjustment Board or City staff must consider (1) "[t]he availability of alternative technologies or systems that do not use natural gas" and (2) "[a]ny other impacts that the decision to allow Natural Gas Infrastructure may have on the health, safety, or welfare of the public." *Id.* § 12.80.050.A.

With regards to EPCA, CRA alleges that the Berkeley Ordinance's standards concern the energy efficiency and energy use of appliances covered by the EPCA insofar as the Ordinance requires all appliances in newly constructed buildings to use only electric power and not natural gas. In other words, by cutting off the gas pipeline, the Ordinance makes impossible and therefore effectively prohibits the use of gas appliances. This action, according to CRA, is preempted by the EPCA, which CRA contends has been progressively amended to include binding federal energy efficiency standards. In short, CRA asserts and alleges that the United States Congress, through the EPCA and the subsequent statutes, meant to preempt the entire field of energy use by covered appliances, and replace it with detailed conditions that must be met for such state or local laws to avoid preemption.

---

[3] Consistent with these provisions to ensure compliance with the CEC, the Berkeley Ordinance expressly disavows any intention to amend the Energy Code or to set standards regulating the use of appliances. *Id.* § 12.80.020.C. ("This chapter [in the Ordinance] shall in no way be construed as amending California Energy Code requirements under California Code of Regulations, Title 24, Part 6, nor as requiring the use or installation of any specific appliance or system as a condition of approval.").

Despite the foregoing, the Ordinance expressly provides that it "shall in no way be construed as amending California Energy Code requirements under California Code of Regulations, Title 24, Part 6, nor as requiring the use or installation of any specific appliance or system as a condition of approval." *Id.* § 12.80.020.C. According to the express terms of the Ordinance, the Ordinance attempts to address the global impacts caused by the combustion of natural gas. *Id.* §§ 12.80.010.A, 12.80.010.D.

<u>The EPCA</u>: The EPCA regulates the energy efficiency of consumer products including air conditioners, water heaters, furnaces, clothes washers and dryers, and stoves. *See* 42 U.S.C. §§ 6292, 6295. As relevant here, the EPCA's consumer standards explicitly preempt state and local regulations "concerning the energy efficiency" and "energy use" of the products for which the EPCA sets its own energy efficiency standards. *Id.* § 6297(c). Section 6297(c) expressly provides:

> [E]ffective on the effective date of an energy conservation standard established in or prescribed under section 6295 of this title for any covered product, no State regulation concerning the energy efficiency, energy use, or water use of such covered product shall be effective with respect to such product . . . .

*Id.* The term "covered product" includes various categories of consumer products mentioned above, including appliances and lighting. *Id.* §§ 6291(2), 6292.

The EPCA contains only limited exceptions to this general rule of preemption for consumer appliances. Specifically, a regulation is not preempted if it "is in a building code for new construction" and must further meet seven specific explicit requirements. *Id.* §§ 6297(c)(3), (f)(3).

The EPCA also governs the energy efficiency of certain commercial appliances, including air conditioners, furnaces, water heaters, and clothes washers. *Id.* § 6313. These standards also explicitly "supersede any State or local regulation concerning the energy efficiency or energy use of a product for which a standard is prescribed or established" in the federal statute. *Id.* § 6316(b)(2)(A). "Covered" industrial equipment is defined in *Id.* § 6311(1) and includes "commercial package air conditioning and heating equipment," "warm air furnaces," and several types of water heaters, but notably does not include ovens for commercial kitchens.

As with the consumer standards, there are only limited exceptions to the rule of preemption

5

for commercial appliances. In particular, a local regulation "contained in a State or local building code for new construction" is not preempted if it does "not require that the energy efficiency of" a product covered in the federal statute "exceed[s] the applicable minimum energy efficiency requirement." *Id.* § 6316(b)(2)(B).

In total, each of these preemption provisions turns on whether a state law or local ordinance regulates the "energy efficiency" or "energy use" of a covered product, which are defined, respectively, as "the ratio of the useful output of services from a consumer product to the energy use of such product," and "the quantity of energy directly consumed by a consumer product at point of use." *Id.* § 6291(4)-(5).

### B. Procedural Background

CRA commenced this lawsuit on November 21, 2019. (Dkt. No. 1.) Berkeley moved to dismiss the then operative complaint on January 13, 2020. (Dkt. No. 18.) While set for hearing in April 2020 by the parties' stipulation, the hearing on this matter was vacated in March 2020 due to the initial outbreak of the Coronavirus (COVID-19) pandemic. (Dkt. No. 31.) The Court thereafter permitted supplemental briefing on discrete issues (Dkt. No. 32), before resetting a hearing via the Zoom platform for July 14, 2020. (Dkt. No. 36.)

The Court heard the prior motion to dismiss on July 14, 2020. (Dkt. Nos. 40 (minutes), 43 (transcript).) On the record at the hearing, and later confirmed in a written Order, the Court granted in part Berkeley's motion on the grounds of both ripeness and standing for the reasons stated on the record. (*See* Dkt. No. 41 (Order).) The Court otherwise denied without prejudice the remaining grounds of the motion, permitting Berkeley to re-raise these arguments in response to the filing of any subsequent amended complaint. (*Id.*) The Court later denied Berkeley's request to conduct pre-answer discovery as to the identity of the member or members that would open a restaurant but for the Berkeley Ordinance. (Dkt. Nos. 44 (joint discovery letter brief), 45 (Order).)

On August 14, 2020, CRA filed the now operative first amended complaint. (Dkt. No. 46.) Berkeley moved to dismiss the first amended complaint on substantively identical grounds as its prior motion. (Dkt. No. 47.) The parties fully briefed the motion on an extended briefing schedule stipulated by the parties. (Dkt. Nos. 51 (Order granting stipulation re: briefing schedule),

6

52 (opposition), 58 (reply), 59 (Order granting stipulation re: continuing motion hearing date).) The Court further received an unopposed motion for leave to file an amici curiae brief from the amici, which the Court granted. (*See* Dkt. Nos. 56 (motion for leave to file amici curiae brief), 65 (Order granting motion), 66 (amici curiae brief).)

Due to conflicts with the Court's calendar for the month of December 2020, the Court vacated the December 8, 2020 hearing date (Dkt. No. 67), before later resetting the hearing for February 2, 2021. (Dkt. No. 68.) The Court heard oral arguments on the motion on February 2, 2021. (Dkt. Nos. 70 (minutes), 72 (transcript).) The matter is now ripe for resolution.

Finally, subject matter jurisdiction in this action is grounded upon federal question jurisdiction. 28 U.S.C. § 1331. Specifically, subject matter jurisdiction is premised on CRA's first cause of action, which seeks declaratory relief and to enjoin state action as preempted by federal law (the EPCA). The Court would otherwise have supplemental jurisdiction over the remaining causes of action, which assert preemption of the Berkeley Ordinance under California law.

## II. LEGAL STANDARDS

Berkeley brings this motion under Rules 12(b)(1) and (b)(6). The legal standards under both subsections for this motion are well known and not in dispute. Thus:

First, Rule 12(b)(1) provides that an action may be dismissed for lack of subject matter jurisdiction. Federal courts are of "limited jurisdiction" and plaintiff bears the burden to prove the requisite federal subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial 12(b)(1) motion involves an inquiry confined to the allegations in the complaint, whereas a factual 12(b)(1) motion permits the court to look beyond the complaint to extrinsic evidence. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). In other words, "[i]n a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction[,]" while in a factual challenge, the challenger "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th

7

Cir. 2004).

Second, Rule 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### III. ANALYSIS

Berkeley raises three grounds for dismissal: First, under Rule 12(b)(1), Berkeley avers that CRA lacks standing and that the first amended complaint should further be dismissed because it is unripe. Second, under Rule 12(b)(6), Berkeley asserts that the Ordinance is not preempted by the EPCA. Third, under the same rule, Berkeley further asserts that the Ordinance is not preempted by California state laws. Finally, and alternatively, Berkeley contends that, should the Court decide to dismiss the EPCA claim, the Court should decline to exercise jurisdiction over the remaining state law preemption claims. The Court considers each of these arguments in turn.

#### A. Rule 12(b)(1)

##### 1. Standing

Berkeley renews its arguments relating to standing from the prior motion to dismiss. Here, the parties agree that CRA brings a facial challenge, as opposed to as-applied challenge, to the Berkeley Ordinance. Berkeley, however, asserts that the injury is speculative and hypothetical, and further cites to additional declarations to demonstrate the lack of standing where no CRA member has applied for an exemption from the Ordinance's natural gas ban in new construction.

Article III of the United States Constitution provides that federal courts may only adjudicate "cases" and "controversies." U.S. Const. art. III, § 2. To establish standing under Article III, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* ___ U.S. ___, 136 S.Ct. 1540, 1547 (2016) (citing *Lujan v. Defs.*

*of Wildlife,* 504 U.S. 555, 560-561 (1992)). Injury in fact is "the 'first and foremost' of standing's three elements. *Id.* (original alterations omitted) (quoting *Steel Co. v. Citizens for Better Env't.*, 523 U.S. 83, 103 (1998)).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). The "mere existence of a statute," which may or may not ever be applied to a plaintiff, is insufficient to establish standing. *Jensen v. Nat'l Marine Fisheries Serv. (NOAA)*, 512 F.2d 1189, 1191 (9th Cir. 1975) (possibility that fishing boat owners and operators could be prosecuted for violating federal regulation does not give rise to case or controversy under Article III); *see also Stoianoff v. State of Mont.* 695 F.2d 1214, 1223 (9th Cir. 1983) (operator of "head shop" had no standing to challenge statute restricting advertisements of drug paraphernalia, in the absence of any actual or pending threat of prosecution).

The Supreme Court further requires that plaintiff-organizations like CRA to "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). Such an organization must show that at least one of its members has "standing to sue in [his] own right." *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000). In deciding the issue of standing at the pleadings stage, the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the" plaintiff. *Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1178 (9th Cir. 2000) (quotation marks omitted).

Having reviewed the additional allegations in the first amended complaint, Berkeley does not persuade. The allegations added to the first amended complaint, that (i) CRA has at least one member who would operate a new restaurant in a new construction in Berkeley using natural gas appliances *but for* the Ordinance and (ii) that its members use both appliances under the "consumer" and "industrial" categories under the EPCA, are legally sufficient to establish standing to bring this action. These allegations plainly satisfy the standing requirements articulated above.

9

Berkeley's citation to additional submitted declarations are without merit. In short, the parties quibble over whether the Court can or should consider the declarations submitted by Berkeley, demonstrating that no CRA member has applied for an exemption from the Ordinance, at this stage of the litigation. Even considering these declarations, however, these declarations do not question the truth of the allegations in the first amended complaint. Said differently, the declarations do contradict the allegations that CRA has a member that would open a restaurant in Berkeley *but for* the Ordinance.[4] At face value, these declarations merely confirmed that no individual has sought an exemption from the mandates of the Ordinance. These declarations therefore fail to raise a factual challenge under Rule 12(b)(1), and the Court is therefore left to consider this motion as a facial challenge to CRA's standing. In such circumstances, "[t]he district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)[,]" based on the allegations in the complaint. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *Am. Fed'n of Tchrs. v. Devos*, 484 F.Supp.3d 731, 741-42 (N.D. Cal. 2020); *see also Desert*, 231 F.3d at 1178. Here, the Court concludes that CRA has adequately demonstrated standing based on the allegations in the complaint.

Accordingly, because CRA has appropriately included allegations demonstrating sufficient standing, the Court **DENIES** the motion to dismiss on this ground.

   2.  *Ripeness*

Relatedly, Berkeley renews its ripeness arguments from the prior motion to dismiss. Specifically, Berkeley contends that the facial challenge as to the Ordinance is not yet ripe, and that CRA fails to otherwise so demonstrate.

In general, the doctrines of standing and ripeness are "closely related," but ripeness "requires an additional inquiry into 'whether the harm asserted has matured sufficiently to warrant judicial intervention.'" *Pac. Legal Found. v. State Energy Res. Conservation & Dev. Comm'n*,

---

[4] As noted in the Order denying early discovery: "Ninth Circuit authority is clear that CRA need not provide the name of an affected member in its complaint." (Dkt. No. 45 at 2 (citing *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) (holding that a plaintiff association need not name an affected member in the complaint).)

659 F.2d 903, 915 (9th Cir. 1981) (citing *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975)). "For a case to be ripe, it must present issues that are 'definite and concrete, not hypothetical or abstract.'" *Bishop Paiute Tribe v. Inyo County*, 863 F.3d 1144, 1153 (9th Cir. 2017) (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000)). The ripeness doctrine applies to challenges to legislation or regulations, and courts have held that if the issues raised by such a challenge "would be illuminated by the development of a better factual record, the challenged statute or regulation is generally not considered fit for adjudication until it has actually been applied." *Pac. Legal Found.*, 659 F.2d at 915 (citations omitted).

Here, having considered the allegations in the complaint, and the parties' briefing, Berkeley again does not persuade. With regards to subject matter jurisdiction generally, the United States Supreme Court has recognized "in some cases . . . a person subject to a scheme of federal regulation may sue in federal court to enjoin application to him of conflicting state regulations." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 20 n.20 (1983). Indeed, in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983), the Supreme Court found it "beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Id.* (citing *Ex parte Young,* 209 U.S. 123, 160-62 (1908)). The Ninth Circuit has likewise held that federal courts have jurisdiction to hear suits to enjoin the enforcement of preempted state laws: "when a plaintiff seeks to enjoin state action because federal law preempts it, jurisdiction is proper." *S. Pac. Transp. Co. v. Pub. Utils. Comm'n of Cal.*, 716 F.2d 1285, 1288 (9th Cir. 1983); *see also Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1414 (9th Cir. 1990); *S. Cal. Gas Co. v. County. of Los Angeles.*, Case No. 17-cv-5140(DSF), 2017 WL 8793753, at *4 (C.D. Cal. Dec. 4, 2017).

Here again, because the CRA is seeking to enjoin Berkeley from enforcing the Ordinance on the basis of federal preemption by the EPCA, the Court has jurisdiction to review the matter. Berkeley's cited authorities do not apply in this context.

Indeed, regarding ripeness, a facial challenge does not depend on the particular application of the Ordinance. *See Harris v. Mex. Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009); *Roe No. 2 v. Ogden*, 253 F.3d 1225, 1232 (10th Cir. 2001) ("[W]e will not benefit from further

11

factual development because the Students' action is a facial challenge."); *L.A. Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) ("Further factual development will not assist our consideration of" a facial challenge where the "relevant facts are clear"). Indeed, courts have routinely allowed facial challenges for preemption claims. *See, e.g.*, *Cal. Tow Truck Ass'n v. City & County of San Francisco.*, 693 F.3d 847, 865 (9th Cir. 2012); *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 926 (9th Cir. 2011); *Knox v. Brnovich*, 907 F.3d 1167, 1173 (9th Cir. 2018). In this context, "a purely legal claim is *presumptively ripe* for judicial review because it does not require a developed factual record." *Harris*, 564 F.3d at 1308 (emphasis supplied); *see also id.* (noting that ripeness "applies differently to facial and as-applied challenges"). Berkeley fails to show, and the Court cannot otherwise determine, that any developed factual record would be required to review of the facial challenge of the Ordinance. Thus, in light of the foregoing, the Court concludes that the facial challenge of the Ordinance is now ripe for the Court to consider.

Accordingly, the Court **DENIES** the motion to dismiss on this ground.

### B. Rule 12(b)(6)

#### 1. *Preemption by Federal Law*

Berkeley moves to dismiss the first cause of action, preemption by the EPCA, under Rule 12(b)(6). Specifically, Berkeley contends that CRA cannot state a cause of action for federal preemption because, even under a generous reading of the allegations, the statutory language, and the legislative history, the EPCA simply does not preempt the Ordinance. Therefore, CRA cannot state a claim for federal preemption of the Ordinance.

In general, "[f]ederal preemption occurs when: (1) Congress enacts a statute that explicitly preempts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 925 (N.D. Cal. 2014) (quoting *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010)).

Here, as reflected in the first amended complaint, the parties' briefing, and confirmed at oral argument, CRA's federal preemption claim is an express preemption claim. (*See, e.g.*, Dkt.

Nos. 52 at 20-28 (argument regarding express preemption), *id.* at 28 ("Here, the CRA is not asserting a conflict preemption claim—only an express preemption claim."), 72 at 5 ("Well, to be precise about it, we are not arguing field preemption. . . . We're arguing express preemption.").) "Express preemption results from a Congressional expression of intent to displace state law." *Hendricks*, 30 F. Supp. 3d at 925 (citing *Chae*, 593 F.3d at 942). "Since pre-emption claims turn on Congress's intent, we begin as we do in any exercise of statutory construction with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs." *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 495 (9th Cir. 2005) (internal quotation marks omitted).

The Ninth Circuit has instructed that the "interpretation of the federal statute is informed by two presumptions about the nature of preemption." *Id.* at 496. First, courts "address claims of preemption with the starting presumption that Congress did not intend to supplant state law." *Id.* Indeed, where federal law intrudes on the historic police powers of state and local governments, the federal statute should not supersede state law "unless a 'clear and manifest purpose of Congress' exists." *Hendricks*, 30 F. Supp. 3d at 925 (citing *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)). "This presumption against preemption leads us to the principle that express preemption statutory provisions should be given a *narrow* interpretation." *Air Conditioning & Refrigeration Inst.*, 410 F.3d at 496 (emphasis supplied).

Second, "the scope of the statute's preemption is guided by the Supreme Court's oft-stated comment that the purpose of Congress is the ultimate touchstone in every pre-emption case." *Id.* (internal quotation marks omitted). "As a result, any understanding of the scope of a pre-emption statute must rest primarily on a fair understanding of congressional purpose." *Id.* (internal quotation marks omitted).

"Parties seeking to invalidate a state law based on preemption bear the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *Stengel v. Medtronic*, 704 F.3d 1224, 1227–28 (9th Cir. 2013) (en banc) (citation and internal quotation marks omitted). Further, "[t]he words of this statute must be interpreted to mean what they say." *In re MacIntyre*, 74 F.3d 186, 188 (9th Cir. 1996) (citing *Nesovic v. United States*, 71

13

F.3d 776 (9th Cir. 1995)) ("Courts must presume that a legislature says in a statute what it means and means in a statute what it says.").

Here, CRA argues that the express language of the EPCA and the legislative history demonstrate that CRA has appropriately pled a claim of preemption of the Berkeley Ordinance. Specifically, CRA avers that the preemption provision is broad, and that the legislative history confirms an expansive preemption of local laws that would otherwise lead to a nationwide patchwork of local varying laws that would affect energy use or energy efficiency of certain covered commercial and consumer appliances.

Having considered the totality of the parties' briefing and the cited authority therein, CRA does not persuade on its expansive interpretation of the EPCA's express preemption provision. The Court concludes therefore that CRA fails to and cannot state a claim for relief for federal preemption by the EPCA.

First, CRA fails to demonstrate that the express terms of the EPCA sweep so broad as to implicate the Ordinance. CRA asserts that the "plain language of the [EPCA] preemption statute makes clear that Congress intended the preemption to be broad in scope." *Air Conditioning, Heating & Refrigeration Inst. v. City of Albuquerque*, 835 F. Supp. 2d 1133, 1136 (D.N.M. 2010). Specifically, CRA bases this broad reading on the use of the word "concerning," as "'[c]oncerning' is defined as 'relating to,'" which "express[es] a broad pre-emptive purpose." *Air Conditioning, Heating and Refrigeration Inst. v. City of Albuquerque*, Case No. 08-cv-633 (MV/RLP), 2008 WL 5586316, at *7 (D.N.M. Oct. 3, 2008) (quoting Black's Law Dictionary 289 (6th ed. 1990)).

CRA further points out that "energy use" is defined as "the quantity of energy directly consumed by a consumer product at point of use[,]" 42 U.S.C. § 6291(4), and "energy" is defined as "electricity, or fossil fuels." 42 U.S.C. § 6291(3). Thus, taking these discussed provisions together, CRA contends that any ordinance is, by default, preempted if it relates to the quantity of electricity or fossil fuels directly consumed by a covered consumer or commercial product.

The crux of the CRA's argument is that the Ordinance concerns the quantity of natural gas consumed by appliances in the buildings it regulates because, by barring the connection to gas

14

pipes required to use natural gas, the Ordinance requires that *no* natural gas is used. In other words, the Ordinance requires that *zero* quantum of natural gas be used in new construction. In some ways, this argument has some logic. Indeed, the Court has previously recognized that the number "'zero' . . . has quantitative relevance." *Doe v. United Behavioral Health*, --- F. Supp. 3d ---, 2021 WL 842577, at *8 (N.D. Cal. Mar. 5, 2021) (citing Charles Seife, *Zero: The Biography of a Dangerous Idea* (2000) (explaining the value of zero)).

These arguments, however, ultimately do not persuade. The Court agrees that the language employed by the EPCA is broad. The EPCA preempts, subject to numerous exceptions, any state regulation "concerning the energy efficiency, energy use, or water use of [a] covered product." 42 U.S.C. § 6297(c). As outlined *supra*, these covered products are consumer related (*id.* §§ 6291(2), 6292) and certain commercial products (*id.* § 6313) which do not include stoves or ranges. Moreover, each of these provisions turns on whether a state or local regulation regulates the "energy efficiency" or "energy use" of a covered product. *Id.* § 6291(4)-(5).

Here, even with an admittedly broad provision, the Court cannot determine how the EPCA expressly preempts the Berkeley Ordinance where the Berkeley Ordinance does not directly regulate either the energy use or energy efficiency of covered appliances. In short, CRA attempts to bootstrap the EPCA's principles of the "energy efficiency" or "energy use" of covered products to the Ordinance. CRA cannot. The Ordinance facially does not address any of those standards, let alone mandate or require any particular energy use of a covered product. Instead, the Ordinance "prohibit[s]" all "Natural Gas Infrastructure" in new buildings. *See* §§ 12.80.040(A), 12.80.030(E) (defining Natural Gas Infrastructure to include "fuel gas piping" from the gas meter into the property). This is clearly outside the preemption provision of the EPCA.[5]

Moreover, even the most notoriously extensive statutory regimes enacted by Congress

---

[5] Further, while "zero" has some qualitative meaning, the Ordinance does not facially and directly require "zero" use of natural gas appliances in Berkeley. Berkeley residents and property owners are free to purchase and use natural gas appliances in those properties and residences that maintain natural gas connections. CRA has not shown the EPCA can and does sweep into areas of natural gas connections. This is especially so where large swaths of the United States similarly lack natural gas access.

have limits. Indeed, in *California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.*, 519 U.S. 316 (1997), the United States Supreme Court, when confronted with similar "related to" and "connection with" language, held that the Employment Retirement Income Security Act of 1974 ("ERISA") "could not preempt state law in an area of traditional state regulation based on so tenuous a relation" to ERISA plans. *Id.* at 334. The Court observed that it looks to both "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." *Id.* at 325 (citation omitted). The Court reached this conclusion despite well-established law attesting to the "broad scope" and "expansive sweep" of ERISA preemption, based on "relate to" language in the statute. *See id* at 324.

The EPCA must be similarly interpreted in a limited manner, and not sweep into areas that are historically the province of state and local regulation. Indeed, CRA's expansive interpretation of the EPCA is remarkable for its sweeping breadth, which would extend the EPCA far beyond the express terms of the EPCA dealing with appliances. In short, CRA's interpretation would compel localities to continue to provide natural gas in all but the rarest of circumstances. Nothing in the EPCA requires that localities provide let alone continue to maintain natural gas connections. Indeed, as discussed *infra*, Congress has historically and explicitly deferred local natural gas infrastructure to states and localities. Thus, the Court concludes that the statutory language of the EPCA does not support preemption of the Berkeley Ordinance.

Second, the legislative history further does not support such an expansive interpretation of the EPCA. The original EPCA, enacted during the oil crisis in the 1970s, focused on labeling the energy efficiency of consumer appliances so that consumers could choose more efficient options. *Air Conditioning & Refrigeration Inst.*, 410 F.3d at 499. Congress in later legislation narrowed the path for a state to avoid preemption, purposefully making it "difficult" to "achiev[e] the waiver." S. Rep. No. 100-6, at 2 (1987). Congress intended to allow only "performance-based codes" that "authorize builders to adjust or trade off the efficiencies of the various building components so long as an energy objective is met." *Id.* at 10-11. Congress wanted to avoid state policies that were "unfairly weighted resulting in undue pressure on builders to install covered

16

products exceeding Federal standards." *Id*. at 11. While the legislative history does not refer to natural gas in particular, the Senate emphasized the need for "even-handed" standards that were not "unfairly weighted" to particular products. *Id*. at 10-11. The legislation was designed to avoid "the unavailability in the State of a product type or of products of a particular performance class," *id.* at 2, and to institute "performance-based codes" with energy objectives, *id.* at 10-11.

Despite the foregoing authority and legislative history confirming the breadth of preemption relating to appliances under the EPCA, states and localities expressly maintain control over the local distribution of natural gas under related federal statutes. The relevant scope of federal authority is governed by the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, enacted in 1938 to provide "a comprehensive scheme of federal regulation of 'all wholesales of natural gas in interstate commerce.'" *S. Coast Air Quality Mgmt. Dist. v. F.E.R.C.*, 621 F.3d 1085, 1090 (9th Cir. 2010) (quoting *Northern Natural Gas Co. v. State Corp. Comm'n*, 372 U.S. 84, 91 (1963)). The Natural Gas Act "specifically exempted from federal regulation the 'local distribution of natural gas.'" *Id.* at 1091 (quoting *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 365 U.S. 1, 21 (1961)). "Congress meant to draw a bright line easily ascertained, between state and federal jurisdiction." *Fed. Power Comm'n v. S. Cal. Edison Co.*, 376 U.S. 205, 215 (1964). Thus, "the history and judicial construction of the Natural Gas Act suggest that *all aspects related to the direct consumption of gas . . . remain within the exclusive purview of the states*." *S. Coast Air Quality Mgmt. Dist.*, 621 F.3d at 1092 (emphasis supplied).

Here, under the foregoing legislative history, the Court cannot determine how the Berkeley Ordinance is preempted by the EPCA, where the Ordinance is exercising authority expressly deferred to states and localities. The Berkeley Ordinance does not facially regulate or mandate any particular type of product or appliance. Instead, the Ordinance focuses on regulating the underlying natural gas infrastructure. This *at best* indirectly has an impact on the products available to consumers. This narrow focus on the indirect impacts resulting from the Ordinance, however, ignores that Berkeley has exercised its expressly carved out authority to regulate the local distribution of natural gas. Thus, the legislative history further fails to demonstrate that the EPCA should so sweep beyond the preemption of state and local statutes directly regulating the

17

energy use and energy efficiency of certain appliances.

In sum, for preemption purposes, the fact that an ordinance focused on natural gas *piping* for new buildings may have some downstream impact on commercial appliances is insufficient.[6] The plain meaning of EPCA does not requires a city to extend natural gas infrastructure, nor does the statute preclude a city's exercise of its power to regulate building infrastructure to protect public health and safety. The EPCA was and is designed to avoid a patchwork of state efficiency standards for certain covered appliances; nothing in the statute evinces legislative intent to require local jurisdictions to permit the extension of natural gas service. To hold otherwise would be to misapprehend the scope of the EPCA and extend it impermissibly extend beyond what Congress intended, and infringe on historic and recognized powers held by states and localities.

Accordingly, for the above reasons, CRA's first cause of action, federal preemption of the Berkeley Ordinance by the EPCA, is **DISMISSED WITH PREJUDICE**.

### 2. *Preemption by California State Laws*

Given that the first cause of action is the only federal claim in this action, and the Court has now determined that it is appropriately dismissed, the Court declines to exercise supplemental jurisdiction as to the remaining state law claims in this action. Without a federal claim, principles of federalism counsel that supplemental jurisdiction on the state claims should not be taken. *See Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995) (district court has "discretion to retain or dismiss state law claims when the federal basis for an action drops away" (citing 28 U.S.C. § 1367) (emphasis omitted); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (en banc)). Indeed, these claims implicate questions of California state law that are appropriately decided by California state courts in the absence of any federal causes of action.

Accordingly, the motion to dismiss is **GRANTED** as to these claims. The remaining claims asserting preemption by various California state laws are **DISMISSED WITHOUT PREJUDICE**.

---

[6] Indeed, the Ordinance has *zero* effect on existing buildings or infrastructure, which individuals and entities in these properties remain free to choose whatever appliances (e.g. natural gas, electric, or otherwise) they want under existing state and federal law.

## IV. CONCLUSION

For the foregoing reasons, the Court **HEREBY ORDERS** as follows:

- The motion to dismiss the first amended complaint is **GRANTED IN PART AND DENIED IN PART**;
- The first cause of action for federal preemption by the EPCA, is **DISMISSED WITH PREJUDICE**; and
- As discussed above, given that the first cause of action is the only federal claim, the Court declines to exercise supplemental jurisdiction as to the remaining state claims. Accordingly, the remaining claims asserting preemption by various California state laws are **DISMISSED WITHOUT PREJUDICE**.

The Clerk of the Court is directed to issue form judgment consistent with the disposition of this motion and to close out this matter.

This Order terminates Docket Number 47.

**IT IS SO ORDERED.**

Dated: July 6, 2021

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**